AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

### DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

V.

DEEPAK JAHAGIRDAR

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 04-MJ-0420 RBC

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about MARCH 31, 2002 within the special aircraft jurisdiction of the United States while aboard a civil aircraft of the United States which originated in Texas and landed at Boston, in the District of Massachusetts, the defendant knowingly engaged, and attempted to engage, in a sexual act (to wit: the penetration, however slight, of the genital opening of another by a hand and by a finger, with the intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desire of any person) with another person (to wit a person with the initials D. S.) when said person was incapable of appraising the nature of the conduct and was physically incapable of declining participation in, or communicating unwillingness to engage in, said sexual act.

in violation of Title 18 United States Code, Section(s) 2242 AND 49 USC 46506

I further state that I am a(n) SPECIAL AGENT, FBI (Official Title) and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT OF FBI SPECIAL AGENT TAMARA HARTY

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

_SA Tamara N. Harty_
Signature of Complainant

Sworn to before me and subscribed in my presence,

JAN - 8 2004 at 12:16 pm

Date

at BOSTON, MASSACHUSETTS
City and State

ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE
Name & Title of Judicial Officer

Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

# AFFIDAVIT

I, Tamara Harty, having been duly sworn, due hereby depose and say, that

1. I am a Special Agent (SA) assigned to the Boston Office of the Federal Bureau Investigation (FBI) and have been so assigned since February 2003. I am currently assigned to the Bank Robbery Task Force, which is comprised of personnel of the FBI, the Massachusetts State Police, and the Boston and Cambridge Police Departments. In addition to investigating bank robberies, my responsibilities include the investigation of crimes aboard aircraft, kidnapping, prostitution, and other federal crimes.

2. I am aware that 18 U.S.C. § 2242 and 49 U.S.C. § 46506, makes it a crime for any person to sexually abuse, or attempt to sexually abuse, another person while within special aircraft jurisdiction of the United States, including while aboard a civil aircraft of the United States. Having so said, I submit this Affidavit in support of a complaint charging **DEEPAK T. JAHAGIRDAR** (DOB 1950) ("**JAHAGIRDAR**") with a violation of 18 U.S.C. § 2242 and 49 U.S.C. § 46506 on or about March 31, 2002.

3. The facts stated herein are based on my personal involvement in this investigation, my discussions with other law enforcement officers, my review of Massachusetts State Police reports and information provided to me by the Massachusetts State Police Crime Laboratory. In submitting this Affidavit, however, I have not included each and every fact known to me about this investigation, but only those facts which I believe are sufficient to establish probable cause that **JAHAGIRDAR** committed a violation of 18 U.S.C. § 2242 and 49 U.S.C. § 46506.

4. On March 31, 2002, Victim D.S., a 22 year-old woman who resided in the Boston, Massachusetts metropolitan area, boarded Delta Air Lines Flight 2100 at the Dallas/Fort Worth, Texas airport. The flight, which departed at 1:30 p.m., was a non-stop flight from Texas to Boston's Logan International Airport. Delta Air Lines, Inc., which operated Flight 2100, is incorporated under the laws of Delaware and is headquartered in Atlanta, Georgia. Delta Flight 2100 on March 31, 2002, was a civil aircraft of the United States.

1

5. Victim D.S. was traveling alone. When she boarded the airplane she sat in a window seat number 12E. A man, who was later identified to be **JAHAGIRDAR**, was already seated beside her in the aisle seat numbered 12D. Their row had only 2 seats.

6. Victim D.S. asked the flight attendant for a pillow and a blanket. Because she had very little sleep the night before, she was exhausted, and promptly fell asleep. Before falling asleep, she covered her legs with the blanket which had been provided to her.

7. Approximately an hour to an hour and a half into the flight to Boston, Victim D.S. was awakened from a deep sleep when she felt a hand on and in her vagina. Upon opening her eyes she discovered that her pants were unbuttoned and partially unzipped (they were buttoned and zipped when she fell asleep), and that **JAHAGIRDAR**'s hand was in her pants, under her underwear, and she could feel his finger penetrating her vagina. Victim D.S. also discovered that **JAHAGIRDAR** had taken a single blanket and covered both of them with it, and the blanket had been placed up to her shoulders, concealing his activities from other persons in the airplane cabin. She also noticed that **JAHAGIRDAR** had placed his fold-down tray in the down position.

8. Victim D.S. immediately removed **JAHAGIRDAR**'s hand from her vagina, asked him what he was doing, and demanded that he let her out of her seat. She grabbed her pocketbook and rushed to the galley which was several rows behind her seat.

9. Victim D.S. immediately disclosed to Flight Attendant Gwen Pace that she had been sexually assaulted by **JAHAGIRDAR**. Ms. Pace, recognizing that Victim D.S. was also extremely upset, notified the captain and the "on board leader," Flight Attendant Kelley Horn. Flight attendants also notified four Special Agents from the United States Secret Service who were on board the airplane of the incident.

10. Victim D.S. was reassigned a seat at the back of the aircraft and attended to by Ms. Pace. Rather than confront **JAHAGIRDAR** and cause a commotion on the flight, agents had the captain notify the Massachusetts State Police stationed at Logan Airport of the assault, and monitored **JAHAGIRDAR** for the remainder of the flight.

2

11. Once the airplane landed at Logan Airport, a Secret Service Agent followed **JAHAGIRDAR** off of the airplane. When **JAHAGIRDAR** was on the jetway, the agent requested that **JAHAGIRDAR** step to the side of the jetway for questioning by law enforcement officers. Jahagirdar ignored the request and kept walking up the jetway. The agent then grabbed **JAHAGIRDAR**'s shoulder bag, repeated the request, and **JAHAGIRDAR** complied. Shortly thereafter, they were met by Massachusetts State troopers, who sought to question **JAHAGIRDAR** while the victim was questioned.

12. Victim D.S. remained on the airplane after all other passengers had disembarked. She was interviewed by Massachusetts State Trooper Kevin Hogaboom while on the airplane. She was very distraught and told him how **JAHAGIRDAR** had placed his hand on and in her vagina while she was sleeping on the airplane.

13. After speaking with Victim D.S., State Troopers placed **JAHAGIRDAR** under arrest for rape. A State Police laboratory chemist, Carol Courtwright, came to the airport and took swabbings and fingernail scraping of **JAHAGIRDAR**'s hands for purposes of preserving any evidence, including DNA, associated with the assault.

14. Victim D.S. was transported to the Beverly Hospital, where she reported to medical personnel that she had been digitally raped aboard the flight. She received treatment and was released.

15. A Forensic deoxyribonucleic (DNA) analysis was performed on the swabbings and fingernail scrapings recovered from **JAHAGIRDAR**'s hands by the Massachusetts State Police laboratory in Sudbury, Massachusetts. According to technicians in that laboratory, DNA analysis involves the application of several scientific disciplines including molecular biology, genetics and population statistics. DNA typing or profiling focuses on the genetic identification testing of biological specimens. DNA technology has been utilized by the relevant scientific community for many years and has proven to be a reliable method of determining whether or not a certain individual is a probable source of a particular biological specimen. DNA technology is utilized in laboratories throughout the

United States and internationally and has been generally accepted by experts in the relevant scientific community as being an accurate and reliable method of typing biological specimens.

16. DNA is an organic substance found primarily in the chromosomes, which are structures within the nuclei of cells that contain the coded information that provides the genetic blueprint for all living things. Each nucleated cell of a particular individual contains the same configuration of DNA which is uniquely characteristic of that individual and is scientifically detectable. The important feature of DNA for forensic purposes is that, with the exception of identical twins, no two individuals have the same DNA configuration.

17. The purpose of conducting DNA testing in a criminal case is to determine whether or not a particular individual is a probable source of certain biological specimens found on physical evidence which has been recovered or seized in connection with a criminal investigation. This determination is made by comparing the DNA profiles of known individuals with the DNA profile of biological specimens of sufficient size from an unknown depositor.

18. The biological samples obtained from **JAHAGIRDAR**'s hands revealed at least two contributors to that DNA. The "major profile" (or major contributor) to the DNA was from an unknown male (believed to be **JAHAGIRDAR** himself). The analysis also revealed that Victim D.S.'s DNA was a potential contributor to the minor profile, meaning that the probability of a randomly selected individual unrelated to Victim D.S. having contributed DNA to this mixture is approximately 1 in 743,000 (743.2 thousand) of the Caucasian population, 1 in 14,800,000 (14.8 million) of the African American population, and 1 in 3,000,000 (3 million) of the Hispanic population. (These probability estimates were calculated by the Massachusetts State Police laboratory using the Federal Bureau of Investigation's published databases.)

19. Based on the information set out above, I believe probable cause exists to conclude that on or about March 31, 2002, while within the special aircraft jurisdiction of

the United States, **DEEPAK T. JAHAGIRDAR** knowingly engaged, and attempted to engage, in a sexual act (to wit: the penetration, however slight, of the genital opening of another by a hand and by a finger, with the intent to abuse, humiliate, harass, degrade and arouse and gratify the sexual desire of any person) with another person (to wit Victim D. S.) when Victim D.S. was incapable of appraising the nature of the conduct and was physically incapable of declining participation in, or communicating unwillingness to engage in, said sexual act, in violation of 18 U.S.C. § 2242 and 49 U.S.C. § 46506.

*SA Tamara N. Harty*
Tamara N. Harty
Special Agent
Federal Bureau of Investigation
Boston, Massachusetts

JAN - 8 2004

Subscribed and sworn to before me this day of ___ January, 2004.

Robert B. Collings
United States Magistrate Judge

HON. ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE
United States District Court
Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 6420
Boston, Massachusetts 02210

5