UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 04-10038-MLW |
| | ) | |
| DEEPAK JAHAGIRDAR | ) | |
| | ) | |

## DEFENDANT DEEPAK JAHAGIRDAR'S MOTION TO SUPPRESS FRUITS OF UNLAWFUL ARREST AND INCORPORATED MEMORANDUM OF LAW

Now comes the defendant Deepak Jahagirdar, and respectfully moves, pursuant to the Fourth Amendment to the United States Constitution, that this Honorable Court suppress as evidence at the trial of this case all fruits of his unlawful arrest at Logan Airport on March 31, 2002, including, but not limited to, the scrapings taken from underneath his fingernails and the swabbings taken from his fingers at the time of his arrest, and the results of any and all tests conducted thereon, as well as the swabbings taken from the inside of his mouth in January, 2004, pursuant to a search warrant issued in the District of Arizona, where he resides, and the results of any and all tests conducted thereon..

As reason therefor, Mr. Jahagirdar states that he was arrested by the Massachusetts State Police without probable cause to believe that he violated Mass. G.L. c.265, §§22 or 24 or Mass. G.L. c.90, §40.

As further reason therefor, Mr. Jahagirdar refers the Court to the Memorandum of Law incorporated herein.

### MEMORANDUM OF LAW

On March 31, 2002, defendant Deepak Jahagirdar was arrested at Logan Airport by the Massachusetts State Police on charges of rape, in violation of Mass. G.L. c.265, §22 and assault with

intent to rape in violation of Mass. G.L. c.265, §24. The arrest was the result of statements made to the State Police by a woman aboard a flight on which Mr. Jahagirdar was also a passenger that she awakened to find Mr. Jahagirdar's right hand in her jeans, under her panties, touching her vagina; included in the information she provided was the fact that the alleged incident took place when the flight was approximately 1 ½ hours from Boston. *See* Massachusetts State Police Record of Investigation, March 31, 2002 ("Arrest Report"), appended hereto as Exhibit A, at 2 ("She stated that she knew they were . . . 1 ½ hours from Boston when this incident occurred"); Massachusetts grand jury testimony of Gwendolyn Pace, excerpt appended hereto as Exhibit B (alleged victim first approached her about an hour and a half into the flight, with about an hour and a half left of the flight); Ex. A at 2 ("Trooper Sullivan then [after state troopers spoke with the alleged victim] placed [Mr. Jahagirdar] under arrest for Rape (Digital), and Assault with intent to Rape (Digital), placed him in cruiser 411, conveyed him to [Field Headquarters] to be booked"); Affidavit of FBI Special Agent Tamara Harty, January 8, 2004 ("After speaking with victim D.S., State Troopers placed Jahagirdar under arrest for rape").[1] Attorney James W. Lawson came to the airport to represent Mr. Jahagirdar very shortly after his arrest. A State Police chemist arrived and proceeded, over Mr. Lawson's strenuous objection, to take swab samples and fingernail scrapings from both of Mr. Jahagirdar's hands.

Complaints were issued in the East Boston District Court, charging Mr. Jahagirdar with rape, assault with intent to rape, and interference with a flight crew (Mass. G.L. c.90, §40).[2] These

---

[1]

Agent Harty's affidavit was filed in support of the complaint which issued in this Court in January, 2004.

[2]

At some point after the Arrest Report was typed, a handwritten notation was added by a

complaints were dismissed for want of prosecution on November 5, 2002. On May 16, 2003, Mr. Jahagirdar was indicted in Suffolk County, Massachusetts, on charges of rape and assault with intent to rape. The instant indictment was returned on February 11, 2004, and the state indictments were dismissed.

## I.    MR. JAHAGIRDAR'S ARREST WAS NOT SUPPORTED BY PROBABLE CAUSE

Mr. Jahagirdar's arrest for violations of Mass. G.L. c.265, §§22, 24 was not supported by probable cause to believe that Mr. Jahagirdar had violated those statutes. Section 22(b) criminalizes "ha[ving] sexual intercourse or unnatural sexual intercourse with a person and compel[ling] such person to submit by force and against his will, or compel[ling] such person to submit by threat of bodily injury." Section 24 criminalizes "assault[ing] a person with intent to commit rape." These alleged offenses, for all the reasons addressed in Defendant Deepak Jahagirdar's Motion to Dismiss Counts I and II for Lack of Venue, were temporally finite and, if they occurred at all, ended well before the aircraft entered Massachusetts. All essential elements of the offenses defined by §§22(b) and 24 were committed, if at all, outside the territorial limits of Massachusetts. Yet Massachusetts State Troopers, knowing that the alleged offenses were committed, if at all, about halfway into the flight between Dallas and Boston, nonetheless placed Mr. Jahagirdar under arrest for Massachusetts state law offenses.

Because these offenses were not committed within the Commonwealth of Massachusetts, Massachusetts has no jurisdiction over the offenses for which Mr. Jahagirdar was arrested. The arrest

---

person whose identity is unknown to Mr. Jahagirdar indicating that Mr. Jahagirdar had also been arrested for interference with a flight crew. *See* Ex. A at 1. This after-the-fact addition is inconsistent with the text of Trooper Hogaboom's report, which states that the offenses for which Mr. Jahagirdar was arrested were rape and assault with intent to rape.

was, therefore, not supported by probable cause to believe that Mr. Jahagirdar had committed the

offenses for which he was arrested.

> It is a general rule of universal acceptation that one State or sovereignty cannot
> . . . punish offenses committed in and against another state or sovereignty. . . . The
> criminal laws of a state do not, ex vigore suo, have force beyond the territory of the
> state which enacts them. . . . Criminal laws have no extraterritorial validity. . . .
> Therefore, *an act to be punishable as a crime in this Commonwealth must be an act
> committed here and against this sovereignty.*

*Commonwealth v. Lanoue*, 326 Mass. 559, 560-61, 95 N.E.2d 925, 926 (1950)(citations and internal

quotation marks omitted; emphasis added).[3] *See, e.g., In re Vasquez*, 428 Mass. 842, 847-48, 705

N.E.2d 606, 610 (1999)("The general rule, accepted as 'axiomatic' by the courts in this country, is

that a state may not prosecute an individual for a crime committed outside its boundaries"); *State v.*

*Dudley*, 354 S.C. 514, 524, 581 S.E.2d 171, 176 (2003)(subject matter jurisdiction is tied to the

territorial reach of the courts); *People v. McLaughlin*, 80 N.Y.2d 466, 471, 606 N.E.2d 1357, 1359

(1992)("Because the State only has power to enact and enforce criminal laws within its territorial

borders, there can be no criminal offense unless it has territorial jurisdiction"); *State v. Jack*, 67 P.3d

673 (Alaska. 2003)(no state jurisdiction to prosecute rape that occurred on ferry in Canadian

territorial waters); *West v. State*, 369 Md. 150, 162, 797 A.2d 1278, 1285 (2002)(Maryland had no

jurisdiction of rape and sexual assault offenses where all essential elements of the offense, as defined

by the law of Maryland, took place in the District of Columbia).

Nor is the "effects" theory of extraterritorial jurisdiction applicable here. Under that theory,

---

[3]

In *Lanoue,* the Court concluded that Massachusetts did not have jurisdiction over the
offense of begetting a child out of wedlock where the "begetting" took place entirely in Rhode
Island, and the subsequent birth of the child, which took place in Massachusetts, was not an element
of the offense.

first articulated by the Supreme Court in *Strassheim v. Daily*, 221 U.S. 280, 285 (1911), "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power." Here, the alleged offenses had ended well before the aircraft entered  Massachusetts and could not and did not produce detrimental effects within Massachusetts, nor were they intended to do so. *See, e.g., Dudley*, 354 S.C. at 532, 581 S.E.2d at 180 (no jurisdiction where defendant did not intend that cocaine offenses would have an effect in South Carolina); *Commonwealth v. Fafone*, 416 Mass. 329, 330-31, 621 N.E.2d 1178, 1179 (1993)(no jurisdiction in Massachusetts where defendant did not intend drug crimes to have effect within the state).

The arresting officers entirely lacked probable cause to believe that Mr. Jahagirdar violated either §22(b) or §24.[4]  His arrest was, therefore, unlawful. Accordingly, all fruits of that unlawful

---

[4]

They were also without probable cause to believe that Mr. Jahagirdar used force or threat of bodily injury to compel the alleged victim to submit, as required by §22(b). To the extent that an argument is made that Mr. Jahagirdar was also arrested for interference with a flight crew in violation of Mass. G.L. c.90, 40, which appears to have been added to the arrest report as an afterthought, perhaps in an attempt to justify Mr. Jahagirdar's arrest by the state police, the circumstances of this case, as they appear from state police reports and from testimony given before a Massachusetts grand jury, do not fall within the compass of §40. Section 40 allows the pilot of any aircraft carrying passengers for hire to "take such action as is reasonably necessary to restrain any person who interferes with, or threatens to interfere with, the operation of the aircraft." Thereafter,

> [t]he *person so restrained* may be placed in charge of a police officer in the city or town where the aircraft next lands within the Commonwealth, to be taken to a lawful place of detention. Complaint shall be made against the person arrested, by the officer taking him to the place of detention, to a district court having jurisdiction over such offenses committed in the city or town where such person is detained, and such court shall have jurisdiction  of the case"(emphasis added).

Section 40 does not apply to Mr. Jahagirdar's circumstances for two equally compelling reasons: (1)

arrest must be suppressed. Those fruits include the fingertip swabbings and fingernail scrapings which were taken from him by a state police chemist shortly after his arrest at Logan Airport and the results of any and all tests conducted thereon. They also include the swabbings taken from the inside of Mr. Jahagirdar's mouth in January, 2004, pursuant to a warrant issued in the District of Arizona and the results of any and all tests conducted thereon. As the affidavit submitted in support of the application for the warrant demonstrates, that search was the direct fruit of the earlier unlawful warrantless search. The purpose of the Arizona search was to obtain DNA samples from Mr. Jahagirdar. *See* Affidavit of Michael D. Nordwall, appended hereto as Exhibit E, at 4-5. Mr. Jahagirdar's DNA could, however, provide evidence of Mr. Jahagirdar's violation of 18 U.S.C. §2242 only by reference to the DNA of the unknown male found in the samples taken from Mr. Jahagirdar at the time of his arrest. Because the results of DNA testing performed on those samples were the direct product of the unlawful warrantless search conducted at the time of his arrest, they cannot be considered in the evaluation of whether the Arizona warrant was supported by probable cause. Absent those test results, there was no probable cause for the Arizona search.

Even if there were probable cause for Mr. Jahagirdar's arrest, there were no exigent circumstances which could justify the taking of the swabbings and scrapings without a search warrant. Mr. Jahagirdar was in custody and readily could have been prevented from destroying any evidence on his hands until a warrant was obtained, for example, placing his hands in plastic

---

he did not interfere with, or threaten to interfere with, the operation of the aircraft, and (2) he was not restrained until after the aircraft landed and he had disembarked. Indeed, a decision was made by the captain and Secret Service officers who coincidentally happened to be on board that Mr. Jahagirdar would *not* be arrested or otherwise restrained until after the aircraft had landed. *See* Massachusetts grand jury testimony of George Hartford, excerpt attached as Exhibit C; Massachusetts grand jury testimony of Kelly Larkin Horn, excerpt appended as Exhibit D. There was, therefore, no probable cause to arrest Mr. Jahagirdar for a violation of §40.

evidence bags. Mr. Jahagirdar's counsel was present and could have helped ensure that any evidence to be found would be preserved until a warrant could be obtained.

## CONCLUSION

For all the foregoing reasons, the evidence at issue must be suppressed.

Respectfully submitted,
By his attorneys,

Kimberly Homan
Mass. Bar No. 239000
20 Park Plaza, Suite 905
Boston, Massachusetts 02116
(617) 227-8616

James W. Lawson
Mass. Bar. No.289300
OTERI, WEINBERG & LAWSON
20 Park Plaza, Suite 905
Boston, Massachusetts 02116
(617) 227-3700

## CERTIFICATE OF SERVICE

I, Kimberly Homan, certify that on this 17th day of May, 2004, I caused one copy of the within motion to be served, by hand, on John T. McNeil, AUSA, United States Attorney's Office, Moakley United States Courthouse, 9th floor, 1 Courthouse Way, Boston, Massachusetts 02210.

Kimberly Homan