UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 04-10038-MLW |
| | ) | |
| DEEPAK JAHAGIRDAR | ) | |
| | ) | |

## DEFENDANT DEEPAK JAHAGIRDAR'S MOTION TO DISMISS COUNTS I AND II FOR LACK OF VENUE AND INCORPORATED MEMORANDUM OF LAW

Now comes the defendant Deepak Jahagirdar and respectfully moves, pursuant to Article III, §2 and the Sixth Amendment to the United States Constitution and to Fed. R. Crim. P. 18, that this Honorable Court dismiss Counts I and II for lack of venue.

As reason therefor, defendant refers the Court to the Memorandum of Law incorporated herein.

### MEMORANDUM OF LAW

### I.    BACKGROUND

On March 31, 2002, in Dallas, Texas, Mr. Jahagirdar boarded a Delta flight bound for Boston, Massachusetts. Seated next to him on the aircraft was "D.S." D.S. has told the government that during the flight, she awoke to discover Mr. Jahagirdar's hand inside her pants. Further according to "D.S.", she immediately left her seat and reported to a stewardess what had occurred. For the balance of the flight, Mr. Jahagirdar remained in his seat, and "D.S." sat elsewhere on the plane. The alleged occurrence upon which the indictment is predicated took place approximately one and one-half hour after take-off from Dallas, approximately two hours from Boston. The pilot and crew consulted Secret Service agents who were coincidentally aboard the plane, returning from duty

in Crawford, Texas, and the decision was made not to arrest Mr. Jahagirdar but instead just to watch

him for the remainder of the flight. The pilot radioed ahead to Logan Airport, where Mr. Jahagirdar

was arrested by a Massachusetts State Trooper.

Mr. Jahagirdar was originally prosecuted in the Massachusetts state courts, charged with rape

and assault with intent to rape. On February 11, 2004, the instant indictment was returned by a grand

jury in the District of Massachusetts, and the state indictments were dismissed. Count One of the

indictment charges Mr. Jahagirdar with an offense under 18 U.S.C. §2242(2):

> On or about March 31, 2002, within the special aircraft jurisdiction of the United States while on board Delta Airlines Flight 2100 which originated in Texas and landed in Boston, in the District of Massachusetts,
> ### DEEPAK JAHAGIRDAR,
> defendant herein, knowingly engaged, and attempted to engage, in a sexual act (to wit: the penetration, however slight, of the genital opening of another by a hand and by a finger, with the intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desire of any person) with another person, to wit: "D.S.", when said person was incapable of appraising the nature of the conduct and was physically incapable of declining participation in, or communicating unwillingness to engage in, said sexual act.

Count Two of the indictment charges Mr. Jahagirdar with a violation of 18 U.S.C. §2244:

> On or about March 31, 2002, within the special aircraft jurisdiction of the United States while on board Delta Air Lines Flight 2100 which originated in Texas and landed in Boston, in the District of Massachusetts,
> ### DEEPAK JAHAGIRDAR,
> defendant herein, knowingly engaged in and caused sexual contact (to wit: the intentional touching, either directly or through the clothing, of the genitalia, groin, and inner thigh of any person, with the intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desire of any person) with another person, to wit: "D.S.", when said person was incapable of appraising the nature of the conduct and was physically incapable of declining participation in, or communicating unwillingness to engage in, said sexual act.

2

## II.    VENUE IS IMPROPER IN THE DISTRICT OF MASSACHUSETTS[1]

The right of criminal defendants to be tried in the jurisdiction where the crime charged

allegedly occurred was so crucial to the Framers that they twice enshrined it in the Constitution:

> The Framers wrote into the Constitution that "The Trial of all Crimes . . . shall be
> held in the State where the said Crimes shall have been committed . . . ." Article III,
> §2, cl. 3. As though to underscore the importance of this safeguard, it was reinforced
> by the provision of the Bill of Rights requiring trial "by an impartial jury of the State
> and District wherein the crime shall have been committed. Sixth Amendment.

*United States v. Georgacarakos*, 988 F.2d 1289, 1293 (1st Cir. 1993), *quoting United States v.*

*Johnson*, 323 U.S. 273, 275 (1944).[2] "The '*locus delicti* [of the charged offense] must be determined

from the nature of the crime alleged and the location of the act or acts constituting it.'" *United States*

*v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999), *quoting United States v. Cabrales*, 524 U.S. 1, 6-7

(1998). "In performing [the venue] inquiry, a court must initially identify the conduct constituting

the offense (the nature of the crime) and then discern the location of the commission of the criminal

acts." *Rodriguez-Moreno*, 526 U.S. at 279. *See, e.g., Georgacarakos*, 988 F.2d at 1293 ("In order

to decide where the crimes occurred we must determine what acts by the defendant constituted the

---

[1]

    While Mr. Jahagirdar most certainly disputes that he committed the crimes charged, he does not believe that there will not be any dispute that the aircraft was not within the District of Massachusetts when the offenses charged allegedly occurred. *See* Massachusetts State Police Report of Investigation, appended hereto as Ex. A, at 2 (["D.S."] "stated she knew they were one and a half (1 ½ ) hours from Boston when this incident occurred"); Massachusetts grand jury testimony of Gwendolyn Pace, excerpt appended hereto as Exhibit B ("D.S." first approached her about an hour and a half into the flight, with about an hour and a half to go). In such circumstances, pretrial resolution of the venue issue is both permissible and appropriate. *See United States v. Bascope-Zurita*, 68 F.3d 1057, 1062 (8th Cir. 1995), *cert. denied*, 516 U.S. 1062 (1996); *see also United States v. Bin Laden*, 146 F.Supp.2d 373, 376-378 (S.D.N.Y. 2001).

[2]

    In addition, Fed. R. Crim. P. 18 provides: "Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."

3

crimes charged"). As the First Circuit has elaborated:

> Venue must be determined from the nature of the crime alleged, determined by analyzing the conduct constituting the offense, and the location (or, if the crime is a continuing one, locations) of the commission of the criminal acts. If the crime consists of distinct parts, taking place in different localities, then venue is proper wherever any part can be proved to have taken place.

*United States v. Scott*, 270 F.3d 30, 35 (1st Cir. 2001), *cert. denied*, 535 U.S. 1007 (2002).[3]

The requisite determination requires an analysis of the "essential conduct elements" of the offense. *See, e.g., Rodriguez-Moreno*, 526 U.S. at 280; *United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002); *United States v. Bowens*, 224 F.3d 302, 309-11 (4th Cir. 2000), *cert. denied*, 532 U.S. 944 (2001); *see also United States v. Wood*, 364 F.3d 704, 710 (8th Cir. 2004)(venue appropriate only in district where conduct comprising the essential elements of the offense occurred). This, in turn, requires an analysis of the statute(s) under which the defendant is charged. The two statutes under which Mr. Jahagirdar is charged provide, in pertinent part:

> Whoever, in the special maritime and territorial jurisdiction of the United States . . . , knowingly –
>     . . . .
>                (2) engages in a sexual act with another person if that other person is
>                         (A) incapable of appraising the nature of the conduct; or
>                         (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act;
> or attempts to do so, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. §2242.

(a) Sexual conduct in circumstances where sexual acts are punished by this chapter.

---

[3]

In *Scott*, the Court "abandon[ed] any suggestion in *Georgacarakos* that the 'key verb' approach was an exclusive approach, as opposed to one helpful approach." *Id.* at 35. *See Rodriguez-Moreno*, 526 U.S. at 280 ("While the 'verb test' certainly has value as an interpretive tool, it cannot be applied rigidly, to the exclusion of other statutory language").

> – Whoever, in the special maritime and territorial jurisdiction of the United States
> . . . , knowingly engages in or causes sexual contact with or by another person, if to
> do so would violate –
>
> . . . .
>
>> (2) section 2242 of this title had the sexual conduct been a sexual act, shall
>> be fined under this title, imprisoned not more than three years, or both.

18 U.S.C. §2244.[4]

Because neither of the statutes at issue has its own venue provision, the analysis outlined in the preceding paragraphs is the applicable method of determining where proper venue lies. *See Georgacarakos*, 988 F.2d at 1293. The essential conduct elements of these offenses are engaging in a sexual act with another person, or attempting to do so, or engaging in or causing sexual contact with or by another person, or attempting to do so, while that person is either "incapable of appraising the nature of the conduct" or "physically incapable of declining participation in, or communicating unwillingness to do so." The offense ends as soon as the defendant ceases to engage in, or to attempt to engage in, a sexual act or sexual contact or when the other person becomes capable of appraising the nature of the conduct or of declining to engage in, or communicating unwillingness to engage in, a sexual act or sexual contact. Here, according to "D.S.", those events occurred more or less simultaneously. Thus, the alleged offenses were long since completed before the aircraft entered the District of Massachusetts. "When a crime consists of a single discrete act, venue lies in the district where that act occurs." *United States v. Sutton*, 13 F.3d 595, 598 (2d Cir. 1994). *See, e.g., United*

---

[4]

The offenses charged here are alleged to have occurred in the "special aircraft jurisdiction of the United States." 49 U.S.C. §46506 provides: "An individual on an aircraft in the special aircraft jurisdiction of the United States who commits an act that – (1) if committed in the special maritime and territorial jurisdiction of the United States . . . would violate . . . chapter 109A of title 18, shall be fined under title 18, imprisoned under that section or chapter, or both . . . ." "Special aircraft jurisdiction of the United States" is defined in 49 U.S.C. §46501(2).

*States v. Marsh*, 144 F.3d 1229, 1242 (9th Cir.)(crime of endeavoring to impede the IRS is complete when the endeavor is made), *cert. denied*, 525 U.S. 973 (1998); *United States v. White*, 887 F.2d 267, 272 (D.C.Cir. 1989)(crime of bribery completed on public officer's receipt or agreement to receive payments for an official act); *cf. United States v. Saavedra*, 223 F.3d 85, 88 (2d Cir. 2000)("For some criminal violations, the unitary character of the acts constituting the crime renders its *locus delicti* obvious"), *cert. denied sub nom. Rodriguez v. United States*, 532 U.S. 976 (2001).

For venue to be proper in the District of Massachusetts, therefore, the offenses charged must be encompassed within 18 U.S.C. §3237(a), which provides:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
>
> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

The offenses charged in this case fall within neither paragraph of §3237.

As to the first paragraph, while it is possible that the alleged offenses were begun in one district and completed in another, they were neither "begun, continued, or completed" in the District of Massachusetts. *See, e.g., Cabrales*, 524 U.S. at 8 (money laundering may be a continuing offense in some circumstances, but it was not a continuing offense where, as here, the transactions were begun, continued, and completed entirely within the state of Florida; venue in Missouri was, therefore, improper); *Bin Laden*, 146 F.2d at 376-77 (while making false statements in violation of 18 U.S.C. §1001 can be a continuing offense if the false statement is made in one district and

received in another, where, as here, the statement was made and received in the same district, the offense is not a continuing one). *See also United States v. Ringer*, 300 F.3d 788, 791 n.1 (7ᵗʰ Cir. 2002), *quoting Travis v. United States*, 364 U.S. 631, 636 (1961)("The continuing offense theory only applies to crimes with 'distinct parts' or that involve 'a continuously moving act'"), *cert. denied*, 538 U.S. 981 (2003).

*United States v. Hall*, 691 F.2d 48 (1ˢᵗ Cir. 1982), is instructive in this context. In *Hall*, the defendant was charged in the Northern District of Illinois,[5] under the predecessor statute to 49 U.S.C. §46504, with interference with a flight crew. The aircraft was diverted to Chicago because of the defendant's disruptive behavior; it was undisputed that the defendant sat quietly in his seat for the last thirty to forty-five minutes of the flight. On this basis, the defendant argued that venue was not proper in the Northern District of Illinois. On appeal, the defendant cited the Court to the special venue provision of the Federal Aviation Act, since repealed, which made indictment and trial permissible "in the district in which [the] offense is committed; or if the offense is committed out of the jurisdiction of any particular State or district, the trial shall be in the district where the offender . . . is arrested or first brought."[6]

---

[5]

The case was transferred to the District of Massachusetts for trial under Fed. R. Crim. P. 21(b).

[6]

The provision applicable to offenses which are not committed in any district has its present-day cognate in 18 U.S.C. §3238, which provides, in pertinent part: "The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender . . . is arrested or is first brought." This provision is applicable only to crimes which occurred wholly, or virtually entirely, extraterritorially, and where the defendant entered the United States from outside its territory. *See, e.g., United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003); *Pace*, 314 F.3d at 351; *United States v. Liang*, 224 F.3d 1057, 1060 (9ᵗʰ Cir. 2000); *United States v. Lee*, 159 F.Supp.2d 1241, 1248 (D.Haw. 2001).

7

Interestingly, the First Circuit decided the case on neither of these grounds, but instead ruled, even though the government had not raised the argument, that the offense continued until the plane landed in Chicago, as the necessity to divert the aircraft to Chicago was a continuing interference with the duty of the captain to fly the aircraft to Boston, its intended destination. The offense was, the Court concluded, punishable in any jurisdiction in which it was "begun, continued, or completed." *Id.* at 50.[7] Hence, venue was proper in the Northern District of Illinois. No such continuity was present in this case; venue cannot, therefore, be laid in the District of Massachusetts under the first paragraph of §3237(a).

Venue in the District of Massachusetts is also not proper under the second paragraph of

---

[7]

In so ruling, the Court found "persuasive authority" in *United States v. Busic*, 549 F.2d 252, 256 (2d Cir. 1977), in which the Second Circuit held that venue was proper in the Eastern District of New York, even though the hijackers did not take over control of the aircraft until it was over Buffalo, New York. The Court reasoned that air piracy was a continuing offense which began in the Eastern District of New York, where defendants lived, where they took numerous steps necessary to their ability to successfully execute the hijacking, and where they boarded the aircraft.

Both *Hall* and *Busic* discuss the convenience to the prosecution and its enhanced ability to designate the place of prosecution as factors underlying the decision that venue was proper where sited. *See Hall*, 691 F.2d at 50; *Busic*, 549 F.2d at 256-57. Such considerations, to the extent that they were ever valid in determining the defendant's constitutionally-protected venue right, do not survive *Cabrales* and *Rodriguez-Moreno*. In *Cabrales*, for example, the Court rejected the government's arguments that the Court should consider the fact that it would be more efficient, and more convenient for the government, to try the defendant in Missouri, as well as the interests of the community where the drug sales which produced the laundered money took place. The Court responded that the government could try the defendant in Missouri *only* if it could show that she had committed a crime punishable in Missouri, for example, as a member of the drug conspiracy charged in Missouri. *See, e.g., Bowens*, 224 F.3d at 311 ("*Cabrales* and *Rodriguez-Moreno* require us to determine venue solely by reference to the essential conduct elements of the crime, without regard to Congress' purpose in forbidding the conduct;" venue improper in district in which no acts of "harboring" fugitive occurred); *see also United States v. Ochoa*, 229 F.3d 631, 636 (7th Cir. 2000)(*Cabrales* stands for the proposition that venue is improper in a district if the only acts that occurred in that district do not provide evidence of the essential elements of the charged crime;" venue proper because overt acts in furtherance of conspiracy occurred in Indiana).

§3237(a). Given the language in which the indictment is couched, describing the flight as one "which originated in Texas and landed in Boston," Mr. Jahagirdar assumes that it is this second paragraph on which the government relies for its assertion of venue in the District of Massachusetts. That reliance is, however, misplaced.

Venue under the second paragraph of §3237(a) in this case depends upon the interpretation of "[a]ny offense involving . . . transportation in interstate commerce." That phrase only applies where the transportation of a person or thing in interstate commerce is an essential element of the offense charged.

> The operative word in section 3237 is "involving," the term to involve being defined as "to include as a necessary circumstance." The American College Dictionary 643 (1970). Any offense which includes interstate transportation as a necessary circumstance is a continuous offense within the meaning of . . . §3237(a).

*United States v. Beech-Nut Nutrition Co.*, 659 F.Supp. 1487, 1493 (E.D.N.Y. 1987)(prosecution for interstate transportation of adulterated and misbranded apple juice). With virtually no exceptions, this is the manner in which the second paragraph has been applied.[8] *See, e.g., United States v. Cole*, 262 F.3d 704, 710 (8th Cir. 2001)(prosecution under the Mann Act for transportation in interstate commerce of a person under the age of 18); *United States v. Barfield*, 969 F.2d 1554, 1557 (4th Cir. 1992)(prosecution for interstate transportation of forged securities); *United States v. Melia*, 741 F.2d 70, 72 (4th Cir. 1984)(prosecution for receipt, concealment, and disposition of stolen goods transported in interstate commerce), *cert. denied*, 471 U.S. 1135 (1985); *United States v. Hankish*, 502 F.2d 71, 73-77 (4th Cir. 1974)(prosecution for interstate transportation of stolen goods and interstate transportation of goods stolen from an interstate shipment); *United States v. DeKunchak*,

---

[8]Those exceptions are discussed at pages 11-12, *infra.*

467 F.2d 432, 437-39 (2d Cir. 1972)(prosecution for interstate transportation of stolen goods in interstate commerce and receiving stolen goods that had been transported in interstate commerce); *Lord v. United States*, 412 F.2d 499, 500-01 (4th Cir. 1969)(prosecution for causing forged checks to be transported in interstate commerce); *Putnam v. United States*, 337 F.2d 313, 316 (10th Cir. 1964)(interstate transportation of stolen vehicle); *Sanders v. United States*, 309 F.2d 17, 19 (10th Cir. 1962)(same), *cert. denied*, 375 U.S. 844 (1963); *Clinton v. United States*, 293 F.2d 47, 47-48 (10th Cir. 1961)(interstate transportation of kidnap victim); *United States v. Gerena*, 709 F.Supp. 52, 53-57 (S.D.N.Y. 1989)(interstate transportation of stolen mail), *aff'd sub nom. United States v. Maldonado-Rivera*, 922 F.2d 934 (2d Cir. 1990), *cert. denied*, 501 U.S. 1211, 1233 (1991). *Cf. Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 601-02 (2002)(Kennedy, J., concurring in the judgment)(noting that because the Child Online Protection Act has an interstate commerce element, venue of offenses charged under the Act would be determined by the second paragraph of §3237(a)).

Further support for this reading of §3237(a) is found in cases decided under the statute's use of the mails clause. For example, in *United States v. Brennan*, 183 F.3d 139, 146-47 (2d Cir. 1999), the Second Circuit concluded that mail fraud was not an offense involving "use" of the mails, as the offense is defined as depositing or receiving mail, or causing it to be delivered, and not as "using" the mails. As part of its analysis, the Court pointed to numerous statutes which expressly prohibit "use" of the mails to commit various crimes. *Id.* at 147. It is to those statutes, the Court reasoned, and not to statutes more narrowly defining particular acts done with respect to the mails, that the use of the mails clause of §3237(a) applies. *See, e.g., Sutton*, 13 F.3d at 599 (prosecution for causing false identification documents to be transported in the mail); *United States v. Moncini*, 882 F.2d 401,

403-44 (9th Cir. 1989)(prosecution for transporting or shipping child pornography in interstate or foreign commerce or through the mails). *But see Wood*, 364 F.3d at 713 (disagreeing with *Brennan*). In *United States v. Ross*, 205 F.2d 619, 621 (10th Cir. 1953), the Court found §3237(a) inapplicable to the offense of knowingly depositing for mailing or delivery items which were statutorily unmailable, because the statute criminalized only the deposit of mail and not the use of the mails. Congress' response was to rewrite the statute so that the offense was defined as use of the mails, not to declare the offense of depositing the mail triable in any offense through which the mail passed. *See Brennan*, 183 F.3d at 148.

Counsel's research has revealed only one case which has dealt with the issue presented here. In *United States v. Breitweiser*, 357 F.3d 1249 (11th Cir. 2004), the defendant was charged with abusive sexual contact with a minor and simple assault of a minor, events which took place aboard an aircraft in flight. The Eleventh Circuit gave the defendant's venue argument short shrift, based upon its view that, to establish venue, the government had only to "show that the crime took place on a form of transportation in interstate commerce." *Id.* at 1253.[9] For this proposition the Court cited *United States v. McCulley*, 673 F.2d 346 (11th Cir. 1982). At issue was proper venue of the offense of "tear[ing], cut[ting], or otherwise injur[ing] any mail bag, pouch, or other thing used or designed for use in the conveyance of mail . . . with the intent to rob or steal such mail . . . ." *Id.* at 349. The Court construed the second paragraph of §3742(a) to apply to any violation of the statute which

---

<div style="padding-left:2em;">

9

   Notably, the First Circuit in *Hall* made no reference to the second paragraph of §3237(a). Had it believed that venue was proper in the Northern District of Illinois simply by virtue of the fact that defendant committed his offense on an airplane, surely it would have grounded its venue decision on §3237(a) rather than engage in extended analysis of the continuity of the defendant's interference with a flight crew.

</div>

11

occurred on some form of transportation in interstate commerce, making the crime a continuing offense.[10] This conclusion was, however, wholly unnecessary to finding venue proper in the Northern District of Georgia, because, as the Court also found, the offense defined by the statute continued through the escape phase, and the defendants committed acts to aid the commission of the offense in the Northern District of Georgia. *Id.* at 350-51. So construed, the statute described a continuing offense as to which venue was proper under the first paragraph of §3237(a). Notably, the Court commented:

> We believe that the policy behind Rule 18 of the Federal Rules of Criminal Procedure and the sixth amendment is in no way undermined by our decision here. That policy, the right to be tried by a jury of one's peers, was designed to prevent abuses such as, *e.g.*, having an individual who committed a robbery in Delaware from being tried in North Dakota. *In the instant case, the criminal conspirators voluntarily entered the Northern District of Georgia with the intent to further the ends of the conspiracy.* Thus, neither the sixth amendment nor [Rule] 18 protects the appellants.

*Id.* at 350 n.2 (emphasis added).[11] This important distinction appears to have been lost on the *Breitweiser* Court.

The *Breitweiser/McCulley* interpretation of the second paragraph of §3237(a) is inconsistent with the plain language of the statute, as well as with its history. As to the latter,  §3237(a) was enacted in 1948 as a response to the Supreme Court's decision in *United States v. Johnson*, 323 U.S. 273 (1944), which held that, absent a special venue statute, venue of the offense of using the mails or the instrumentalities of interstate commerce to send unlawful dentures to another district was only proper in the district from which the dentures were sent and not in the district in which they were

---

10

This portion of *McCulley* has not been followed outside the Eleventh Circuit.

11

This discussion ignores the command of Article III, §2 that *trial* must take place in the district in which the crime was committed.

received. The enactment of §3237(a) indicates a congressional design to address venue problems as to offenses an element of which is movement interstate commerce, including use of the mails, in a single provision which would apply to all such offenses, and obviate the need for a special venue statute attached to each such offense. *See* §3237(a), Historical and Statutory Notes, 1948 Acts. Prior to the enactment of §3237(a), venue as to such offenses was governed by a hodge-podge of special venue statutes applicable to specific interstate commerce crimes. Section 3237(a) largely reflects a distillation of the previously-existing special venue statutes and did not purport to expand upon their general scope. Instead, the purpose was to overrule *Johnson* by making special venue statutes unnecessary for every offense with a use of the mails or interstate commerce element. In the wake of §3237(a), most of those special venue statutes were repealed as unnecessary.

There is no indication that, when it enacted §3237(a), Congress was concerned with the general run of offenses that might be committed aboard airplanes, but only with those which had an interstate commerce element. Venue is usually relatively easy to determine when crimes are committed, for example, aboard trains or busses. An interpretation of §3237(a) to apply to any and all single-act or short duration offenses committed while traveling on any form of interstate transportation sweeps far too broadly to be consistent with Article III, §2, or with the Sixth Amendment. Moreover, had Congress intended such a sweeping expansion of existing venue laws, it surely would have said so.

13

## CONCLUSION

A grand jury may return indictments "only for crimes committed within its district." *United States v. Griffin*, 814 F.2d 806, 810 (1st Cir. 1987). Accordingly, the above-captioned indictment must be dismissed.

<table>
<tr><td></td><td>Respectfully submitted,<br>By his attorneys,</td></tr>
</table>

Kimberly Homan
Mass. Bar No. 239000
20 Park Plaza, Suite 905
Boston, Massachusetts 02116
(617) 227-8616

James W. Lawson
Mass. Bar. No.289300
OTERI, WEINBERG & LAWSON
20 Park Plaza, Suite 905
Boston, Massachusetts 02116
(617) 227-3700

## CERTIFICATE OF SERVICE

I, Kimberly Homan, certify that on this 17th day of May, 2004, I caused one copy of the within motion to be served, by hand, on John T. McNeil, AUSA, United States Attorney's Office, Moakley United States Courthouse, 9th floor, 1 Courthouse Way, Boston, Massachusetts 02210.

Kimberly Homan