**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**UNITED STATES OF AMERICA )**
**)**
**v. ) CRIMINAL NO. 04-10038-MLW**
**)**
**DEEPAK JAHAGIRDAR )**

**Government's Opposition to Defendant's Motion to Dismiss**

The United States of America, by and through Assistant United States Attorney John T. McNeil, respectfully submits this opposition to the defendant's motion to dismiss for want of venue. The defendant argues that the crimes for which he is charged were not committed in the District of Massachusetts, and therefore venue is not proper here. This Court should reject the defendant's motion because Massachusetts provides the best venue for a crime which was committed mid-flight between Texas and Massachusetts, and which made its first scheduled stop in Boston. In particular, venue in this district is proper under 18 U.S.C. § 3237(a), as the crime involved interstate commerce, and the flight brought the defendant into this district shortly after its commission. This conclusion is supported not only by the language of Section 3237(a) and by the only case directly on point, United States v. Breitweizer, 357 F.3d 1249 (11th Cir. 2004), but also by the unique nature of the special aircraft jurisdiction in which the offense was committed. Special aircraft jurisdiction was created to free courts from attempting to do precisely what the defendant seeks this Court to do: determine the exact moment and location of the offense, and then find venue in the judicial district over which the aircraft was flying.

**Relevant Facts and Procedural History**

An outline of the relevant facts is set forth in the Government's Opposition to Defendant's Motion to Suppress (June 29, 2004), and is incorporated herein by reference. In sum, on the afternoon of March 31, 2002, the defendant sexually assaulted a 22-year old woman seated next to him on Delta Air Lines Flight 2100 traveling from Dallas/Fort Worth, Texas to Boston, Massachusetts. The flight departed Dallas at approximately 1:30 p.m. (local time) and the assault was discovered approximately 1.5 hours into the flight. The precise duration of the assault remains unclear because Victim D.S. was asleep when it commenced. She awoke to find her body covered with a blanket, her pants unzipped, and the defendant's hand in her vagina.

The location of the flight at the time of the assault is also uncertain. The flight crew estimated that Victim D.S. alerted them approximately 1.5 hours into the flight. As noted, the assault may have commenced some time earlier. Delta representatives have estimated that at 1.5 hours into the flight, the aircraft was traveling at 33,000 feet, was moving at approximately 442 nautical air miles per hour, and was located somewhere near the border between Indiana and Ohio.[1]

Because the defendant remained calmly in his seat after the assault, the flight continued to Boston and made its regularly scheduled stop there. The defendant was detained and then arrested by Massachusetts State Police upon his arrival in Boston. DNA evidence was collected from him in Boston and analyzed in a Massachusetts State Police crime laboratory. The troopers

[1] See Exhibit 1.

interviewed not only the victim but the flight crew and law enforcement officers who were on the flight while they were in Boston. The victim was taken to a Boston-area hospital for an evaluation and a rape kit. The victim and her family are lifelong residents of Massachusetts.

On February 11, 2004, the defendant was charged by a federal grand jury sitting in Boston in a two count indictment. Count I charges the defendant with committing sexual abuse or attempted sexual abuse in the special aircraft jurisdiction of the United States in violation of 49 U.S.C. §46506 and 18 U.S.C. §2242(2). Count II charges the defendant with having abusive sexual contact with a person in the special aircraft jurisdiction of the United States in violation of 49 U.S.C. §46506 and 18 U.S.C. §2244(a)(2).

**Argument**

The defendant argues that the offenses with which he has been charged did not occur in, or over, the District of Massachusetts, and therefore venue is not proper here. While he does not dispute that federal courts have jurisdiction over these offenses, he appears to claim that venue is only proper in that federal district above which the aircraft was traveling at the time of the assault. Notably, he does not identify that district, nor can he with any specificity, given the rate at which the aircraft was traveling and the lack of specificity as to the exact time the assault occurred. Moreover, the defendant makes no mention of the fact that this unknown district over which the fight was traveling at the time – whether it be Indiana, Ohio or some other district – has virtually no connection to the crime, while Massachusetts is substantially connected with it.

This Court should reject the defendant's argument because it relies on notions of venue which are inapplicable to the unique nature of special aircraft jurisdiction. Most simply put,

the crime occurred inside an aircraft which had no connection with the state more than 30,000 feet below it, but which had a substantial connection with the state in which the aircraft was scheduled to land. By providing for federal jurisdiction and venue in the location where an aircraft lands, the courts and Congress have recognized the unique nature of the location of mid-flight offenses, and the difficulty of establishing jurisdiction and venue in the state over which an aircraft was traveling at the time of the offense. As a result, in cases such as this, where an assault occurred mid-flight, the prosecution of the defendant in that location where he chose to land is constitutionally permissible and consistent with the applicable statutes and case law.

**I. The defendant is charged with an offense which involves transportation in interstate commerce and venue is proper where the defendant is brought by the aircraft.**

Venue for a mid-flight sexual assault occurring at 33,000 feet above ground aboard a commercial United States air carrier is proper in the District of Massachusetts under 18 U.S.C. § 3227(a), because the offense was one "involving . . . transportation in interstate commerce" and such an offense may "be inquired of and prosecuted in any district from, through, or into which such commerce . . . or person moves." See 18 U.S.C. § 3227(a). The relevant venue statute reads in pertinent part:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
>
> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

Id. Both offenses charged in this case fall within the second paragraph of this section.

The government has alleged in the indictment, and must prove as an element of the offense at trial, that the sexual assault of Victim D.S. occurred in the "special aircraft jurisdiction of the United States."[2] In this case, jurisdiction will be established by proving that the flight aboard which this offense occurred was a civil aircraft of the United States in flight. See 49 U.S.C. § 46501(2)(A). During the assault, this aircraft was engaged in "interstate air commerce" as it involved the "transportation of passengers" from one state to another "for compensation." See 49 U.S.C. § 40102(a)(24)(A). Moreover, the flight was traveling in airspace over which the federal government asserts exclusive sovereignty. See 49 U.S.C. § 40103(a)(1). The flight was also traveling at an altitude which is classified by the Federal Aeronautics Administration as "Class A" airspace, which is exclusively controlled and

---

[2] The special aircraft jurisdiction of the United States is defined at 49 U.S.C. § 46501(2):

> "special aircraft jurisdiction of the United States" includes any of the following aircraft in flight:
> (A) a civil aircraft of the United States.
> (B) an aircraft of the armed forces of the United States.
> (C) another aircraft in the United States.
> (D) another aircraft outside the United States--
> (i) that has its next scheduled destination or last place of departure in the United States, if the aircraft next lands in the United States;
> (ii) on which an individual commits an offense (as defined in the Convention for the Suppression of Unlawful Seizure of Aircraft) if the aircraft lands in the United States with the individual still on the aircraft; or
> (iii) against which an individual commits an offense (as defined in subsection (d) or (e) of article I, section I of the Convention for the Suppression of Unlawful Acts against the Safety of Civil Aviation) if the aircraft lands in the United States with the individual still on the aircraft.
> (E) any other aircraft leased without crew to a lessee whose principal place of business is in the United States or, if the lessee does not have a principal place of business, whose permanent residence is in the United States.

maintained by the federal government. See 14 C.F.R. §71.33. Since the offense in this case requires the government to prove that it occurred in the special aircraft jurisdiction of the United States, and it involved transit through federal airspace on a carrier engaged in interstate commerce, the offense "involved transportation in interstate . . . commerce," as that phrase is used in 18 U.S.C. § 3227(a). As such, venue is proper in the location where the aircraft lands, regardless of the precise location over which the crime occurred.

The only circuit court to address this issue has reached the same conclusion. In United States v. Breitweizer, 357 F.3d 1249 (11th Cir. 2004), the defendant sexually assaulted a child on a flight from Houston to Atlanta. He was arrested upon arrival in Atlanta and prosecuted in that district. Breitweizer, 357 F.3d at 1252-53. The defendant challenged venue arguing, as the defendant does in this case, that the venue was not proper where the plane landed, but in the district over which the assault occurred. Id. In rejecting that argument, the Eleventh Circuit held that venue was proper in the location where the aircraft landed, relying on the second paragraph of 18 U.S.C. § 3237(a). Id. "The government met its burden by showing that [the defendant] committed the crimes on an airplane that ultimately landed in Georgia. . . a showing that transportation in interstate commerce was involved is sufficient. It would be difficult if not impossible for the government to prove, even by a preponderance of evidence, exactly which federal district was beneath the plane when [the defendant] committed the crimes." Id.

Breitwiezer's application of 18 U.S.C. § 3237(a), to mid-fight sexual assaults is consistent with the legislative history of the statute establishing federal jurisdiction for crimes committed aboard aircraft. The impetus for creating such jurisdiction was to ensure that those

individuals who commit crimes aboard aircraft in mid-flight do not escape from prosecution because of the conundrum posed by determining precisely where the offense took place. Id.; H. Rep. No. 87-958, reprinted in 1961 U.S.C.C.A.N. 2563, 2563-65. It was also created because the state which happens to be beneath a mid-flight crime often has the least interest in the crime, and the least power over the defendant. Id.

In amending the Federal Aviation Act to include traditional state crimes committed aboard aircraft, Congress concluded:

> [C]rimes committed in the airspace over a State pose peculiar and extremely troublesome problems of enforcement which are not present when such crimes take place on the ground. When a criminal moves the scene of his activity to an aircraft in flight he is able to take advantage of practical and physical difficulties that may seriously impair effective apprehension and prosecution, particularly if the offense is one against the law of a State rather than against Federal law. Furthermore, in the case of offenses against State law, State officials are often faced with an insuperable task in trying to establish that a particular act occurred in the airspace over that State-- and in some cases, under State law, it would be necessary to prove that the offense was committed over a particular county in the State. It is obvious that such proof may be very difficult and often impossible if the offense is committed on a jet aircraft traveling at 600 miles per hour at an altitude of 30,000 feet.
>
> . . . [T]he advent of high-speed high-altitude flights of modern jet aircraft has complicated the problem of establishing venue for the purposes of prosecution. In some recent instances, serious offenses have gone unpunished because it was impossible to establish to any reasonable degree of accuracy the State over which the crime was committed.
>
> . . . [The] State above which the crime may have been committed is often not the State in which the aircraft lands. The second State has no jurisdiction, and cannot even arrest the criminal. If the State over whose territory the crime occurred is disposed to act, it first must collect the evidence necessary to establish that a crime has been committed within its jurisdiction. This evidence, however, is hard to gather when the witnesses on board the aircraft disperse after landing. Assuming that an indictment is returned in the first State, there is still the question of extradition and not all crimes are extraditable. **In contrast if the crime also involved violation of federal law, the offender could be taken into custody by Federal law-enforcement agents when the aircraft lands and**

**criminal prosecution instituted.**

H. Rep. No. 87-958, reprinted in 1961 U.S.C.C.A.N. 2563, 2563-65 (emphasis added). While this legislation did not specifically address venue for the type of crime committed in this case – one which was completed before entering the airspace over the district in which the flight landed – it can readily be inferred that had that issue been addressed, Congress would have provided for venue in the district where the flight lands.

Any interpretation of the general venue provisions governing crimes aboard aircraft must be construed in their broadest manner and consistent with the Congressional purpose in creating special aircraft jurisdiction. In rejecting a defendant's venue challenge to a crime which occurred mid-flight over several judicial districts, the Second Circuit in United States v. Busic, 549 F.2d 252 (2nd Cir. 1977), concluded:

> Congress responded to a national epidemic of hijackings by making air piracy a federal crime. A major benefit of this action, according to the Report of the House Committee on Interstate and Foreign Commerce, was the expected alleviation of the insuperable difficulties that law enforcement officials encountered in determining the exact state and county in which the seizure of an aircraft occurred. Recent airborne crimes had dramatically underscored gaps in existing laws that provided suspects with a haven from prosecution. 1961 U.S.Code Cong. & Adm. News pp. 2563-2566. Any rational construction of §1473(a) must account for Congress's special concern to permit a just and convenient locus for prosecution of this most unique crime which can begin and continue to be committed over several states in this high speed jet travel age in a matter of minutes. Accordingly, it appears and the appellees do not seriously dispute that Congress intended the Government to enjoy the broadest possible choice of venue within constitutional bounds.

Busic, 549 F.2d at 256-57.

Thus, in the case of mid-flight sexual assaults, where Congress did not provide a specific venue provision, the Court may rely on the general provisions of 18 U.S.C. § 3237(a), construed in light of the legislative history granting federal courts jurisdiction over these

crimes, while taking into consideration the need to grant the government the "broadest possible choice of venue within constitutional bounds." Id. This Court should reject the defendant's "hyperconstricted" venue argument in favor of the commonsensical application of the statute which provides venue in this district. Id.

This result is also consistent with federal courts' routine practice of determining a defendant's guilt for mid-flight crimes in the district in which the defendant lands, regardless of the precise location over which the crime occurred. See e.g. United States v. Barberg, 311 F.3d 862 (7th Cir. 2002)(sexual assault in mid-flight on trip from San Francisco to Chicago prosecuted in Chicago where plan landed, even though assault occurred "shortly after takeoff"); United States v. Meeker, 527 F.2d 12, 13-14 (9th Cir. 1975)(assault occurred mid-flight between Miami and San Francisco, plane diverted to Las Vegas and defendant prosecuted in district where plane landed); United States v. Butt, 16 F.3d 412 (4th Cir. 1994)(unpublished)(assault which occurred in mid-flight between Los Angeles and Washington/Dulles brought in district where flight landed); United States v. Guerrero, 193 F.Supp.2d 607, 609-610 (E.D.N.Y. 2002)(assault occurred after take-off from New York, but flight returned to NY and defendant prosecuted in that district).[3]

---

[3] In some cases, courts appear to have gone out of their way to find, as a factual matter, that the offense was a continuing one which was commenced or continued in the district where the flight departed or landed. See United States v. Hall, 691 F.2d 48, 50-51 (1st Cir. 1982)(finding venue proper in district where flight landed by determining that offense continued while in flight over that district); United States v. Busic, 549 F.2d 252, 255-57 (2nd Cir. 1977)(finding venue in the New York district of departure by concluding that crime commenced in that district and continued into other districts).

**II. Finding venue in this district is also supported by the language in 18 U.S.C. § 3238, calling for prosecutions of aircraft crimes in the district where the defendant is first brought or arrested.**

Finding venue in Massachusetts is also supported by the alternative venue provision at 18 U.S.C. §3238. That provision reads in pertinent part:

> The trial of all offenses begun or committed . . . elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought . . .

18 U.S.C. § 3238. This provision is most commonly applied to crimes which occur in international waters, international airspace or in foreign countries; venues lies in the district where the defendant first lands in the United States. See e.g. United States v. Liang, 224 F.3d 1057, 1059-60 (9th Cir. 2000)(conspiracy committed in international waters and defendant prosecuted in district first brought); Chandler v. United States, 171 F.2d 921, 932-33 (1st Cir. 1948)(treason against the U.S. committed in Germany was properly prosecuted in Massachusetts because defendant first brought there); United States v. Yousef, 327 F.3d 56 (2d Cir. 2003)(plot to plant bombs on American aircraft which occurred in Philippines properly prosecuted in New York, where defendant first brought). While the government is not aware of any case which has applied Section 3238 to crimes committed in domestic Class A airspace, the section makes clear that there is no constitutional infirmity with finding venue in a location where an aircraft lands, and it is consistent with the Congressional purpose in establishing jurisdiction and venue in the location of arrest when there is otherwise no locus for the crime on United States soil. Id. Section 3238 reflects the same practical concerns presented by the unique problems of crimes committed aboard aircraft in flight: it is difficult, if not impossible to determine, in what "**particular** State or district" an offense is committed. Id. Congress

concluded that in the absence of a cognizable State or district for the prosecution of a mid-flight offense, venue is appropriate in the district where the defendant is first brought and arrested. Id.; 18 U.S.C. § 3238 .

**III. Massachusetts is also the proper venue under the "substantial contacts" test.**

Finally, general principles applicable to determining venue, as well as common sense, support the conclusion that venue is proper in Massachusetts. In the absence of specific statutory direction regarding venue for a charged crime, the application of constitutional provisions support the conclusion that venue is proper in the district that has the greatest connection to the crime. See United States v. Reed, 773 F.2d 477 (2nd Cir. 1985)(deciding venue for perjury prosecution on constitutional principles in the absence of statutory direction and applying multi-part "substantial contacts" test).

"The constitution requires that the venue chosen be determined from the nature of the crime charged as well as from the location of the act or acts constituting it, and that it not be contrary to an explicit policy underlying venue law." Reed, 773 F.2d at 480. In Reed, the Second Circuit concluded that venue for a perjury prosecution was proper in the Southern District of New York, even thought the perjurious act was committed in San Francisco. After determining that the perjury statute did not have a specific venue provision, the Reed court determined that venue should be determined by a "substantial contacts rule that takes into account a number of factors – the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate fact finding . . ." Id. at 481. Of particular relevance was the third factor: "places that suffer the effects of a crime are entitled to consideration for venue purposes. Such districts

have an obvious contact with the litigation in their interest in preventing such effects from occurring." Id. at 482.

Applying the "substantial contacts" test to this case reveals that this district, more than any other district, has the greatest connection to the crime. In particular, an evaluation of the third and fourth Reed tests, reveals that this District provides the most "substantial contacts." With respect to the effect of the conduct, the victim, who was living with her parents at the time of the offense, is a lifetime resident this state. The greatest impact of this offense has been on her and her family. Moreover, state services expended for her care – whether they be for health care or victim services – will be expended in Massachusetts. Moreover, Massachusetts has a compelling interest in insuring that travelers embarking or disembarking at Logan International Airport are transported safely, and that criminals disembarking from an aircraft do not pass freely into the Commonwealth.

This is also the district most suitable for accurate fact-finding: the Secret Service response onboard the airplane was by agents based in Massachusetts; the Massachusetts State Police responded to the crime by arresting the defendant shortly after his arrival in Boston, booking him, and taking important evidence from his person. All of the forensic work, including DNA analysis, was done in this district. In addition, the victim was examined at a local hospital, and a rape kit was completed on her there.

It is also likely that other witnesses, including passengers and flight crew members, have a substantial connection to Massachusetts; they either chose this district as their destination, or chose to work on a route which takes them to Boston. As a result, virtually all of the witnesses and the victim are available in this district to testify.

With respect to the first two Reed tests, no district has a greater claim to this case based on the "site of the crime" or the "nature and elements of the crime." The crime occurred in an aircraft 33,000 feet above the border between Ohio and Indiana. The fact that it occurred over these states is a complete fortuity, and neither state has a cognizable interest in the conduct of individuals in an aircraft which is not intending to land in that state.

Finally, the defendant has a substantial connection to Massachusetts. He chose to travel to Boston, and he chose to commit the offense on his way here. This is not an instance where a plane, destined for some other location, was diverted to Massachusetts. See, e.g. United States v. Cafiero, 242 F.Supp.2d 49, 50 (D.Mass. 2003)(narcotics charges dismissed where defendant who was on a flight from Cancun, Mexico to Rome, and flight diverted to land at U.S. airport). It is apparent that the defendant himself has a greater connection to Massachusetts than he does to Indiana, Ohio, or even Texas, where the flight originated.[4]

**IV. Traditional notions of venue based on the location where the crime was committed provide no helpful guidance, or binding precedent, when the crime was committed in the special aircraft jurisdiction of the United States.**

This Court should reject the defendant's argument that venue is improper in Massachusetts, because that argument it relies on concepts and cases which are neither binding nor helpful in determining "where the offense was committed," for purposes of venue. See U.S. Const., article III, §2, cl. 3 ("Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed); U.S. Const., amendment VI (trial "by an impartial jury of the State and district wherein the crime shall have been committed"); Fed.R.Crim.P. 18 ("prosecution shall be had in a district in which the offense was committed"). The defendant's

---

[4] The defendant is a resident of Scottsdale, Arizona.

argument, which calls on the Court to determine over which state the offense occurred, is contrary to the Congressional intent in creating special aircraft jurisdiction, and runs counter to the only commonsense manner of determining venue when a crime occurs mid-flight. See Breitweizer, 357 F.3d at 1252-53. The defendant's reliance on the Supreme Court's decisions in United States v. Rodriguez-Moreno, 526 U.S. 275 (1999) and United States v. Cabrales, 524 U.S. 1 (1998), is misplaced. Neither of these decisions address the unique issues present when the crime is committed on an aircraft more than 30,000 feet above the surface of the earth. If anything, the Rodriguez-Moreno decision supports the government's argument because it recognizes that venue may properly be found in several districts when the offense was a continuing one; the Supreme Court then went on to reject a rigid application of venue where a multi-district crime was committed. Rodriguez-Moreno, 526 U.S. at 280-281.

**Conclusion**

The government respectfully requests the Court to deny the defendant's motion to dismiss. Whether analyzed by the venue statutes, by the purposes underlying the creation of special aircraft jurisdiction, or by constitutional principles guided by the "substantial contacts" test, the only logical place to try this case is in the District of Massachusetts.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

Date: June 29, 2004

By: /s/ John T. McNeil
JOHN T. MCNEIL
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of the foregoing pleading on counsel for the defendant, James W. Lawson, Esq., by mailing a copy to him by first class mail to Oteri & Lawson, PC, 20 Park Plaza, Suite 905, Boston, MA 02116 on June 29, 2004.

/s/ John T. McNeil
John T. McNeil
Assistant U.S. Attorney