UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                         )
        v.               )        CRIMINAL NO. 04-10038-MLW
                         )
DEEPAK JAHAGIRDAR        )

**Government's Supplemental Opposition to Defendant's Motion to Dismiss**

The United States of America, by and through Assistant United States Attorney John T. McNeil, respectfully submits this supplemental memorandum in opposition to the defendant's motion to dismiss. The government continues to rely on the arguments set forth in its opposition filed on June 29, 2004. In particular, venue in this district is proper under 18 U.S.C. § 3237(a)[1], as the crime involved transportation in interstate commerce, and the aircraft brought the defendant into this district shortly after he committed the charged offenses. The conclusion that a sexual assault aboard an aircraft constitutes an offense involving transportation in interstate commerce, and that 18 U.S.C. § 3237(a) permits venue in the place

---

[1]The relevant venue statute reads in pertinent part:

Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

where the aircraft is scheduled to land, is supported by the only case directly on point, United

States v. Breitweizer, 357 F.3d 1249 (11ᵗʰ Cir. 2004).  Venue is also proper in this district

pursuant to 18 U.S.C. §3238 because the crime was not committed in "the jurisdiction of any

*particular* State or district," (emphasis added)[2] as there is no precise manner of determining

over what particular judicial district the flight was traveling at the time of the offense.  See

Breitweizer, 357 F.3d at 1253 ("it would be difficult if not impossible for the government to

prove, even by a preponderance of the evidence, exactly which federal district was beneath the

plane when [the defendant] committed the crimes"); Chandler v. United States, 171 F.2d 921,

931 (1ˢᵗ Cir. 1949 )(discussing history of extending venue to locations over which no "particular

state" had jurisdiction); United States v. Williams,  589 F.2d 210, 213 (5ᵗʰ Cir. 1979) (venue

statutes not mutually exclusive).[3]  In establishing special aircraft jurisdiction Congress was

clear that it did not want the courts to engage in the process of attempting to determine over

what judicial district a flight was traveling to establish venue or jurisdiction.  See

---

[2]  Section 3238 reads in pertinent part:

> The trial of all offenses begun or committed . . . elsewhere out of the jurisdiction
> of any particular State or district, shall be in the district in which the offender, or
> any one of two or more joint offenders, is arrested or is first brought . . .

[3]  The government has maintained throughout that there is no means of establishing the
precise location of the flight at the time of the defendant's assault.  While the government noted
at the hearing on October 7, 2004, that such a factual conclusion is not necessary for the Court to
make a determination under 18 U.S.C. § 3237(a), such a factual conclusion is necessary for a
determination under 18 U.S.C. § 3238.  Until the date of the hearing, the government understood
that the defendant did not dispute the facts alleged by the government in its opposition including
the fact that it was not possible to determine the precise location of the flight. See Joint Report
on Defendant's Motions (September 21, 2004).  The difficulty in establishing this fact is due in
part to the high speed and altitude of the flight and in part due to the fact that the estimate of the
time the offense occurred is not sufficiently precise to be used to pinpoint the location of the
aircraft.  The defendant needs to clarify whether these facts are disputed or may be stipulated.

Government's Opposition at 6-9.  Since the operative language of 18 U.S.C. §3238 was in

place at the time Congress authorized special aircraft jurisdiction, it can be reasonably inferred

that Congress recognized that an aircraft flying five miles over the surface of the earth was in

no "*particular* State or district," and that venue could be established under 18 U.S.C. §3238.

In fact, the impetus for the creation of special aircraft jurisdiction was precisely the problem

that no particular state or district had a vested interest in adjudicating aircraft crimes when

those crimes were committed in the airspace above them. Id.

By order dated October 11, 2004, the Court posed a number of questions to the parties

related to venue.  This supplemental memorandum responds to those questions.

I.    **An offense committed aboard an aircraft flying above a judicial district is committed in that district for purposes of 18 U.S.C. §3237(a) .**

There is persuasive authority for the proposition that offenses committed aboard an

aircraft in flight are committed in the district or districts over which the flight was traveling at

the time of the offenses, and venue will lie in each such district pursuant to 18 U.S.C.

§3237(a).  See, e.g.  United States v. Ramirez-Amaya, 812 F.2d 813, 816 (2nd Cir. 1987)(course

of a flight carried an airplane over both Eastern and Southern Districts of New York, and venue

was proper in both districts); United States v. Williams, 536 F.2d 810, 812 (9th Cir. 1976) (flight

over the Southern District of California during course of narcotics conspiracy sufficient to

support venue there); United States v. Barnard, 490 F.2d 907, 911 (9th Cir.1973)(for purposes of

venue "the navigable airspace above that district is a part of the district").  Since these cases and

others give a broad interpretation of what constitutes "a district" for purposes of applying 18

U.S.C. §3237, it cannot be fairly argued that 18 U.S.C. §3238 is the only statute which addresses

crimes committed in mid-flight.  Rather, as noted above, and as the court in Breitweizer

concluded, Section 3237(a) provides multiple venues for criminal conduct aboard aircraft in

flight, including, in certain circumstances, venue in the districts over which a flight travels. See

Government's Opposition at 4-9.  This expansive reading of venue under 18 U.S.C. §3237(a) is

consistent with the Supreme Court's recognition of the growth of multi-district crimes, see, e.g.

Armour Packing Co. v. United States, 209 U.S. 56, 77 (1908)("This situation arises from modern

facilities for transportation and intercommunication in interstate transportation, and

considerations of convenience and hardship, while they may appeal to the legislative branch of

the government, will not prevent Congress from exercising its constitutional power in the

management and control of interstate commerce"), and the need to insure that crimes committed

in the course of interstate transportation – particularly on aircraft – are adequately addressed by

the courts, as set out in the legislative history of special aircraft jurisdiction.  See Government's

Opposition at 6-9.

It is notable that while courts have given a broad interpretation of 18 U.S.C. §3237(a),

thereby permitting venue for crimes committed in the airspace above judicial districts, the

government is unaware of any case in which a court has determined that the constitutional limits

placed on venue have required prosecution of crimes committed mid-flight only in those districts

above which the aircraft was traveling at the time of the offense.  The constitutional

requirements that, "Trials of all crimes . . . shall be held in the State where the said Crimes shall

have been committed," (Article III, §2, cl. 3), and that defendants have a right to a trial "by an

impartial jury of the State and district wherein the crime shall have been committed," (Sixth

Amendment), have not been interpreted to limit mid-flight crimes to the districts above which

the crafts were traveling at the time of the offense.  No one could seriously argue that the framers

of the Constitution intended that crimes committed five miles above the surface of the earth

could only be prosecuted in those districts above which the flight was traveling, particularly

when imposing such a requirement would subject a defendant to precisely the kind of evil the

framers were seeking to avoid with those constitutional provisions: these protections were added

to prevent the removal of a defendant to a foreign location, far from his home, to be tried before

a group of strangers.  See gen. United States v. Cabrales, 524 U.S. 1, 6 (1998) (constitutional

venue protections included in response to Great Britain's practice of transporting colonists to

England to be tried).

II.    **Offenses "involving" transportation in interstate commerce under 18 U.S.C.
       §3237(a) , need not include such transport as an element of the offense**.

There is little in the legislative history of 18 U.S.C. §3237(a) which illuminates the

meaning of the word "involving."  However, one can glean from the limited legislative history

and subsequent cases that Congress meant 18 U.S.C. §3237 to expand venue up to the

constitutional bounds.  See H.R. Rep. 304, 80th Cong. 1st Sess. (1948) ("The revised section

removes all doubt as to the venue of continuing offenses and makes unnecessary special venue

provisions except in cases where Congress desires to restrict the prosecution of offenses to

particular districts."); United States v. Cashin, 281 F.2d 669, 674 (2nd Cir. 1960)(Section

3237(a) "clearly . . . intended to broaden the venue permissible under the pre-existing law, not

to restrict the provision set forth in the preceding paragraph of the section.").  Nothing in the

legislative history suggests that Congress intended a circumscribed or cramped meaning of the

word "involved." Id.  To the contrary, when the Supreme Court interpreted Section 3237 to

limit its reach, Congress responded by amending it to provide more expansive venue.  See H.

Rep. 304, 80th Cong. 1st Sess. (1948) ("The last paragraph of the revised [§3237] was added

to meet the situation created by the decision of the Supreme Court of the United States in

United States v. Johnson, 65 S.Ct. 249 (1944), which turned on the absence of a special venue

provision in the Dentures Act."); see also See Abrams, Conspiracy and Multi-Venue in Federal

Criminal Prosecutions: The Crime Committed Formula, 9 U.C.L.A. L.Rev. 751, 792-93

(1962)(citing other instances of Congress extending venue beyond bounds initially set by

courts).

Cases interpreting the term "involving," both in applying 18 U.S.C. §3237(a), and in

applying the use of the term in other statutes, reveal that the government need not establish that

interstate commerce is an element of the offense.  As argued before, Breitweizer is directly on

point.  In that case the Eleventh Circuit concluded that venue would lie so long as "the crime

took place on a form of transportation in interstate commerce."  Breitweizer, 357 F.3d at 1253.

Similarly, the court in United States v. McCulley, 673 F.2d 346, 350 (11th Cir. 1982),

concluded that the government need not establish that interstate transportation was an element

of the offense to trigger the venue provision in the second paragraph of 18 U.S.C. §3237(a).  In

McCulley, the defendants were charged with damaging mail bags; they did so while on board

an interstate flight.  The court found that, "[t]he crime in the instant case took place on a form of

transportation in interstate commerce. . .  It is precisely this sort of situation that 18 U.S.C.

§3237 was meant to deal with.  It is a catchall provision designed to prevent a crime which has

been committed in transit from escaping punishment for lack of venue. . .  Its enactment was

designed to eliminate the need to insert venue provisions in every statute where venue might be

difficult to prove." McCulley, 673 F.2d at 350.

Faced with a similar venue challenge in a firearms prosecution under 18 U.S.C.

§922(e), a district court in United States v. Solan, 792 F.Supp. 99, 100 (M.D. FL 1992)

reached the conclusion that, "[t]he word 'involving' [in 18 U.S.C. §3237] connotes a less

stringent meaning than a requirement that the interstate commerce be an actual element of the

crime. Instead, 'involving' means to include as a circumstance. There is no question that

interstate transportation is included as a circumstance in the commission of the crime of

delivery of a package containing firearms to a contract carrier for interstate transportation.

Although the actual interstate transportation is not a necessary circumstance to the commission

of the crime, it is nevertheless a circumstance."

Likewise, as a general proposition, "the word 'involving' itself suggests that the

subsection should be read expansively, see, e.g., *American Heritage College Dictionary* 717

(3d ed. 1997) (defining "involve" as "[t]o have as a necessary feature or *consequence*"

(emphasis added)." United States v. Brandon, 247 F.3d 186, 190-191 (4th Cir. 2001)(relying

on a broad interpretation of the word in United States v. James, 834 F.2d 92 (4th Cir. 1987)) .

In Brandon the court was called upon to decide whether a prior conviction of possession of a

controlled substance qualified as a serious drug offense under 18 U.S.C. §924(e), when that

possession also involved an intent to distribute that controlled substance.  Brandon concluded,

"we agree with the government that a prior conviction constitutes a serious drug felony if the

underlying crime involves possession with intent . . . even if that intent is not a formal element

of the crime under state law." Brandon, 247 F.3d 191.[4]

---

[4]  While not directly on point, the Supreme Court in Cabrales concluded that the crime of
money laundering "might rank as a continuing offense, triable in more than one place, if the
launderer acquired the funds in one district and transported them to another." Cabrales, 524 U.S.
at 8.  Since money laundering does not include interstate transportation as an element of the
offense, Cabrales appears to confirm the notion that "involving" is not synonymous with
"element of the offense."

Principles of statutory construction also support the conclusion that the word "involving" encompasses a broader category of crimes than just those in which interstate transport is an element of the offense. See Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649, 653-654 (1st Cir. 1997) ("an inquisitive court should assume that the words of the statute, if not specially defined, comport with their ordinary meaning, and that the words, so read, accurately express the legislature's intent").  In short, if Congress intended the second paragraph of 18 U.S.C. §3237(a) to be limited only to those offenses which had proof of interstate commerce as an element of the offense, it would have so written.   Instead, Congress chose the broader term "involving" to reach those cases for which interstate transport was a necessary feature or consequence of the offense.  See Breitweizer, 357 F.3d at 1253; McCulley, 673 F.2d at 350.

**III.    Referring to a crime which involves interstate transport as a "continuing offense," lends little to the analysis**

That Congress characterized those crimes which involve interstate transport as "continuing offenses" does not inform or elucidate the scope of 18 U.S.C. §3237(a) or alter the analysis set out above. It appears that Congress adopted this rubric from the early Supreme Court cases which concluded that the constitution permitted venue in multiple districts where an offense involved interstate transport.  See, e.g.  Armour Packing Co. v. United States, 209 U.S. at 71-77; United States v. Johnson, 323 U.S. 273, 275 (1944)("(b)y utilizing the doctrine of a continuing offense, Congress may, to be sure, provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates.").  While one commentator has suggested a distinction between those types of crimes covered by the first paragraph of 18 U.S.C. §3237(a) and those covered by the second paragraph of that section,

the same commentator noted that courts regularly confuse the two and use similar language to

analyze both.  See Abrams, Conspiracy and Multi-Venue in Federal Criminal Prosecutions:

The Crime Committed Formula, 9 U.C.L.A. L.Rev. 751, 799-800 (1962).

IV.    **There is no constitutional infirmity with concluding that Congress intended crimes committed aboard aircraft to be tried in the location where the flight lands**

As noted above, the government is aware of no case which interprets either Article 2 or

the Sixth Amendment of the Constitution to limit crimes committed mid-flight to those

districts over which the flight was traveling at the time of the offense.  To do so would directly

contradict the protections afforded by those very constitutional provisions.  See supra at 4-5.

Such an interpretation would lead to charges being brought in districts in which the defendant

may never have set foot, where no witness resides, and where no evidence was taken or

preserved.

By contrast, applying the second paragraph of 18 U.S.C. §3237(a) to crimes committed

in the special aircraft jurisdiction of the United States, as the court did in Breitweizer, is

constitutionally permissible for the same reason that the venue provision at 18 U.S.C. §3738

does not offend the constitution: in the absence of a cognizable location in one of the many

states, the Constitution permits Congress to establish venue in a location where the defendant

is brought.  See Chandler v. United States, 171 F.2d 921, 931 (1st Cir. 1949 ); see also Johnson,

323 U.S. at 274 ("Congress may constitutionally make [a crime] triable in any federal district

through which an offending denture is transported").  In evaluating venue challenges, the

Supreme Court's concern has been with "prosecution remote from home and from appropriate

facilities for defense.  It also leads to the appearance of abuses, if not to abuses, in the selection

of what may be deemed a tribunal favorable to the prosecution." Johnson at 275.  Neither of

these concerns are present in this case because the defendant chose to come to Massachusetts, and chose to commit an offense aboard a flight which was to take him to this destination.  That Massachusetts is far from the defendant's home in Arizona is of little import in this case because the defendant chose to be far from home when he engaged in criminal conduct.  See Armour Packing Co. v. United States, 209 U.S. at 76 ("[T]he constitutional provision does not require the prosecution of the defendant in the district wherein he may reside at the time of the commission of the offense, or where he may happen to be at that time, provided he is prosecuted where the offense is committed. The constitutional requirement is as to the locality of the offense, and not the personal presence of the offender").

### Conclusion

For the reasons set forth above, and those outlined in the Government's Opposition to Defendant's Motion to Dismiss (June 29, 2004), the government respectfully requests that the Court deny the defendant's motion to dismiss.

                                        Respectfully submitted,

                                        MICHAEL J. SULLIVAN
                                        United States Attorney

Date: November 1, 2004              By: /s/ John T. McNeil
                                        JOHN T. MCNEIL
                                        Assistant U.S. Attorney