UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
v.                                  )        Cr. No. 04-10038-MLW
                                    )
DEEPAK JAHAGIRDAR                   )
_____ )

**DEFENDANT DEEPAK JAHAGIRDAR'S REPLY TO GOVERNMENT'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant continues to rely on the arguments advanced in his Motion to Dismiss Counts I and II For lack of Venue and Incorporated Memorandum of Law ("Motion to Dismiss") and in his Response to Court Order of October 11, 2004 ("Response"). Defendant will, however, avail himself herein of the opportunity, permitted by the Court's October 11, 2004, Order to reply to the Government's Supplemental Opposition to Defendant's Motion to Dismiss.

**I.    *BREITWEISER* WAS WRONGLY DECIDED, AND ITS INTERPRETATION OF 18 U.S.C. §3237(a) IS CONSTITUTIONALLY UNTENABLE.**

Not surprisingly, the government relies heavily on *United States v. Breitweiser*, 357 F.3d 1249 (11th Cir.), *cert. denied*, 124 S.Ct. 2829 (2004),[1] in support of its argument that the offenses with which defendant is charged are offenses involving transportation in interstate commerce within the meaning of the second paragraph of 18 U.S.C. §3237(a). In *Breitweiser*, the Court, relying on an earlier Eleventh Circuit decision, *United States v. McCulley*, 673 F.2d 346 (11th Cir.), *cert. denied*, 459 U.S. 852 (1982), held that "[t]o establish venue [under §3237(a)] the government need

---

[1] *Breitweiser* has also been discussed in Motion to Dismiss at 11-13, and defendant continues to rely on that discussion.

only show that the crime took place on a *form of transportation* in interstate commerce." *Id. at* 1253 (emphasis added). *See id.* ("Congress has provided a means for finding venue for crimes that involve the *use of transportation*" (emphasis added)). Section 3237(a) does not, however, speak in terms of "forms of transportation" or "use of transportation." It speaks of *offenses* "involving . . . transportation in interstate or foreign commerce." The second paragraph of §3237(a) is cast in language which Congress has used to define broad categories of offenses: using the mails to do a prohibited act, transporting prohibited items in interstate or foreign commerce, importing prohibited items into the United States. Such offenses have long been considered continuing offenses. What little legislative history there is makes it abundantly clear that Congress did not intend when it added the second paragraph of §3237(a) to *create* new continuing offenses which did not otherwise exist under the language of the statute defining the crime. *See* Response at 2. Instead, §3237(a) was intended to clarify where venue lay for offenses the elements of which were of a continuing nature, such as the "uses the mails" statute at issue in *Johnson*, and to eliminate the need for each statute defining a continuing criminal offense to contain its own venue provision.[2]

---

[2] Contrary to the government's argument, the *Johnson* Court did not "interpret[] section 3237 to limit its reach." Supp. Opp. at 5. The Supreme Court was not interpreting §3237 at all. Instead, it was interpreting the Federal Denture Act, which defined the offense at issue in part as use of the mails to ship prohibited dentures, but did not, as many federal statutes then did, contain "a specific venue provision[] giving jurisdiction to prosecute in any criminal court of the United States through which a process of wrongdoing moves." *Johnson*, 323 U.S. at 276. The Court expressly acknowledged that Congress could constitutionally have "ma[d]e the practices which led to the Federal Denture Act triable in any district through which an offending denture is transported." *Id.* at 274. The problem with which the Court was presented was that Congress had not done so. That being the case, the Court interpreted the Federal Denture Act in the light of the policies and purposes underlying the constitutional venue safeguards. The addition of the second paragraph of §3237(a) did not, therefore, provide "more expansive venue," Supp. Opp. at 5 – it only clarified Congress' intent, while at the same time taking the sensible step of replacing a patchwork of separate venue provisions with one overarching provision applying to all statutes defining criminal offenses in terms of use of the mails, transportation in interstate commerce, or importation.

As has been addressed in defendant's prior submissions, the Supreme Court, and the First Circuit as well, has established a test for determining where venue under any given criminal statute may lie consistently with the constitutional venue directives. That test looks first to the *conduct constituting the offense* and then, once that has been identified, to the location of *the commission of the criminal acts. See* Motion to Dismiss at 3-4; Response at 5-6. This prescribed analysis, which was completely ignored by the *Breitweiser* Court, applies to *all* venue determinations as to offense conduct which took place within the United States. The conduct constituting the offense is found in the statute under which the defendant is charged, and it is that statute, and that statute alone, which determines the proper locus (or loci) of the prosecution.[3] Thus, when Congress defines the offense in words which reflect continuity of the conduct made punishable by the statute – "uses" mails, "transports" in interstate commerce, "imports" into the country – then the crime is a continuing one which falls within §3237(a) and may be punished in any district through which the *conduct criminalized by the statute under which the defendant is charged* – the "process of wrongdoing" – continues. If, as in this case, Congress has chosen point-in-time words to define the offense, *see* Motion to Dismiss at 4-6, then the crime is not a continuing one, regardless of the language of §3237(a). Section 3237(a) is a *venue* statute, not a substantive criminal statute.

Had Congress meant to extend venue so radically as to validate it in any district through which passed the *form* of interstate transportation – trains, planes, automobiles -- in which defendant

---

[3] The government also relies on *Armour Packing Co. v. United States*, 209 U.S. 56 (1908). *See* Supp. Opp. at 4, 10. The statute at issue in *Armour* criminalized the transportation of goods in interstate commerce at less than the established rate. The defendants challenged the special venue provision of the statute, which placed venue in any district through which the unlawful transportation passed, arguing that it violated the venue provisions of the Constitution. The Court rejected the defendants' argument because "transportation *is an essential element of the offense*, and . . . transportation equally takes place over any and all of the traveled route and during transportation the crime is being constantly committed." *Id.* at 76 (emphasis added). *Armour* does not, therefore, aid the government.

3

happened to be riding when he committed the offense at issue, it would surely have said so. There is no indication in the language or history of §3237(a) which suggests that Congress intended to so far depart from established notions of proper venue of offenses committed within the United States as the government's argument would have it.

Other than *Breitweiser* and *McCulley*, *no* Court has ever applied §3237(a) in this fashion. Under the Eleventh Circuit's interpretation, which has yet to gain any adherents, venue would be proper in a case such as this one in *any* district over which the plane on which the offense allegedly occurred flew between here and California. If the government chose, Jahagirdar and "D.S." could be required to appear for trial in any district along the plane's route, at the government's sole discretion. It is no answer to say that all the ludicrous venue possibilities opened up by the *Breitweiser* interpretation of §3237(a) would never in reality be visited upon a criminal defendant: a defendant's right to be tried only in the location or locations in which the crime was committed is safeguarded by the Constitution for the precise purpose of limiting the locations at which a prosecutor may demand that the defendant appear for trial and to prevent the very type of abuses to which *Breitweiser* opens wide the door.[4]

The *Breitweiser* construction of §3237(a), which the government urges upon this Court, does

---

[4] The government argues that the defendant's interpretation of §3237(a) would create the very problems which the Founders sought to ameliorate through the inclusion of the constitutional venue provisions. *See* Supp. Opp. at 4-5. It does not, however, explain why the location where the plane landed, well after the alleged crime, if it occurred at all, was complete *does* comport with the intent of the Founders. Jahagirdar lives in Arizona. He *has* been "remov[ed] to a foreign location, far from his home, to be tried before a group of strangers." *Id.* at 5. Moreover, it happens in this case that the alleged victim lives in Massachusetts; she could just as easily not. At least some of the government's most important witnesses will be persons based far from Boston, for example, Delta flight crew members. It is, therefore, far from clear that placing venue where a plane lands after the alleged crime was completed elsewhere is consonant with fairness and public confidence in the judicial system, as, in many cases, the place where the plane lands will be a convenient place of prosecution for no one except the government.

violence to any notion of constitutional limitations on the places where a citizen may be forced to stand trial for a criminal offense:

> It is common ground that a criminal defendant has a right to be tried in an appropriate venue. The importance of this right is emphasized by the fact that it is mentioned not once, but twice, in the text of the Constitution. *See* U.S. Const. art. III, §2, cl.3 ("The Trial of all Crimes . . . shall be held in the State where the said crimes shall have been committed . . . ."); *id.* Amend. VI (requiring trial of a criminal case "by an impartial jury of the State and district wherein the crime shall have been committed"). Congress has further entrenched these norms by an explicit directive that limits a criminal prosecution to "a district in which an offense was committed." Fed. R. Crim. P. 18. This rule "echoes the constitutional commands." *United States v. Cabrales*, 524 U.S. 1, 6 . . . (1998). The result is a safety net, which ensures that a criminal defendant cannot be tried in a distant, remote, or unfriendly forum solely at the prosecutor's whim. Seen in this light, it is readily apparent that venue requirements promote both fairness and public confidence in the criminal justice system. [*United States v.* ] *Johnson*, 323 U.S. [273,] 276 [(1944)] . . . .

*United States v. Salinas*, 373 F.3d 161, 164 (1st Cir. 2004). *See, e.g,, United States v. Brennan*, 183 F.3d 139, 148 (2d Cir. 1999)(noting strong argument that, as mail fraud statute is currently written, it would violate the Constitution to permit venue to lie anywhere along the route through which the mail passed). The focus on where the crime was committed is essential; it is those terms in which the venue provisions of the Constitution are cast. *See, e.g, United States v. Bowens*, 224 F.3d 302, 309 (4th Cir. 2000)("Venue is limited to the place 'where the criminal act is done'"), *cert. denied*, 532 U.S. 944 (2001).

Congress did, to be sure, act to assert United States criminal *jurisdiction* over offenses committed aboard various types of aircraft under various circumstances, including civil aircraft of the United States in flight. Supp. Opp. at 2-3. All that means however, is that the such offenses may be prosecuted in the courts of the United States; it says nothing about *where* in the United States they may be prosecuted. Congress simply did not speak to the issue.

**II.    THE OFFENSE WITH WHICH DEFENDANT IS CHARGED DOES NOT INVOLVE TRANSPORTATION IN INTERSTATE COMMERCE FOR PURPOSES OF §3237(a).**

As addressed in the preceding section and in defendant's previous filings directed to the venue issue, "involving" is not, as the government argues, a term which expands venue beyond that which would be found by reference to the conduct which is criminalized by the statute under which the defendant is charged. An offense does not "involve" transportation in interstate commerce unless the conduct constituting the offense, as defined in the statute under which the defendant is charged, includes transportation in interstate commerce.

*United States v. Solan*, 792 F.Supp. 99, 100 (M.D.Fla. 1992), *aff'd* 100 F.3d 969 (11th Cir. 1996), *cert. denied*, 520 U.S. 1222 (1997), on which the government relies, Supp. Opp. at 7, does not survive *United States v. Cabrales*, 524 U.S. 1 (1998).[5] The statute at issue in *Solan* criminalized the knowing delivery of firearms to a contract carrier for the purpose of having them transported in interstate commerce without notice to the carrier that the package to be transported contained firearms. The crime, as defined by statute, was complete when the firearm was entrusted to the carrier for interstate transportation; no interstate transportation need take place at all for the defendant to be convicted of the offense defined in the statute. Even though all the elements of the offense were completed in Connecticut, the Court upheld venue in the Middle District of Florida, where the firearms were delivered, characterizing the interstate transportation as a "circumstance" of the offense, and not even a necessary one at that.

In *Cabrales*, the Court considered the propriety of venue in Missouri of a charge of money

---

[5] *Cabrales*, contrary to the government's argument, Supp. Opp. at 7 n.4, lends not the slightest support to the government's argument. The Supreme Court was not speaking of the second paragraph of §3237(a). Instead, it was indicating the possibility that money laundering might be a continuing offense within the *first* paragraph of §3237(a) in a case in which the financial transaction charged involved the transportation of the unlawfully-derived funds from one district to another.

6

laundering, where the financial transactions with which the defendant was charged took place entirely within the state of Florida. The government argued that venue was proper in Missouri because the unlawful derivation of funds in Missouri was an antecedent circumstance to the Florida financial transactions. In rejecting the government's argument, the Court made abundantly clear that such "circumstances" which are not elements of the offense may not, consistently with the Constitution, be relied upon to establish venue: "the crimes described in counts II and III are defined in statutory prescriptions . . . that interdict only the financial transactions (acts located entirely in Florida), not the anterior criminal conduct that yielded the funds allegedly laundered." *Id.* at 7. In *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999), the Court distinguished *Cabrales* on the ground that in *Cabrales* the existence of the criminally-generated funds was merely a "circumstance element" and not, as was the case with the conduct at issue in *Rodriguez-Moreno*, a "critical part" of the statute under which the defendant was charged. 526 U.S. at 280 n.4. The interstate transportation in *Solan* was, at best, an after-the-fact "circumstance," not a part of the offense charged. As such, it could not properly support venue in Florida. Even if *Solan* retains any validity in the wake of *Cabrales* and *Rodriquez-Moreno*, there is a crucial distinction between *Solan* and this case: the crimes charged in this case do not include transportation in interstate commerce as a "circumstance," *see United States v. Villarini*, 238 F.3d 530, 534-35 (4th Cir. 2001), nor is riding on a form of interstate transportation a "necessary feature" or a "consequence", *see* Supp. Opp. at 8, of the offenses defined by 18 U.S.C. §§2242(2), 2244, the statutes under which defendant is charged.

*United States v. Brandon*, 247 F.3d 186 (4th Cir. 2001), on which the government also relies, Supp. Opp. at 7, involved an entirely different statutory scheme than that at issue here, and the question was simply one of statutory construction, without the overlay of the constitutional concerns which the venue provisions of the Constitution necessarily make part of the present inquiry. At issue

was the interpretation of the enhanced penalty provision of 18 U.S.C. §924(e), which increases the mandatory minimum sentence if the defendant has three prior convictions for a serious drug offense, defined as "an offense under state law, involving manufacturing, distributing or possessing with intent to manufacture or distribute, a controlled substance . . . ." Notably, in determining whether defendant's prior conviction "involved" possession with intent to distribute, the Court looked to the conduct which comprised the offense of which the defendant was previously convicted, and not, as here, to a factor wholly outside definition of the offense. Ultimately the Court concluded that the offense to which the defendant pled guilty, possession of 35 grams of cocaine, involved too small a quantity of cocaine to trigger a presumption that the cocaine was possessed for distribution, as opposed to for personal use. The defendant would not be subject to the enhanced mandatory minimum, the Court concluded, because intent was not "inherent in the generic conduct prohibited by the statute and alleged in the indictment . . . ." *Id.* at 196.

### III.   SECTION 3238 DOES NOT APPLY TO THIS CASE.

The government argues that it is reasonable to infer that Congress believed that §3238 would apply to offenses committed on board American aircraft flying over the United States. Supp. Opp. at 3. A major problem with this supposition is that §3238 has not generally been so applied; instead, it has been used to establish venue where the defendant's criminal acts were committed outside the borders of the United States. "[Section] 3238 does not apply unless the offense was committed entirely on the high seas or outside the United States." *United States v.* Pace, 314 F.3d 344, 351 (9th Cir. 2002)(finding §3238 inapplicable where wire transmissions were received in Ohio, and therefore the offense was committed partly in the United States); *United States v. Layton*, 855 F.2d 1388, 1411 (9th Cir. 1988)(§3238 was "intended 'simply to provide an arbitrary rule of venue for offenses committed outside the United States'"), *cert. denied*, 489 U.S. 1046 (1989); *United States v. Mount Fuji Japanese Steak House, Inc.*, 435 F.Supp. 1194, 1199 n.5 (E.D.N.Y. 1977)(agreeing

with government's position that "§3238 appears to contemplate the absence of the defendant from the country at the time the crime is committed"); *see also United States v. Wharton*, 320 F.3d 526 (5th Cir.)(foreign murder of United States national), *cert. denied*, 539 U.S. 916 (2003); *United States v. Bascope-Zurita*, 68 F.3d 1057 (8th Cir. 1995)(defendants' aiding and abetting committed outside the country), *cert. denied*, 516 U.S. 1062 (1996); *United States v. Kampiles*, 609 F.2d 1233 (7th Cir. 1979)(top secret materials given to Soviet agent in Greece); cases cited in Motion to Dismiss at 7 n.6, *cert. denied*, 446 U.S. 954 (1980).[6] The government has not cited a single case in which §3238 was applied under circumstances remotely comparable to those presented here.

Moreover, the government's argument that "[a]n offense committed aboard an aircraft flying above a judicial district is committed in the district for purposes of . . . §3237(a)," Supp. Opp. at 3, effectively concedes that crimes committed aboard an aircraft *are* committed within the particular district over which the aircraft is flying when the crime was committed, which would render §3238 inapplicable. It should be noted that the aircraft-in-flight venue cases which the government cites on page 3 of its Supplemental Opposition all involved continuing offenses: conspiracy to import and importation of cocaine (*Ramirez-Amaya*), conspiracy to import and distribute marijuana (*Williams*), and importation and possession of marijuana with intent to distribute (*Barnard*). These offenses are continuing offenses by reason of the manner in which Congress defined the conduct constituting the offense in the statutes under which the defendants were charged, not by reason of anything in

---

[6] The government's reliance on *Chandler v. United States*. 171 F.2d 921 (1st Cir.), *cert. denied*, 336 U.S. 918 (1949), Supp. Opp. at 2, is misplaced. In *Chandler*, the defendant committed treason in Germany, entirely outside the United States, and the Court had no difficulty concluding that such an offense was committed outside the jurisdiction of any particular state for purposes of applying §3238. *Id.* at 931-32.

§3237.[7]

## CONCLUSION

For all the reasons set forth herein, as well as in defendant's memorandum in support of his motion to dismiss and in his response to the Court's October 11, 2004, Order, the indictment must be dismissed.

<table>
<tr><td></td><td>Respectfully submitted,<br>By his attorneys,</td></tr>
<tr><td>/s/ Kimberly Homan<br>Kimberly Homan<br>Mass. Bar No. 239000<br>20 Park Plaza, Suite 905<br>Boston, Massachusetts 02116<br>(617) 227-8616</td><td>/s/ James W. Lawson<br>James W. Lawson<br>Mass. Bar. No.289300<br>OTERI, WEINBERG & LAWSON<br>20 Park Plaza, Suite 905<br>Boston, Massachusetts 02116<br>(617) 227-3700</td></tr>
</table>

DATE: November 5, 2004

---

[7] The government has noted that establishing the location where the offenses charged were allegedly committed is necessary for the Court to make a determination under §3238, and has asked that the defendant clarify his position. Supp. Opp. at 2 n.3. Defendant's responses are three-fold. First, as addressed in this section, §3238 does not apply under the circumstances of this case. Second, it is not the defendant's responsibility to say where the alleged offense took place; the government must demonstrate that venue is proper in the district in which it commenced the prosecution. One thing we do know is that the alleged offense did *not* take place within the District of Massachusetts. Third, to the extent that there is any evidence regarding where the offense took place, if it was committed at all, it is found in a memorandum which the government submitted with its initial opposition to defendant's motion. That report, which contains calculations prepared by Delta's flight control department, indicates that the flight would have crossed the Ohio border into Indiana and have likely been over Liberty, Indiana at the time of the alleged offense. If what the government is asking is whether the defendant will stipulate to the government's assertion that it would be impossible for it to establish the district in which the alleged offense was committed, he will not.