UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10038-MLW |
| | ) | |
| DEEPAK JAHAGIRDAR | ) | |

**Stipulation**

The United States of America, by and through Assistant United States Attorney John T. McNeil, and the defendant, Deepak Jahagirdar, through his counsel, submit this stipulated testimony for purposes of the defendant's motion to suppress. This stipulation is submitted in lieu of direct testimony. The matters cited in this stipulation are not a matter of dispute between the parties for purposes of the motion to suppress.

If there were an evidentiary hearing on this matter, the government would present witnesses who would testify to the following facts:.

<u>Flight Attendant Kelly Horn</u>

On March 31, 2002, Ms. Kelly Horn was the lead fight attendant aboard Delta Air Lines Flight 2100 which departed Dallas/Fort Worth at approximately 1:30 p.m. destined for Boston's Logan International Airport. "D.S." was a passenger on that flight and was traveling alone. When D.S. boarded the airplane she sat in a window seat, number 12E. A man, who was later identified to be the defendant, Deepak Jahagirdar, was already seated beside her in the aisle seat numbered 12D. Their row had only 2 seats. D.S. fell asleep shortly after boarding the airplane. Approximately an hour to an hour and one half into the flight to Boston, D.S. told Ms. Horn and Ms. Pace that she was awakened from a deep sleep when she felt Jahagirdar's hand in her pants.

1

D.S. immediately rushed to the galley of the aircraft to report the assault. She disclosed to Flight Attendants Pace and Horn that she had been sexually assaulted by the man sitting next to her while she was asleep. When asked if it was possible that it was an accident, D.S. responded, "Absolutely not. This was no accident." She also said that Jahagirdar's hand was all the way in her pants, under her underwear, "down there." D.S. appeared to be stunned and was visibly angry and upset by the incident.

Ms. Horn notified the captain of the flight and four Special Agents from the United States Secret Service who were on board the airplane. D.S. was reassigned a seat at the back of the aircraft next to Ms. Pace's jumpseat for her security. Ms. Horn considered confronting Jahagirdar and serving him with an in-flight disturbance report. However, she and the agents, concerned that passengers might panic if Jahagirdar caused further incident, decided that he should be kept under observation to insure that he did not approach or accost D.S. At the time, Jahagirdar was in his seat with his eyes closed. In addition to asking Ms. Pace and another flight attendant to attend to D.S. for the remainder of the flight, Ms. Horn asked that a Secret Service agent sit next to her to insure that Jahagirdar did not attempt to talk to her or attack her. She also insured that the other three agents were seated near Jahagirdar to make sure that he remained complacent and did not further disturb the flight.

Captain Thomas D. Dettmer

Thomas D. Dettmer was the captain on board Delta Flight 2100 on March 31, 2002. He learned from the flight attendants during the flight that a young woman had told the attendants that she had been sexually assaulted by another passenger. He was also told that D.S. had been reseated as a result of that assault. Captain Dettmer considered landing the plane at the nearest

major airport – Cincinnati, Ohio – but when he was assured by the flight crew that the young woman did not need medical attention and that the defendant was sitting calmly in his seat, he decided to proceed to Boston. He asked the flight attendants to keep D.S. in a separate location from the defendant, and to have someone attend to her. He also suggested that the Secret Service agents be placed around the defendant to insure that he did not move from his seat or otherwise cause any additional disturbance on the flight. He also called the Delta Operational Command Center to report the incident and to request that the defendant be detained by law enforcement officers for questioning as he left the flight.

Captain Dettmer would also testify that Jahagirdar did not directly assault or threaten flight crew members. However, Jahagirdar's conduct required flight crew members to move a passenger, alert law enforcement officers aboard the flight, consult with each other and law enforcement officers throughout the remainder of the flight, assign a flight attendant and agent to attend to and sit with D.S., call the Operational Command Center, and monitor Jahagirdar for the remainder of the flight. These efforts lessened the ability of the flight crew to perform their normal duties.

<u>Secret Service Special Agent George Hartford</u>:

Special Agent George Hartford was present on Delta Flight 2100 on March 31, 2002, with three other Secret Service agents returning from a detail at President Bush's Crawford Ranch. In mid-flight, they were alerted by the flight crew to the report of a sexual assault which had taken place on board the aircraft. The alleged victim was a young woman whom Hartford observed to be visibly upset. The alleged perpetrator was identified as the man who was in the seat next to D.S. At the time he was identified he was seated with his eyes closed. Hartford

asked D.S. if she intended to press charges, to which she responded affirmatively. Hartford then recommended that the Massachusetts State Police be notified and that they be prepared to arrest the defendant upon arrival in Boston. In addition, while serious consideration was given to physically restraining the defendant aboard the aircraft to protect D.S., he decided that an attempt to place him into custody or otherwise confront him could cause an "escalation of the situation" because the incident occurred six months after the September 11, 2001, attack on the World Trade Center. Instead, he and two other agents kept Jahagirdar under observation during the flight. So long as Jahagirdar remained calmly in his seat, they would await the plane's arrival in Boston before confronting and physically restraining him if necessary.

One agent was assigned to sit with D.S. for the remainder of the flight to insure her safety. In addition, the remaining two agents and Hartford were seated in locations where they could keep the defendant under observation in the event that he attempted to approach D.S. or otherwise became volatile.

Agents were also concerned that the defendant may attempt to flee before he was placed into police custody in Boston. As a result, Hartford and the other agents developed a plan in which one agent would depart the aircraft before the defendant to alert uniformed officers of his identity, while another agent placed himself near Jahagirdar as he walked off of the aircraft.

Once the airplane landed at Logan Airport, Hartford got off of the plane before Jahagirdar and alerted a Trooper on the jetway. When Jahagirdar came onto the jetway, Hartford requested that Jahagirdar step to the side of the jetway for questioning by law enforcement officers. Jahagirdar initially failed to respond to the request. Hartford then grabbed Jahagirdar's shoulder bag, repeated the request, and Jahagirdar complied.

<u>Massachusetts State Trooper Kevin Hogaboom</u>:

On the evening of March 31, 2002, Trooper Hogaboom was called to Terminal C at Logan Airport to respond to a report of a mid-flight assault on a Delta flight bound from Dallas, Texas. When he arrived at the gate he instructed other Troopers to detain the suspect while he interviewed D.S. Trooper Hogaboom then proceeded to interview D.S. on the aircraft after all other passengers had disembarked. (He subsequently interviewed her again in a room in the airport, shortly thereafter.) She indicated that she had fallen asleep on the airplane and had woken up to find the defendant's hand down her pants, under her underwear, and on and in her vagina. She also discovered that while she was asleep the defendant had placed a blanket over both of them, concealing his activities from others on the flight. Jahagirdar had also put his tray table down. She indicated she reported it immediately to the flight crew. She was visibly upset and crying during his interview of her.

After interviewing D.S., other State Troopers who had detained Jahagirdar placed him under arrest and took him to the State Police Station at Logan Airport. While Hogaboom believed at the time that the sexual assault committed by Jahagirdar was a felony prosecutable under Massachusetts law, he also knew that a criminal offense aboard an aircraft was a federal offense.

In the interval between his arrest and when the State Police chemist arrived to take swabs and scrapings of his hands, Jahagirdar used a toilet on two occasions. There was a sink in the room with the toilet. While Hogaboom did not prevent him from using the toilet, he became concerned that Jahagirdar may destroy evidence.

Jahagirdar was charged in East Boston District Court with rape in violation of M.G.L.c.

265 §22(b), assault with intent to rape in violation of M.G.L.c. 265 §24, and threatening to interfere with the operation of an aircraft in violation of M.G.L.c. 90 §40.

<u>Massachusetts State Police Chemist Carol Courtwright</u>

State Police laboratory chemist, Carol Courtwright, was called just before 7:00 p.m. and arrived at the airport at approximately 9:30 p.m. She first sought consent from the defendant to swab his hands and scrape underneath his fingernails. The defendant declined to provide that consent. Thereafter, Ms. Courtwright swabbed the defendant's hands using distilled water and an oversized cotton swab. The swab had the appearance of a large "Q-Tip" swab. Ms. Courtwright then used a small wooden stick to obtain material underneath the defendant's fingernails, in the same manner as one would clean underneath one's nails. No nail or skin was cut; simply the material from beneath the nails was obtained.

Respectfully Submitted,

| | |
|---|---|
| DEEPAK JAHAGIRDAR | MICHAEL J. SULLIVAN |
| By His Attorney | United States Attorney |
| | |
| /s/ James W. Lawson | By: /s/ John T. McNeil |
| JAMES W. LAWSON | JOHN T. McNEIL |
| Oteri & Lawson, PC | Assistant U.S. Attorney |
| 20 Park Plaza, Suite 905 | U.S. Courthouse |
| Boston, MA 02116 | 1 Courthouse Way, Suite 9200 |
| (617)227-3700 | Boston, MA 02210 |
| | (617) 748-3242 |

Date: December 8, 2004