UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10038-MLW |
| | ) | |
| DEEPAK JAHAGIRDAR | ) | |

**GOVERNMENT'S TRIAL MEMORANDUM**

The United States of America, by and through Assistant United States Attorney John T. McNeil, respectfully submits this trial memorandum outlining the facts, charges, elements of the offenses, and several issues which it anticipates will arise during the course of the trial. Because this memorandum is being submitted substantially in advance of trial, the government requests leave to supplement this memorandum in the week before trial, when evidentiary and other issues better crystalize.

**Summary of Facts**

On March 31, 2002, Victim D.S., a 22 year-old woman who was residing in the Boston, Massachusetts metropolitan area, boarded Delta Air Lines Flight 2100 at the Dallas/Fort Worth, Texas airport. The flight, which departed at 1:30 p.m., was a non-stop flight from Texas to Boston's Logan International Airport.

Victim D.S. had very little sleep the night before the flight, and fell into a deep sleep shortly after boarding the aircraft. Approximately an hour to an hour and a half into the flight to Boston, Victim D.S. was awakened when she felt a hand on and in her vagina. Upon opening her eyes she discovered that her pants were unbuttoned and partially unzipped (they were

1

buttoned and zipped when she fell asleep), and that the defendant's hand was in her pants and under her underwear. Victim D.S. also discovered that the defendant had taken a blanket and covered both of them with it, and the blanket had been placed up to her shoulders, concealing his activities from other persons in the airplane cabin.

A more detailed recitation of the facts can be found in the affidavit supporting the issuance of a criminal complaint in this matter, the Government's Opposition to the Defendant's Motion to Suppress (June 25, 2004), and Joint Stipulation (December 8, 2004).

## Offenses Charged

The defendant was indicted on February 11, 2004. The two count indictment includes the following charges:

**Count I:**

On or about March 31, 2002, within the special aircraft jurisdiction of the United States while on board Delta Air Lines Flight 2100 which originated in Texas and landed at Boston, in the District of Massachusetts,

### DEEPAK JAHAGIRDAR,

defendant herein, knowingly engaged, and attempted to engage, in a sexual act (to wit: the penetration, however slight, of the genital opening of another by a hand and by a finger, with the intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desire of any person) with another person, to wit: "D. S.", when said person was incapable of appraising the nature of the conduct and was physically incapable of declining participation in, or communicating unwillingness to engage in, said sexual act.

All in violation of Title 18, United States Code, Section 2242(2) and Title 49, United States Code, Section 46506.

**Count II:**

On or about March 31, 2002, within the special aircraft jurisdiction of the United States while on board Delta Air Lines Flight 2100 which originated in Texas and landed at Boston, in the District of Massachusetts,

**DEEPAK JAHAGIRDAR,**

defendant herein, knowingly engaged in and caused sexual contact (to wit: the intentional touching, either directly or through the clothing, of the genitalia, groin, and inner thigh of any person, with the intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desire of any person) with another person, to wit: "D. S.", when said person was incapable of appraising the nature of the conduct and was physically incapable of declining participation in, or communicating unwillingness to engage in, said sexual act.

All in violation of Title 18, United States Code, Section 2244(a)(2) and Title 49, United States Code, Section 46506.

The elements[1] of Count I are:

1. First, that on or about March 31, 2002, DEEPAK JAHAGIRDAR intentionally engaged in, or attempted to engage in, the penetration, however slight, of the genital opening of another person by a hand or by a finger;

2. Second, that DEEPAK JAHAGIRDAR did so with the intent to abuse, humiliate, harass, degrade, or arouse or gratify a sexual desire of any person;

3. Third, that the person to whom such conduct was directed was incapable of appraising the nature of the conduct, or was physically incapable of declining participation in, or communicating unwillingness to engage in, said conduct; and

4. Fourth, that DEEPAK JAHAGIRDAR engaged in this conduct while in the special aircraft jurisdiction of the United States; in this case that means the conduct occurred while on board a civil aircraft of the United States in flight, or while on board any aircraft in flight which has its next scheduled destination in the United States and in fact next lands in the United States.

The elements of Count II are:

1. First, that on or about March 31, 2002, DEEPAK JAHAGIRDAR knowingly engaged in or caused the intentional touching, either directly or through the clothing, of the genitalia, groin, or inner thigh of any person;

2. Second, that DEEPAK JAHAGIRDAR did so with the intent to abuse, humiliate, harass, degrade, or arouse or gratify a sexual desire of any person;

---

[1] The government has submitted proposed jury instructions which detail these elements.

3. Third, that the person to whom such conduct was directed was incapable of appraising the nature of the conduct, or was physically incapable of declining participation in, or communicating unwillingness to engage in, said conduct; and

4. Fourth, that DEEPAK JAHAGIRDAR engaged in this conduct while in the special aircraft jurisdiction of the United States; in this case that means the conduct occurred while on board a civil aircraft of the United States in flight, or while on board any aircraft in flight which has its next scheduled destination in the United States and in fact next lands in the United States.

The only element which differs between these two counts is the first element. Notably, Count I charges both the completed crime of sexual abuse and an attempted sexual abuse, as provided in the statute. See 18 U.S.C. §2242(2). Count II charges only the completed crime of abusive sexual contact, as the statute does not criminalize attempted abusive sexual contact. See 18 U.S.C. §2244(a)(2). For purposes of this case, the essential difference between these two counts is that Count I requires the government to prove that the defendant penetrated, however slightly, Victim D.S.'s "genital opening" with his hand or finger, or attempted to do so. By contrast, Count II does not require any penetration of Victim D.S's genital opening, and permits the conviction of the defendant if his contact with Victim D.S.'s "genitalia, groin, or inner thigh" was through her clothing.

**Potential Trial Issues**

**Victim Rights**

The rights accorded to victims of federal crimes are found generally at 18 U.S.C. §3771 and 42 U.S.C. §10601 *et seq*. The overarching principle of these statutes is that victims have the right to be treated with fairness and with respect for their dignity and privacy. See 18 U.S.C. § 3771(a)(8).

Four specific rights are accorded to victims at trial. First, victims have a "right not to

4

be excluded from any . . . public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding." See 18 U.S.C. § 3771(a)(3). Because this statute provides that a victim has a right to be present during all phases of the trial, the otherwise applicable standard for the sequestration of witnesses, found at Fed.R.Evid. 615, is inapplicable to victims of crimes who are also witnesses. The government has had a preliminary discussion with Victim D.S. regarding her desire to be present during the various phases of the trial. The government does not currently anticipate that she will assert her rights under 18 U.S.C. § 3771(a)(3), with the exception of being present during closing arguments. However, if Victim D.S. alters her position with respect to this issue, the government will promptly inform the Court and counsel for the defendant.[2]

Second, victims have a right to "a waiting area removed from and out of the sight and hearing of the defendant and defense witnesses," 42 U.S.C. §10607(c)(4), and "to be reasonably protected from the accused." 18 U.S.C. §3771(a)(1) . The government therefore requests that the conference room opposite the court reporter's office in the lobby area of the courtroom be reserved for the exclusive use by the victim and her family during the course of the trial. The government also requests that the defendant, defense witnesses, and family members of the defendant be informed by the Court that they are prohibited from entering or using this conference room. In addition, the government requests that the Court instruct the

---

[2] The government anticipates that Victim D.S.'s parents or other family members may desire to be present throughout the trial. If a sequestration order enters in this case, the government will instruct Victim D.S.'s family members not to discuss the testimony of other witnesses with Victim D.S. until the conclusion of the evidence in this case.

defendant, his witnesses, and his family members that they are to have no intentional contact with Victim D.S. during the pendency of trial.

Third, victims have "the right to proceedings free from unreasonable delay." See 18 U.S.C. § 3771(a)(7). Given that the parties currently anticipate that the trial will last no longer than one week, and a firm trial date has been established by the Court, the government does not anticipate that there will be any unreasonable delay. The government also intends to inform Victim D.S. and her family members about the order of the proceedings, including the need for sidebars during the course of the trial.

Fourth, as noted above, victims have the right to be treated, "with respect for the victim's dignity and privacy." See 18 U.S.C. § 3771(a)(8). In this case, the government and the defendant have agreed to refer in unsealed filings with the Court to the victim as "D.S." or "Victim D.S." in order to ensure her privacy.[3] However, the government currently anticipates that it will employ Victim D.S.'s true name during the course of the trial of this matter to ensure the most natural presentation of her testimony to the jury. The government will request that the transcripts of the trial either employ the victim's initials, or be sealed by the Court.

**Fed.R.Evid. 412**

Federal Rule of Evidence 412 provides that a victim's past sexual behavior or alleged sexual predisposition is generally inadmissible in a criminal proceeding involving alleged

---

[3] While child victims and child witnesses have a right not to have their names and other identifying information sealed if "the court determines that there is a significant possibility that such disclosure would be detrimental to the child," see 18 U.S.C. §3509(d), there does not appear to be a specific parallel provision for adult victims of sexual assaults. Nonetheless, the parties have agreed not to disclose the identity of Victim D.S. in public filings. The government also notes that it is the policy of most major news outlets, including the Boston Globe and the Boston Herald, not to publish the names of sexual assault victims.

sexual misconduct. See Fed.R.Evid. 412(a). The government is unaware of any facts which would support the application of any of the specific exceptions to this general rule, see Fed.R.Evid. 412(b), and the defendant has provided no discovery or notice that he intends to offer such evidence at trial. In the event that the defendant seeks to admit such evidence, he may only do so only if he files a written motion at least 14 days before trial and otherwise complies with Fed.R.Evid. 412(c).

**Voir Dire of Jurors**

Both the government and the defendant have submitted proposed questions for the jury venire which address whether a prospective juror has been the subject of a sexual assault or been accused of sexually assaulting another person. In addition, the defendant has requested that prospective jurors be questioned regarding racial bias.

Prospective jurors may be reluctant to respond affirmatively to such inquiries during the general questioning of the entire venire. The government therefore requests that these questions be asked of each prospective juror during individual voir dire in chambers.

**Opening Jury Instructions**

As noted in the government's requested jury instructions, the government requests that the Court provide the jurors a brief instruction on the elements of the offenses at the outset of the trial. This is the routine practice in several sessions of this Court. By giving the jurors a preview of the elements of the offenses, the Court enables the jury to receive the evidence with a basic understanding of the applicable law, and some sense of the relevance of the evidence to their ultimate task. Without providing instructions at the outset, the jurors may not understand the relevance of the finer points of the evidence, and may not understand why some evidence

is offered at all (such as that related to the "special aircraft jurisdiction of the United States").

**Venue**

The parties litigated the issue of venue through pre-trial motions. In addition, the defendant has not requested a jury instruction on venue. From this, the government understands that the defendant has agreed that the Court, rather than the jury, should resolve this issue. In keeping with this understanding, the government has not offered a proposed instruction on venue. If the Court, or the defendant, determines that the issue should be put to the jury, the government will supplement its proposed jury instructions.

**Victim's Out of Court Statements**

The defendant has moved to exclude certain statements made by Victim D.S. to Massachusetts State Troopers Hogaboom and Sullivan upon the flight's arrival in Boston. The government will respond to this motion in accordance with the schedule set in the pretrial order. Without waiving other grounds for the admission of Victim D.S.'s post-assault statements to the State Troopers, the government anticipates that these statements will be admissible under Fed.R.Evid. 801(d)(1)(B), to rebut "an express or implied charge . . . of recent fabrication or improper influence or motive," see, e.g. United States v. Awon, 135 F.3d 96, 99 -101 (1st Cir. 1998), or otherwise be admissible to rebut an attack on her credibility. See, e.g. United States v. Simonelli, 237 F.3d 19, 27 (1st Cir. 2001)(applying the "interplay between the rule of completeness and the common law doctrine about prior consistent statements" to evaluate admissibility of prior statements offered to rehabilitate a witness's credibility).

**Expert Testimony**

The government has provided to the defendant extensive expert discovery pursuant to Fed.R.Crim.P. 16(a)(1)(E) and (b)(1)(C), regarding testimony to be offered under Fed.R.Evid. 702, and will be filing a summary of the expert witness's testimony by March 4, 2005.  In summary, the government intends to call Kellie Bogosian, a chemist with the Massachusetts State Police Crime Laboratory, to testify generally about the process of extracting and analyzing nuclear DNA, and her analysis of the nuclear DNA recovered from the hands of the defendant after he landed in Boston.  She will testify that the major profiles of DNA recovered from the defendant's hands on the evening on March 31, 2002, is consistent with the known DNA standard taken from the defendant on a subsequent date, and that the minor profiles found on the defendant's hands that evening is consistent with the known DNA standard taken from Victim D.S.  The defendant has indicated that he does not intend to challenge the admission of the DNA evidence under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).

**Trial Schedule**

The government anticipates that jury selection will take the first trial day.  In addition, the government anticipates that it will take approximately three trial days (sitting from 9 a.m. to 1 p.m.) to put in its case in chief, including a reasonable time for cross-examination.

## Conclusion

As noted above, because this memorandum is being filed several weeks in advance of the trial, the government respectfully requests that it be permitted to supplement this

memorandum in the week before trial.

                                            Respectfully submitted,

                                            MICHAEL J. SULLIVAN
                                            United States Attorney

Date: March 1, 2005                    By: /s/ John T. McNeil
                                            JOHN T. MCNEIL
                                            Assistant U.S. Attorney