UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** ) | | |
| ) | | |
| v. ) | CRIMINAL NO.  04-10038-MLW | |
| ) | | |
| **DEEPAK JAHAGIRDAR** ) | | |
| ) | | |

Government's Response to the Defendant's Motions
*In Limine* Relating to Evidence of Sexual Misconduct on Aircraft

The United States of America, by and through Assistant United States Attorney John T. McNeil, respectfully submits this response to the Defendant's Motion *in Limine* to Exclude Testimony of S.M. (Docket No. 52), and Defendant Deepak Jahagirdar's Supplemental Motion *in Limine* Relating to Evidence of Unrelated Sexual Misconduct on Airplanes (Docket No. 60).

In order to prevent the defendant from factually misleading the jury – through argument or cross-examination – with respect to the likelihood that a sexual assault could be and would be committed aboard a commercial aircraft in flight, the government notified the defendant that it was considering offering evidence at trial of specific instances of similar conduct aboard aircraft, and more general statistics of such assaults.   The purpose of offering such evidence would be to factually rebut any defense argument that appealed to jurors' lack of knowledge regarding the likelihood and frequency of such offenses aboard commercial flights.  Because such a defense argument could be reserved until the government rested its case, and the government would otherwise be prohibited from citing facts not in the record during its rebuttal argument, the government has raised this issue pretrial to have it fairly addressed.  See Herring v. New York, 422 U.S. 853, 862 (1975)(trial court given broad discretion to limit scope of closing arguments);

United States v. Bautista, 252 F.3d 141, 144 - 45 (2nd Cir. 2001)(affirming district court's decision to restrict defense counsel's closing arguments to avoid misleading the jury); United States v. Warfield, 97 F.3d 1014, 1020 - 1021 (8th Cir. 1996)(same).

The offenses alleged in the indictment – that the defendant sexually abused and had abusive sexual contact with a 22 year old woman sleeping beside him on a commercial aircraft, after covering both of their bodies with a blanket and unbuttoning and unzipping her pants – are upon first impression, unusual ones. It is likely that many jurors have never heard of such conduct, despite having regularly flown in commercial aircraft, and that jurors would not expect that any person would engage in such risky conduct in such a confined space and with virtually nowhere for the perpetrator to flee.

Remarkably, such conduct occurs aboard aircraft with a much greater frequency than commonly known. For instance, upon the request of the government, Delta Air Lines reported that for the two years that the airline has kept statistics (2003 and 2004), there were 30 reported instances of sexual misconduct and one reported instance of sexual abuse aboard Delta flights. The sexual abuse was an intentional touching of a man's genitals. According to Delta, the most common type of sexual misconduct was the touching of women sleeping on flights by men seated next to them.

Two specific instances of sexual assaults illustrate these general statistics. Shortly after this matter was the subject of national press attention, a young woman, S.M., contacted the Massachusetts State Police to notify them that she had been the victim of a remarkably similar sexual assault. She reported that while sleeping aboard a Singapore Airlines flight in July 1999, the man seated next to her placed his hands down the front of her pants. This, while her sister

and brother was seated on the other side of her. Because she was asleep when the assault first occurred and could not believe that such conduct was occurring, she first simply moved her body position and the man withdrew his hand. She then pretended to sleep; when the man returned his hand to the front of her pants, she pulled his hand out and confronted him. He fled to the rear of the aircraft. S.M. immediately reported the assault to flight attendants, who ensured that the man was moved to a different location in the aircraft. However, she was discouraged by airline authorities from pressing charges once they landed in Hong Kong.

The second case in point is the <u>Breitweiser</u> case, reported at 357 F.3d 1249 (11th Cir. 2004). A review of the trial transcript of that case reveals that a 14 year old girl, who was seated next to her 18 year old sister, was touched a number of times by a male passenger seated on her opposite side, including one instance of touching her on the inner thigh. After this touching, the man proceeded to masturbate while seated next to this young girl on the airplane. This conduct occurred on a daytime flight from Texas to Georgia.[1] Attached as Exhibit 1 are a number of media reports of other sexual assaults on commercial aircraft.

These instances of sexual assaults aboard aircraft occur in the context of rising rates of risky sexual conduct aboard commercial flights. Troopers at Logan International Airport report that they get regular complaints of couples engaged in sexual contact aboard flights. The prevalence of such behavior is such that it was the subject of at least one airline industry cabin safety symposium. <u>See</u> Exhibit 2. Moreover, such sexual behavior on commercial aircraft is glorified on popular Internet sites for the "Mile High Club" – an informal network of individuals

---

[1] Notably Trooper Sullivan, one of the responding officers in this case, recently responded to a man masturbating on a commercial flight which landed in Logan.

who have engaged in sexual conduct while on aircraft in flight; these Internet sites come complete with merchandise sporting a "Mile High Club" logo.  See, e.g. http://www.milehighclub.com.

Thus, a defense argument that this type of conduct is not likely to occur aboard a commercial aircraft in flight would be factually incorrect, and would mislead the jury.  To the extent that the defendant is permitted to appeal to the jury's lack of knowledge of such conduct, the government should either be able to cite the type of information contained in this memorandum in rebuttal, or to present such evidence prophylactically at trial.

Contrary to the defendant's arguments in his motion *in limine*, the government does not seek to offer this general evidence to establish that the defendant committed the crimes with which he is charged.  Rather, the government simply seeks to prevent the jury from being misled regarding the likelihood of such an offense occurring.

**Conclusion**

For the forgoing reasons, the government respectfully requests that the defendant be prohibited from arguing to the jury that sexual abuse of the type he is charged does not occur on commercial flights, and, if such an argument is made, permit the government in rebuttal to cite both general statistics and specific instances of sexual misconduct aboard commercial aircraft. Alternatively, the government requests that the defendant's motion *in limine* be denied, and the government be permitted to present the testimony of S.M. and present other evidence of sexual

assaults aboard aircraft.

                                          Respectfully submitted,

                                          MICHAEL J. SULLIVAN
                                          United States Attorney

Date: March 16, 2005                    By: *John T. McNeil*
                                          JOHN T. MCNEIL
                                          Assistant U.S. Attorney