UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cr. No. 04-10038-MLW |
| ) | |
| DEEPAK JAHAGIRDAR ) | |

**DEFENDANT DEEPAK JAHAGIRDAR'S MEMORANDUM REGARDING ISSUES RAISED AT MARCH 23, 2005, HEARING**

Defendant Deepak Jahagirdar hereby responds to the issues raised by the Court at the March 23, 2005, hearing in this matter.

**I.    DEFENDANT'S PROPOSED EXHIBITS B AND C.**

After further reflection, defendant has decided that he will not offer into evidence his Proposed Exhibits B and C. Therefore, no additional briefing regarding the admissibility of the letters is necessary. It is defendant's intention to cross-examine D.S. on the subject of her contemplation of civil litigation against him and of her request for money from him conveyed by letter from her attorney to his. Defendant will use the letters as part of his cross-examination of D.S. but will not seek to have them introduced into evidence. The government agrees that this is a proper subject for cross-examination. *See* Government's Memorandum on the Admissibility of D.S.'s Offer to Compromise Civil Claim.[1]

**I.    ADMISSIBILITY OF BEVERLY HOSPITAL RECORDS RELATING TO**

---

[1] It not the intention of defendant's counsel to pose questions to D.S. which would infringe upon her attorney-client privilege as to her communications with the attorney whom she consulted regarding pursuing a civil claim against defendant.

**TREATMENT OF D.S.**

The defendant and the government agree that the Beverly Hospital records relating to the treatment of D.S. on March 31, 2002, should be admitted into evidence at the trial of this case. Hospital records are admissible under the business records exception to the hearsay rule embodied in Fed. R. Evid. 803(6). *See, e.g., Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991); *Manocchio v. Moran*, 919 F.2d 770, 776 (1st Cir. 1990), *cert. denied*, 500 U.S. 910 (1991); *Petrocelli v. Gallison*, 679 F.2d 286, 289-91 (1st Cir. 1982). The statements of D.S. contained within the hospital records are admissible under Fed. R. Evid. 803(4), as they are "[s]tatements for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." *See, e.g., Bucci v. Essex Ins. Co.*, 393 F.3d 285, 298 (1st Cir. 2005); *Danaipour v. McLarey*, 386 F.3d 289, 298 (1st Cir. 2004). *See also United States v. Tome*, 61 F.3d 1446, 1449 (10th Cir. 1995).

**II.    THE GOVERNMENT'S REQUESTED PENETRATION INSTRUCTION.**

The Court should reject out-of-hand the government's attempt to rewrite 18 U.S.C. §2246(2)(C). Count I of the indictment charges that defendant violated 18 U.S.C. §2242 by committing a sexual act with D.S. under the circumstances set forth in §2242(2). Section 2246(2)(C) defines "sexual act" as "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person . . . ." There is no federal authority for the proposition that penetration within the meaning of §2246(2)(C) occurs when a finger passes the outer limits of the labia majora – and that includes the single federal case relied upon by the government. *See* page 6-7,

*infra.*

As a preliminary matter, there is no reason to believe that Congress used "penetration" in other than its usual and ordinary sense. Webster's II New Collegiate Dictionary 833 (3d ed. 2005) defines "penetrate" as "[t]o enter and force a way into: PIERCE." Similarly, the Oxford Concise English Dictionary 1010 (9th ed. 1995)("Oxford Concise") defines "penetrate" as "to find access into or through, esp. forcibly."[2] Thus, as generally understood, to penetrate something is to enter it. Here, that something is specified by the statute to be the "genital opening." The government's proposed instruction raises the question of what is to be regarded as the "genital opening." Defendant suggests that there is no sense in which the act of moving a finger past the outer limits of the labia majora can be regarded as "penetrating" the "genital opening."

The government's position is inconsistent with the plain meaning of the §2246(2) statutory definitions of the acts punished by §§2241-43 and Congress' choice of words therein. For example, the type of "sexual act" described in §2246(2)(A) requires "contact between the penis and the vulva . . . and for the purposes of this subparagraph, contact involving the penis occurs upon penetration, however slight." Section 2246(2)(B) refers to "contact between the mouth and . . . the vulva."[3] However, when it came time to define the nature of the digital offense in §2246(2)(C), Congress did *not* describe the offense as penetration of the vulva by the finger or contact between the finger and the vulva. Instead, it chose terminology which appears nowhere else in §2246: "penetration,

---

[2] *See United States v. Hayward*, 359 F.3d 631, 640 (3d Cir. 2004)(looking to dictionary definition of "contact" in interpreting §2246(3)).

[3] The vulva is "the external female genitals, esp. the *external* opening of the vagina." Oxford Concise at 1572 (emphasis added).

however slight, of the . . . *genital opening* of another" (emphasis added). Clearly, then, "genital opening" must mean something different from "vulva." It must mean, as the natural sense of the language would suggest, penetration of the vaginal orifice.[4]

This interpretation is borne out by reference to §2246(2)(D), which defines a fourth type of sexual act, applicable where the victim is less than 16 years old, as, *inter alia*, "the intentional touching, not through the clothing, of the genitalia . . . ." Section 2246(3) defines "sexual contact," the lesser offense punishable under §2244, with which defendant is charged in Count II of the indictment, as "the intentional touching, either directly or through the clothing, of the genitalia . . . of any person . . . ." It is clear from these subsections that "penetration" of the "genital opening" is *not* the same as "touching" the "genitalia."

Sections 2241- 44 set forth an integrated statutory scheme of graduated sexual offenses. The most severe of the offenses, §2241, punishes causing another to engage in a "sexual act" through force, threats, or placing in fear with a sentence up to and including life imprisonment. Section 2242, under which defendant is charged in Count I, punishes, by a term of up to 20 years, causing another to engage in a "sexual act" under less aggravated circumstances than those described in §2241. Section 2244, under which defendant is charged in Count II, punishes engaging in "sexual contact" with another person under the circumstances set forth in §§2241-43;[5] it carries a maximum penalty of three years where the "sexual contact" occurred under the circumstances set forth in §2242, as

---

[4]The government cites to a number of state and common law authorities. Such authorities are, however, of no relevance given the anatomic specificity of §§2246(A)-(D), (3), and the need to give different meanings to different terms used by Congress in the same statute.

[5] Section 2243 criminalizes sexual abuse of minors and is not, therefore, directly relevant here.

4

charged in this case. The difference whether an act is a "sexual act" or "sexual contact" therefore makes a profound difference – 17 years – in the statutory maximum term of imprisonment which Congress chose to impose. The difference between a "sexual act" and "sexual contact" committed under the circumstances set forth in §2241 is even more profound – the difference between a maximum of ten years and life.

Given the extraordinary difference in how severely a defendant will be punished depending upon whether what he did is proven to have been a "sexual act" or merely "sexual contact," it is important that there be a readily ascertainable distinction between the two. These statutes are "anatomically specific." *United States v. Plenty Arrows*, 946 F.2d 62, 65 (8th Cir. 1991). The government's position would fatally blur any such distinction and permit the touching of the external genitalia to be punished as severely as penetration of the vagina, which is clearly not the scheme which Congress contemplated.[6] The distinction which Congress has decreed does provide a bright line between the §2246(2)(C) and §2246(3) – and that line falls at the vaginal orifice. Unless that orifice is breached, and the finger enters the vaginal orifice (no matter how slightly), penetration has not occurred.[7]

The understanding that penetration requires entry into the vaginal orifice is reflected in the

---

[6] Defendant believes that there is no need for recourse to the rule of lenity because the statutory meaning is clear. Should the Court find the meaning of the statute ambiguous, however, then the rule of lenity should be applied. "The rule of lenity provides that 'where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.'" *Perez-Olivio v. Chavez*, 394 F.3d 45, 53 (1st Cir. 2005), *quoting United States v. Bass*, 404 U.S. 336, 348 (1971).

[7] Congress' use of the term "penetration, however slight" also underscores the implausibility of the government's position. That term has meaning only in the context of entry into the vaginal orifice.

fact that there has been surprisingly little litigation in the federal courts, at least insofar as appears in published opinions, regarding the meaning of "penetration" under §2246, which is indicative of a general understanding that Congress used "penetration" of the "genital opening" in its well-accepted real-world sense. Indeed, there is a paucity of reported cases in which defendants have even argued that there was insufficient evidence of penetration to support their convictions. And in every one of those cases which defendant's research has revealed, the courts which have upheld convictions have pointed to evidence of entry into the vaginal orifice. *United States v. Norman T.*, 129 F.3d 1099 (10th Cir. 1997), *cert. denied*, 523 U.S. 1031 (1998), the sole federal case on which the government relies, is no exception. A reading of that case amply demonstrates that it does *not* support the proposition that "evidence of touching [the] labia majora and labia minora [is] sufficient." Government Proposed Supplemental Jury Instruction at i.

In *Norman T.*, the defendant first argued that §2246(2)(C) did not, as a matter of law, encompass penetration through clothing. *Id.* at 1102. The Court concluded that "[t]he statute gives no indication Congress intended to treat penetration through an intervening material differently from direct penetration." *Id.* The two acts, the Court continued, were "comparably invasive." *Id.* The Court rejected the defendant's argument that the requirement of direct touching was implicit in the nature of the offenses of penile penetration, oral-genital contact, and digital penetration because it confused the legal issue with a factual one: "the existence of clothing may make it more difficult, or impossible, to perform these offenses, but that is a factual question, not a legal one." *Id.* at 1103.

> Unquestionably, some penetration could occur through pliable clothing like underwear. The existence of an intervening material, such as clothing, may raise an issue of fact regarding whether penetration occurred, and a trier of fact may reasonably infer that the likelihood of penetration is inversely proportional to the amount (or non-pliable nature) of the intervening material.

*Id.* As it would not be difficult at all to "penetrat[e] the labia majora," in the words of the government's proposed instruction, through the alleged victim's underwear, it is reasonably clear from this discussion that, in using the term "penetration," the Court was referring to something more invasive. That it did is apparent from its discussion of defendant's challenge to the sufficiency of evidence of penetration. In rejecting the defendant's challenge, the Court pointed to the victim's testimony that "[h]e stuck his finger *in* me" and "[h]e put his finger *in my body*." *Id.* at 1104 (emphases in original). The Court also pointed to the victim's testimony that "her clothing went with Norman T.'s finger inside her body." *Id.* There was blood on toilet paper used by the victim the next day, and she complained of pain. *Id.* at 1101-02. On examination, a doctor and a nurse found the victim's labia majora and labia minora red and swollen, which the doctor testified was consistent with digital penetration. *Id.* at 1104.  The Court stated that, viewing the evidence in the light most favorable to the government, a reasonable jury could find penetration because

> The labia majora cover the genital opening, and labia minora are within the labia majora. Therefore penetration deep enough to cause injury to the labia minora is sufficient to violate §2246(2)(C).

*Id.* This is a far cry from the government's position that all that is required is "penetration" of the labia majora.[8] *See also United States v. Kenyon*, 397 F.3d 1071, 1077 (8th Cir. 2005)(evidence

---

[8] The *Norman T.* Court did not say that touching the labia minora would suffice. Instead, it refers to penetration "deep enough to cause injury to the labia minora." It did say that vaginal penetration is not required, *id.* at 1104, but the genital opening – the vaginal orifice – may be penetrated without entry into the vagina itself. Even were it possible to read the opinion to hold that touching the labia minora suffices, such a reading is inconsistent with the language of §§2246(A)-(D, 3). As Congress has drafted those subsections, there must, as previously addressed, be a difference between penetration of the vulva (§2246(2)(A)), penetration of the genital opening (§2246(2)(C)), and touching the genitalia (§§2246(2)(D), (3)). As described by the *Norman T.* Court, while the injuries to the labia may be indicative of "penetration" of the vulva, they do not, by themselves, prove penetration of the "genital opening." "Contact" or "touching" with a finger short of "penetration" by a finger is not a "sexual act" under §2246(2)(C) and can be punished only, in

7

sufficient where victim told physician's assistant that the defendant's "private part went inside her 'front part' about a half inch or an inch"); *United States v. Rafaelito*, 946 F.2d 107, 109 (10th Cir. 1991)(evidence sufficient where victim said defendant had put his penis inside her, and sperm was found inside her vagina); *United States v. Eagle Thunder*, 893 F.2d 950, 954 (8th Cir. 1990)(victim testified intercourse was painful, and doctor testified that there were two tears in the vaginal area consistent with penetration by an erect penis).

The Court should reject the government's proposed penetration instruction.

**IV.    PRIOR CONSISTENT STATEMENTS**

The Court has asked the parties to address whether, in determining whether to admit a prior consistent statement, the Court must determine whether the witness had time to fabricate before making the statement. The answer is that it need not, although, should the government seek to introduce the prior consistent statements as substantive evidence under Fed. R. Evid. 801(d)(1)(B), it must, under *Tome v. United States*, 513 U.S. 150 (1995), determine whether the prior statements were made before a motive to fabricate arose. *See United States v. Simonelli*, 237 F.3d 19, 26-27 (1st Cir.), *cert. denied*, 534 U.S. 821 (2001). If the statements are offered, not for their truth, but solely to rehabilitate the credibility of a witness whose credibility was impeached on cross-examination by prior inconsistent statements, then this requirement does not apply. *Id.* at 27-28.[9]

---

the case of an adult victim, as "sexual contact" under §2244.

[9]
    A prior statement is not admissible on the issue of credibility simply because it is consistent with the witness' trial testimony. Instead, it must serve a genuinely rehabilitative purpose. "Prior consistent statements still must meet at least the standard of having 'some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony.'" *Id.* at 27, *quoting United States v. Pierre*, 781 F.2d 329, 331 (2d Cir. 1986). *See also Simonelli*, 237 F.3d at 28 (Court stated that government did not really introduce witness' grand jury

V.    **DNA EVIDENCE.**

At the hearing on March 23, 2005, defendant stated that he did not object to the DNA evidence which the government intends to introduce through the testimony of Massachusetts State Police Chemist Kellie A. Bogosian. Defendant does, however, reserve the right to object to any questioning by the government which goes beyond the scope of Ms. Bogosian's expertise. That said, defendant does not anticipate that an objection of this sort will arise if the government's questioning of Ms. Bogosian is limited to the matters set forth in Government's Summary of Testimony to be Offered Under Fed. R. Evid. 702. Defendant also reserves the right to object to Ms. Bogosian's testimony and/or the government's questioning of Ms. Bogosian on evidentiary bases other than those related to the propriety of her testimony as an expert or the subject matter of her expert testimony.

|  |  |
|---|---|
|  | Respectfully submitted,<br>By his attorneys, |
| */s/ Kimberly Homan*<br>Kimberly Homan<br>Mass. Bar No. 239000<br>20 Park Plaza, Suite 905<br>Boston, Massachusetts 02116<br>(617) 227-8616 | */s/ James W. Lawson*<br>James W. Lawson<br>Mass. Bar. No.289300<br>OTERI & LAWSON<br>20 Park Plaza, Suite 905<br>Boston, Massachusetts 02116<br>(617) 227-3700 |

March 25, 2005

---

testimony on direct for rehabilitative purposes because it "was just presenting again the testimony it presented on direct, this time through the testimony about statements to the grand jury").