UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
UNITED STATES OF AMERICA    )
                                        )
v.                                      )          Cr. No. 04-10038-MLW
                                        )
DEEPAK JAHAGIRDAR          )
_____ )


**DEFENDANT DEEPAK JAHAGIRDAR'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTIONS FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P 29 AND FOR A NEW TRIAL PURSUANT TO FED. R. CRIM. P. 33**

On April 5, 2005, the jury returned verdicts of guilty against defendant Deepak Jahagirdar on both counts of the indictment. At issue in Jahagirdar's Rule 29 and Rule 33 motions is the jury's verdict on Count One of the indictment, which charged Jahagirdar with violating 18 U.S.C. §2242(2), which criminalizes engaging in a "sexual act" with another person under the circumstances therein described. Jahagirdar's Rule 29 and Rule 33 arguments hinge upon the definition of "sexual act" in 18 U.S.C. §2246(2)(C), the subsection applicable to this case: "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade or gratify the sexual desire of any person." As Jahagirdar has argued, and as he continues to maintain, a defendant does not commit a sexual act within the meaning of §2246(2)(C) unless his hand or finger at least slightly penetrates the vaginal orifice. It does not suffice, as the government argued and as the Court instructed the jury, that the finger merely pass beyond the labia; it must actually pass beyond the genital opening – the vaginal orifice – no matter how slightly.

Jahagirdar's arguments are two-fold: (1) the Court erred in the manner in which it defined the §2246(2)(C) "sexual act" to the jury, and that error was not harmless, requiring, at a minimum,

that Jahagirdar be granted a new trial on Count One; and (2) the evidence does not suffice to permit

a rational jury to find beyond a reasonable doubt that Jahagirdar's finger penetrated D.S.'s genital

opening, as properly defined, requiring the entry of a judgment of acquittal on Count One. This

memorandum will discuss these issues in turn.

I.      **THE COURT ERRED IN ITS INSTRUCTIONS TO THE JURY REGARDING THE MEANING OF "SEXUAL ACT" FOR PURPOSES OF §2246(2)(C).**[1]

Section 2246(2) provides:

> (2) the term "sexual act" means–
>     (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs on penetration, however, slight;
>     (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
>     (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
>     (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

Depending on the circumstances under which they are committed, "sexual acts" are punishable under

18 U.S.C. §2241 as aggravated sexual abuse or under 18 U.S.C. §2242 as sexual abuse. It was under

this latter statute that Jahagirdar was charged in Count One. Violations of §2242 are punishable by

statute by terms of imprisonment of up to 20 years. The provision of the sentencing guidelines

applicable to §2242 offenses, USSG §2A3.1, set, at the time of the offense, a base offense level of

27, corresponding to a guidelines sentencing range of 70-87 months – *5.83 to 7.25 years* –  in

---

[1]     Jahagirdar previously addressed this issue in his Memorandum Regarding Issues Raised at March 23, 2005, Hearing ("Memorandum Re March 23, 2005, Hearing Issues"), at pages 2-8, and that discussion is incorporated by reference herein.

Criminal History Category I.[2]

Clearly, Congress regarded the offenses defined in §2241 and §2242 as serious ones, considerably more serious than the offense of abusive sexual contact punishable under §2244, with which Jahagirdar was charged in Count Two and of which the jury also convicted him.[3] Section 2246(3) defines "sexual contact" as " the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." Section 2244 offenses such as that charged in this case carry a statutory maximum sentence of three years; the applicable guidelines provision set a base offense level of 12 at the time of the offense, permitting a Zone C sentence of 10-16 months.[4] Because §2242(2) and §2244(a)(2) criminalize acts committed under identical circumstances, the substantial difference in the severity of the prescribed punishment must be attributable to the difference between a "sexual act" and "sexual contact" – the difference between "penetration, however sight, of the . . . genital opening" and "touching . . . of the genitalia."

In considering the meaning of "genital opening" in §2246(2)(C), it is important to contrast the terminology used by Congress in §2246(2)(C) with that which it employed in §§2246(2)(A), (B),

---

[2]

Effective November 1, 2004, the base offense level was increased to 30, *see* Appendix C, amendment 664, corresponding to a guidelines sentencing range of 97-121 months (8.08 - 10.1 years).

[3]

Should this Court let Jahagirdar's conviction on Count One stand, it should then dismiss Count Two, as the §2244 offense charged in Count Two is a lesser-included offense of the §§2242(2), 2246(2)(C) offense charged in Count One. *See, e.g., United States v. Waters*, 194 F.3d 926, 931 (8th Cir. 1999); *United States v. Torres*, 937 F.2d 1469, 1477 (9th Cir. 1991), *cert. denied*, 502 U.S. 1037 (1992).

[4]

The base offense level was increased to 16 effective November 1, 2004, corresponding to a guidelines sentencing range of 21-27 months.  *See* Appendix C, amendment 664.

(D), and 2246(3). A "sexual act" involving the use of the penis is one in which the penis penetrates *the vulva*, however slightly. A "sexual act" involving the use of the mouth is one in which the mouth comes into contact with *the vulva*. Where use of the finger or hand is concerned, however, Congress did not define "sexual act" as one in which the hand or finger penetrates the vulva, however slightly or as one in which there is "contact" between the hand or finger and the vulva – it required that the finger penetrate *the genital opening* before the act would be a "sexual act" subject to the severe penalties prescribed for violations of §2241 and §2242. Intentional *touching* of the genitalia of another is punishable as a "sexual act" under §2241 or §2242 only if the person touched was less than 16 years old; where the person touched is 16 years of age or older, "touching . . . of the genitalia" is not punishable under §2241 or §2242 at all.

It is an established rule of statutory construction that, as a general rule, "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Jama v. Immigration and Customs Enforcement*, ___ U.S. ___, 125 S.Ct. 694, 709 (2005), *quoting Sosa v. Alvarez-Machain*, ___ U.S. ___, 124 S.Ct. 2739, 2754 n.9 (2004). *See* 2A N. Singer, *Sutherland on Statutes and Statutory Construction* §46.06 at 194 (6th ed. 2000). Under this rule, from which there is no reason to deviate, the Court should begin its assessment of the meaning of "penetration . . . of the genital opening" with the assumption that that terminology means something different than "penetration" of "the vulva."[5] The vulva is comprised of the *external* female genitalia and includes the labia majora and the labia minora; the genital opening – the vaginal orifice – lies between, but is not part of, the labia minora. The vulva can,

---

[5]        Nothing in the legislative history which Jahagirdar has found explains why Congress chose different terminology, what it understood "genital opening" to mean, or from where it derived the term.

therefore, be "penetrated" without corresponding penetration of the "genital opening."[6]

In addition, §2246(2)(C) refers to both the anal and the genital opening, and it is reasonable to assume that Congress used "opening" in the same sense with respect to both acts. It is a basic canon of statutory construction that "identical words used in different parts of the same act are intended to have the same meaning." *Commissioner of Internal Revenue v. Lundy*, 516 U.S. 235, 250 (1996), *quoting Sullivan v. Stroop*, 496 U.S. 478, 484 (1990). *See, e.g., United States v. Nippon Paper Industries, Inc.*, 109 F.3d 1, 4-5 (1st Cir. 1997), *cert. denied*, 522 U.S. 1044 (1998). The anal opening has no external features such as those which surround the genital opening, which points squarely to the conclusion that when Congress said "opening," it meant just that: "an opening or gap,

---

[6]The legislative history on this point is, to put it charitably, ambiguous. The House report states:

> Proposed section 2245 defines terms used in the new chapter. . . . Paragraph 2 defines the term "sexual act" to mean (1) contact between the penis and the vulva, or the penis and the anus, that involves penetration, however slight; [FN76a] (2) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; or (3) the penetration, however slight, of the anal or genital opening of another by a hand or finger . . . .

H.R. Rep. No. 99-594, 99th Cong., 2d Sess. (1986) at 19, *reprinted in* 1986 U.S.C.C.A.N. 6186, 6199. Footnote 76a, which follows the reference to the penis-vulva verison of "sexual act," reads: "It is not necessary that penetration of the genital or anal openings be complete. Any union with the anterior of the vagina, known as the vulva or labia, is sufficient . . . ." No such language follows the reference to the finger-genital opening version of "sexual act," suggesting that penetration of the genital opening must be complete, even if slight, where the finger is used. This would tend to explain the difference in the terminology employed – penetration of the vulva vs. penetration of the genital opening. Complicating matters, however, is the fact that after the descriptions of the three different types of "sexual act" the following language appears: "It is not necessary that the vulva or anus be entered, and emission is not required." Given the reference to emission, this sentence may have been intended to refer only to sexual acts involving the penis, although it makes little sense, as it is difficult to imagine what penetration of the vulva might mean if not entry into the vulva, *i.e.,* progression beyond the labia majora. It is also not possible to penetrate the genital opening without first entering the vulva.

esp. allowing access." Oxford Concise English Dictionary 954 (9th ed. 1995).[7]

The more expansive definition of "sexual act" for purposes of §§2242(2), 2246(2)(C) given by the Court to the jury in its instructions was erroneous and permitted the jury to convict Jahagirdar on Count One based on conduct which is not encompassed within §§2242(2), 2246(2)(C). In construing the reach of statutes defining criminal offenses, there are critical notice and due process considerations which must inform the inquiry. As the First Circuit has explained:

> The criminal law should not be a series of traps for the unwary. To that end, the Due Process Clause demands that criminal statutes describe each particular offense with sufficient definiteness to "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *United States v. Harriss*, 347 U.S. 612, 617 . . . (1954). A statute must give fair warning, "in language that the common world will understand, of what the law intends to do if a certain line is passed." *McBoyle v. United States*, 283 U.S. 25, 27 . . . (1931).

*United States v. Hussein*, 351 F.3d 9, 13 (1st Cir. 2003). *See, e.g., United States v. Colon-Ortiz*, 866 F.2d 6, 8-9 (1st Cir.), *cert. denied*, 490 U.S. 1051 (1989).[8] A person of ordinary intelligence would not understand that touching a woman's external genitalia, even within the labia, constitutes

---

[7]

     It also appears that Congress may have intended to require, where the defendant used a hand or finger to commit the act, that the act be somewhat more invasive than that necessary where the act was committed with the penis or the mouth to fall within the definition of "sexual act" and hence be subject to the severe penalties prescribed by §§2241, 2242. This would be consistent with Congress' inclusion of an additional element where the hand or finger is used, *i.e.*, that the penetration of the genital opening have been done "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." It would also be consistent with the fact that Congress chose not to make it a crime punishable under §2241 or §2242 to touch the genitals of an adult under the proscribed circumstances, not even direct contact underneath the clothing.

[8]

     The constitutionally requisite notice must be provided by the language of the statute itself. *See, e.g., Colon-Ortiz*, 866 F.2d at 9 ("It is not enough for the congressional intent to be apparent elsewhere if it is not apparent by examining the language of the statute").

"penetration" of the "genital opening." He would, to be sure, understand that doing so in the circumstances described in either §2241 or §2242 was conduct which the law was likely to punish criminally but such a person *would not understand that doing so constituted a "sexual act" as defined by §2246(2)(C) which would subject him to the severe penalties prescribed by §2241 and §2242.* A person of ordinary intelligence reading the "penetration . . . of the anal or genital opening" language of §2246(2)(C) would believe that his conduct would not be punishable under §2241 or §2242 unless his hand or finger at least slightly entered the vaginal orifice; such a reading of §2246(2)(C) would only be reinforced by comparing its language with the penetration of the vulva language of §2246(2)(A) and with the touching of the genitalia language of §2246(3).[9]

To guarantee the right of fair notice guaranteed by the Fifth Amendment, criminal statutes are to be strictly construed. *See, e.g., United States v. McKelvey*, 203 F.3d 66, 71 (1st Cir. 2000). This Court's construction of §2246(2)(C), as communicated to the jury in its instructions, violated Jahagirdar's due process right to fair notice by retroactively applying to him a construction of §2246(2)(C) which enlarged the conduct punishable under §§2242(2), 2246(2)(C) beyond the meaning apparent from the face of the statute. *See, e.g., Bouie v. City of Colombia*, 378 U.S. 347, 352 (1964)("There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language"). *See, e.g., United States v. Lanier*, 520 U.S. 259, 266 (1997)("due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope").

---

[9]

A Westlaw search of the ALLFEDS database using "genital opening" as the search term indicates that no reported federal decision has ever defined "genital opening."

Here, the term "genital opening" appears on its face to be narrow and precise, and would certainly appear to be so to a person of ordinary intelligence employing the common understanding of what "genital opening" was likely to mean.

> The case must be a strong one indeed, which would justify a Court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated within the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated.

*Bouie*, 378 U.S. at 362-63, *quoting United States v. Wiltberger*, 5 Wheat. 76, 96 (1820).

There is no federal precedent for the imposition of criminal sanctions under §2242(2) based upon the touching of the interior of the labia of an adult woman without penetration of the vaginal orifice.[10] While there may be common law precedent, *see Rogers v. Tennessee*, 532 U.S. 451 (2001), for defining "rape" as penetration of the vulva, as the state authorities submitted by the government in support of its proposed instruction suggest, the legislative history of §§2241 *et seq.* makes it clear that Congress' intent was to replace the then-existing federal statutes which criminalized the crime of "rape," "assault with intent to rape," and carnal knowledge of a woman under the age of 16, with all their common law attributes, with a statutory scheme precisely describing the elements of each of the various offenses created. *See* H.R. Rep. No. 99-594, 99th Cong., 2nd Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 6186. Sections 2241 *et seq.* are *statutory* crimes, not common-law crimes. In any event, state common-law precedent cannot provide constitutionally adequate foundation for the

---

[10]

   The single federal case relied on by the government in support of its requested instruction, *United States v. Norman T.*, 129 F.3d 1099 (10th Cir. 1997), *cert. denied*, 523 U.S. 1031 (1998), does not provide such precedent. *See* Memorandum Re March 23, 2005, Hearing Issues at 6-8.

application of a broadened construction of federal statutory language to a federal defendant charged with the federal crime. *See Bouie*, 378 U.S. at 359-60.

Moreover, to the extent that the statutory language – "penetration, however slight, of the . . . genital opening" – could be said to be ambiguous, the rule of lenity requires that it be construed narrowly in favor of the defendant. "The rule of lenity provides that 'where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.'" *Perez-Olivio v. Chavez*, 394 F.3d 45, 53 (1st Cir. 2005), *quoting United States v. Bass*, 404 U.S. 336, 348 (1971). The rule of lenity is an aspect of the fair warning requirement, as it "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *Lanier*, 520 U.S. at 266.

At a minimum, the Court's instructional error regarding an essential element of the offense requires that Jahagirdar be granted a new trial. As will be demonstrated in Sections II-III, *infra*, the instructional error cannot be regarded as harmless, given the paucity of the government's evidence regarding penetration of D.S.'s genital opening by Jahagirdar's finger. Indeed, Jahagirdar argues in Section II, *infra*, that the government's evidence on this point is so deficient as to require the entry of a judgment of acquittal.

## II.    THE COURT SHOULD ENTER A JUDGMENT OF ACQUITTAL ON COUNT ONE.

Under proper instructions regarding the definition of the §2246(2)(C) "sexual act," no rational jury could have found Jahagirdar guilty beyond a reasonable doubt of the §2242 offense charged in Count One, even when the evidence is construed, as it must be in the Rule 29 context, in the light most favorable to the government. *See, e.g., United States v. DelRosario*, 388 F.3d 1, 5 (1st Cir. 2004). The jury could not have found beyond a reasonable doubt that Jahagirdar penetrated the genital opening of D.S. with his finger.

As a preliminary matter, there would be no unfairness to the government in ordering the entry of a judgment of acquittal on this basis. The government had a full and fair opportunity to prove "penetration" of the "genital opening," as properly interpreted, and it failed to do so. It presented all the evidence it had on the issue, and would not and could not have presented additional or different evidence had it known that the Court would define the §2246(2)(C) "sexual act" consistently with Jahagirdar's position.

**A.     The Trial Record.**

**1.     D.S. Testimony.**

At trial, D.S. said the following regarding where Jahagirdar's fingers touched her:

- "They were inside underneath the lip area of the vagina." Tr. 3/29/05 at 154.[11]

- Jahagirdar's hand touched her "underneath both the outer lips or labia majora and the inner lips or labia minora." Tr. 3/29/05 at 159; *see also* Tr. 3/30/05 at 66-67.

- Jahagirdar's hands did not "go[] any further than the labia minora or inner lips." *Id.*

- She told federal authorities on March 23, 2005, that Jahagirdar had "grabbed [her] vagina; she also told them that he had "touch[ed] under the area of the outer lips of the vagina." Tr. 3/30/05 at 45; *see also id.* at 66.

- In the account of what had happened which she wrote on March 31, 2002, she wrote that Jahagirdar had "grabbed [her] vagina;" she did not state that his finger had penetrated her. Tr. 3/30/05 at 47; *see also id.* at 70.

- She did not tell Ms. McHale, the Beverly Hospital nurse, that Jahagirdar had penetrated her; she did tell her that she had no pain or even discomfort. Tr. 3/30/05 at 49.

- She told Trooper Hogaboom that Jahagirdar's "hand was in [her] vagina." She had

---

[11]     On Exhibit C, D.S. drew a black line around the area which she said Jahagirdar's fingers touched. Tr. 3/29/05 at 158-59. Her markings are consistent with her testimony that he touched her within her labia minora but did not touch her vaginal orifice. That exhibit was used to illustrate her testimony, but was not submitted to the jury as an exhibit. *See id.* at 157.

no memory of Hogaboom or anyone else asking her about penetration. Tr. 3/30/05 at 63.

### 2.    Prosecution Argument.

The prosecutor argued to the jury:

And then I asked her, could you describe for the jury where he touched you. And she said, under the outer lips and under the inner lips of my genitals. That, ladies and gentlemen, is penetration of the genital opening, under the outer lips, under the inner lips. . . . Because Deepak Jahagirdar penetrated however slightly her genital opening while on that flight while she was asleep . . . he is guilty of count 1.

Tr. 4/4/05 at 15.

[W]hen [D.S.] was asked . . . to draw with black pen where she felt the man's fingers touching, . . . she marked . . . right where the inner lips and the [outer] lips of the genital opening are and . . . she specifically said . . . his fingers were . . . under the outer lips and under the inner lips.

*Id.* at 20.

[State police officers] sit [D.S.] down and they ask her what happened . . . . The man covered me with a blanket. He took his hands, he put them down my pants under my underwear and at least touching my vagina.

And then the officer who's trained in determining the difference . . . – under state law – between assault and rape had to ask her the crucial question, did he penetrate you? . . . This is . . . the only person in the whole case to ask her that word "penetration." And she says yes. And he testified later he asked her the same question back in the Delta terminal, did he penetrate you? And she said yes.

*Id.* at 27.

Now the nurse [at Beverly Hospital] wrote two different things on two different forms. The nurse was a little confused, frankly. Frankly, the term "penetration" may be a little confusing, as you heard from lots of the witnesses on the stand. But the nurse first wrote on the first form that there was penetration of the vagina by the finger. Now, remember, the question on the form was about the vagina. It's not about the vulva. And the vagina is different from the vulva, ladies and gentlemen, and you can look at this picture. The vulva includes the entire genitals, okay? And as the court will instruct you, you don't need to get your fingers inside the vaginal canal to cause penetration; all you need to be is under those inner lips of the vagina, which is outside – excuse me, the inner lips of her genitals, not actually in the vagina. But

11

the nurse says there was penetration of the vagina with the finger.

> And then she gets confused and she changes it. On a later form she says, well, there was attempted penetration of the vagina by the finger. And, again, she testified a little bit about external genitalia and internal genitalia. Frankly, I think she was a little confused. I think the report shows she was a little confused. And she wasn't trained as a sexual assault nurse.

*Id.* at 28-29.

> But then the doctor writes in the report – and, remember, ask yourself what did he ask and why he asked it? – the doctor says in the report after all that other stuff that the – does not believe that his finger penetrated her. Those are the doctor's words in there. But on his testimony, what did he ask her? Remember what he asked her? Did he ask her, were you penetrated? No. He asked her were his finger or fingers inside you or in you? To which she responded no. Now, why did he ask that question? He was examining her for injury. It's fair to assume that Ms. DS understood that question to mean do you have injury in your vagina, inside of you, not on the outside on the labia, but the inside of you? And she said no.

> So while the doctor used the word "penetration" in the report, he never used it with her. He said, did he get his fingers in you or inside of you?

*Id.* at 29-30.

### 3.    Defense Argument.

Defense counsel argued:

[Trooper Hogaboom testified] I've had special training. I know how to ask questions. I know how to conduct interviews. . . . I've had special training in how to conduct interviews and how to deal with sexual assault cases.

> And then you remember on cross-examination he acknowledged that this thing called a police report is extraordinarily important. You've got to get it right. Once again, you've got to get it exactly right. Not just sort of right, not just a little bit. You've got to get it exactly right. The details have to be accurate. He acknowledged that this document is the document that then goes with the case to court. And so the police report written by this man who has been a police officer for 35 years, three months, with special training in interviews, special training in how to conduct a sexual assault investigation, he writes on the very same day – oh, he's really busy – but he writes on the very same day his police report, and there's no mention of penetration whatsoever. Not once. Not at all.

And this is something that's written after he had that conversation or those conversations with Ms. DS. He writes a report where he's got to get it right. He never says penetration, not once, not at all.

Tr. 4/4/05 at 50-51.

[W]hat [D.S.] wrote was, hand down my pants and grabbed my vagina. Then I yelled. Not a word, not a word about penetration, not once, not at all, in what she wrote after speaking with Trooper Hogaboom at the airport.

*Id.* at 51-52.

The evening ended, as you know, at the Beverly Hospital. And you have those records. You have those reports. . . . Look at them, ladies and gentlemen. Look at them very, very carefully. You first saw and heard the testimony regarding those records from nurse McHale, who told you that she made a mistake, that was her word, when she checked the penetration box. She made a mistake. And then at a later time she circled another box. Why? Why did she even circle that other box? Because she was told by Ms. DS that a man had had his hand down her pants. And so she inferred certain things. She assumed certain things. And she put a circle around another box after making a mistake on the penetration box the first time around.

*Id.* at 52.

And then after having taken this history, Doctor Ostroff came in and examined Ms. DS. And this, ladies and gentlemen, is very, very, very important. Not something to be brushed over lightly. Doctor Ostroff is an emergency room doctor. He's been a doctor, I think he testified to this, over 30 years. Long time. He said he had done about 200 sexual assault examinations. This is an experienced physician. And he put a question to her, the question from the real world, not from diagrams, not from charts. He put to her a question from the real world that we have to live in. And use your common sense, because it was a common sense question requiring a common sense answer. Did he put his finger in you? He said later, maybe I said, did he put his finger in your vagina? Put his finger in you, put his finger in your vagina, a common sense question requiring a common sense answer from the real world we live in. And when he put that common sense question to her, she answered it. Then within a few minutes, he dictated what she had answered, and he put that in a written report that you will have to look at in the jury room. Read for yourselves his very clear precise plain language. She alleges that a male passenger sitting next to her placed his hands down her pants and grabbed her vagina, this while she was asleep on her seat. The patient awoke when he grabbed her. She states that she does not believe that his finger penetrated her. That's what he says, because that's what she told him . . . .

13

Now, I know that Mr. McNeil asked Doctor Ostroff a bunch of questions, and he may come back with this when he speaks to you again. Did you show her a chart? Did you talk about the labia majora? Did you talk about the labia minora? Of course not. Once again, use your common sense. Live with Doctor Ostroff in the real world. He said to her, did he put his finger in you? Did he put his finger in your vagina? And read what his report so clearly states. She does not believe that his finger penetrated her.

*Id.* at 52-54.

Think for a moment very briefly about DNA evidence, which really adds nothing to this case, especially in light of the defendant's testimony. . . .

What did we learn? First, one of the things we learned is that DNA is the same, regardless of where it comes from. The DNA in my saliva is the same as my DNA from my skin. You can't tell where it comes from because it's the same.

Second, the chemist . . . who took the samples told you that she swabbed Mr. Jahagirdar's right hand and his left hand. She swabbed his fingers. She swabbed between his fingers. She swabbed his whole hand up to his wrist. And she took scrapings underneath the fingernails. And then when they were analyzed, they were mixed together. They were thrown into the same test tube, the scrapings from the stick and the swabs from the cotton piece at the end of the swab. And so there's no way of knowing whether the match you've heard so much about came from here or from here or from here or from anyplace else.

Third, Ms. DS's DNA was found on Mr. Jahagirdar right hand and his left hand, even though she testified that it was his right hand that went down her pants.

And, finally, what we learned is that DNA in heavy concentrations is there at those places where clothing rubs against the body, in shirt collar, in a waistband. Those are the places where DNA is concentrated.

*Id.* at 54-55.

### 4.    Prosecution Rebuttal.

The prosecutor argued in rebuttal:

[R]emember, Ms. DS testified that she talked with trooper Hogaboom and said that she had been penetrated, and trooper Hogaboom got up on the stand and testified, I asked her the question, were you penetrated, and she said yes. Is there any doubt in your mind whether she said she was penetrated, I asked him? No, no doubt. . . .

14

He did candidly admit . . . that he didn't write the word "penetration" in his report, but his report reflected penetration from top to bottom because in his report, he testified, he wrote the word "rape" four times, excluding the word "rape kit." And he also testified, the only way I could charge someone with rape is if there was penetration. That's the state law. So even though he didn't use the word "penetration," the word "rape," four times.

He also took actions consistent with someone who said that she had been penetrated. He sent her to the hospital, and he testified he would not have sent her to the hospital for a rape kit if she had not been penetrated. And he asked for a rape kit to be performed on her.

*Id.* at 61-62.

Ms. DS testified . . . [Jahagirdar touched her] underneath her outer lips and underneath the inner lips of her genitals.

*Id.* at 64.

Now what does the DNA evidence tell you in this case, ladies and gentlemen? It tells you one other thing. DNA on both hands. That means there was a lot of DNA, a lot of transfer. Where does a lot of DNA come from? Fluids. . . . Bodily fluids carry the most. The bodily fluid that he had on his hands, I submit to you, ladies and gentlemen, was vaginal fluid.

*Id.* at 65.


B.      **The Evidence, Even Taken In The Light Most Favorable To The Government, Does Not Suffice To Permit A Rational Jury To Find Beyond A Reasonable Doubt That Jahagirdar's Finger Penetrated D.S.'s "Genital Opening," As Properly Defined, Requiring The Entry Of A Judgment Of Acquittal On Count One.**

If anyone should know where Jahagirdar touched D.S., that person would be D.S. And what D.S. testified was that Jahagirdar's finger touched her inside her labia majora and inside her labia minora, *but did not go any further*. His finger did not "penetrate" her "genital opening," as that term is properly defined to mean the vaginal orifice, and not the external vulva, of which the labia majora

15

and labia minora are a part, and no rational jury could have found beyond a reasonable doubt that it did.

Given the specificity of D.S.'s testimony regarding where Jahagirdar touched her, which included marking the spot on a photograph of external female genitalia, what she may or may not have said to others at or after the time of the incident has little or no relevance to the sufficiency of the evidence issue. We know that D.S. answered in the negative when Dr. Ostroff asked her whether Jahagirdar had "put his finger in her" or "put his finger in her vagina," which led him to note in the Beverly Hospital records that D.S. said that she had not been penetrated. We also know that something happened between D.S. and McHale which caused McHale to decide that she had made a mistake in indicating on a form that there had been penetration and to indicate on another form that there had not been.

While D.S. did testify that she told Trooper Hogaboom that Jahagirdar's hand was "in her vagina," her trial testimony (and her statement to Dr. Ostroff) makes it clear that she did not mean that Jahagirdar's finger had actually even slightly penetrated her genital opening. Given her testimony, which she appeared to regard as wholly consistent with what she had told Hogaboom, it is apparent that D.S. was using the word "vagina" to refer to, or at least to include, the vulva. While Hogaboom maintained that he asked D.S. whether she had been penetrated and that she said that she had been, his report did not mention penetration, nor did the statement written by D.S. on March 31, 2002, mention penetration. In any event, the use of the word "penetration" by witnesses who may have had very different understandings of the word, cannot satisfy the government's beyond-a-reasonable-doubt burden of proof on the issue. Nor can the use of the word "vagina" by D.S. satisfy the government's burden of proof without evidence of what she meant by the term,

16

especially in light of all the indicia that she was using the term to refer to the vulva.

Even if D.S. did answer affirmatively a question by Hogaboom as to whether there had been penetration – something which she does not recall – Hogaboom was clearly focused on the state law definition of "rape" which is not applicable in the federal courts. *See* pages 8-9, *supra.* Jahagirdar was not on trial for state common-law rape (or even for federal common-law rape, an offense which no longer exists) but for the specific statutorily-defined crime of committing a "sexual act" under the circumstances set forth in §2242(2) by penetrating, however slightly, D.S.'s genital opening. Rape in Massachusetts is a common-law crime, codified at M.G.L. c.265, §22, which provides: "Whoever has sexual intercourse or unnatural sexual intercourse with a person and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury shall be punished . . . ." Massachusetts has defined "rape" to include penetration of the labia, *see Commonwealth v. Baldwin*, 24 Mass. App. Ct. 200, 204-04 (1987), and that is the understanding of the offense of state law rape which Hogaboom would have had when he used the word "rape" in his report and the understanding under which he would have sent D.S. to have a rape kit done. That Jahagirdar's finger may have penetrated D.S. in the state law sense – which he does not concede – does not prove that his finger "penetrated" D.S.'s "genital opening" for purposes of imposing criminal liability under §2242(2).

No rational jury could have found Jahagirdar guilty beyond a reasonable doubt on Count One had it been properly instructed regarding the meaning of "penetration" of the "genital opening." This Court should, therefore, order the entry of a judgment of acquittal on Count One.

III.    **EVEN IF THE COURT DOES NOT ORDER THE ENTRY OF A JUDGMENT OF ACQUITTAL ON COUNT ONE, IT SHOULD ORDER A NEW TRIAL ON COUNT ONE BECAUSE THE ERRONEOUS JURY INSTRUCTIONS WERE NOT HARMLESS ERROR.**

Even should the Court conclude that there was sufficient evidence from which a jury could find that Jahagirdar's finger penetrated D.S.'s genital opening to preclude the grant of a judgment of acquittal, it should nonetheless order a new trial on Count One, as the Court's error in its instructions to the jury regarding the §2246(2)(C) definition of "sexual act" cannot be regarded as harmless. Error in the instructions to the jury regarding an essential element of the offense is an error of constitutional magnitude, and the defendant's conviction must be reversed unless the error was harmless beyond a reasonable doubt. *See, e.g., United States v. Henson*, 945 F.2d 430, 441 (1st Cir. 1991); *United States v. Doherty*, 867 F.2d 47, 58 (1st Cir.), *cert. denied*, 492 U.S. 918 (1989). It was not.

The government strenuously argued to the jury its erroneous theory of "penetration" of the "genital opening," focusing the jury on the difference between the vagina and the vulva, maintaining that penetration of the latter would suffice, and explaining that evidence that D.S. had previously said – consistently with her trial testimony – that Jahagirdar's finger had not penetrated her was irrelevant because it referred to penetration of the vaginal orifice. Knowing that the Court would instruct the jury consistently with the government's theory, defense counsel, although addressing the penetration issue in his closing argument, could not argue to the jury that the substantial – in fact, overwhelming – evidence that Jahagirdar's finger had *not* penetrated D.S.'s genital opening, as properly defined required that it acquit Jahagirdar on Count One.

Even if the government's evidence sufficed to survive a motion for judgment of acquittal – and Jahagirdar does not believe that it does – it was exceedingly weak. Under proper instructions, finding Jahagirdar guilty on Count One would require the jury to *reject* D.S.'s testimony regarding where she had been touched and to rest upon Hogaboom's testimony that D.S. told him that she had

been penetrated. Counsel's memory is that Hogaboom did not, however, testify regarding what he meant by the term penetration, and, as addressed in the preceding section, was likely using the term in its state law sense, which does not suffice under federal law.

There was much careless use of the word "penetration" at trial – and even the government admitted that it was a confusing concept. *See* page 12, *supra.* A jury properly focused on the requirement that Jahagirdar's finger have penetrated D.S.'s genital opening, as that term is properly defined, would very likely have acquitted Jahagirdar on Count One.

## CONCLUSION

For all the foregoing reasons, this Court should order the entry of a judgment of acquittal on Count One. Alternatively, the Court should grant Jahagirdar a new trial on Count One.

Respectfully submitted,
By his attorneys,

/s/ Kimberly Homan                    /s/ James W. Lawson
Kimberly Homan                        James W. Lawson
Mass. Bar No. 239000                  Mass. Bar. No.289300
20 Park Plaza, Suite 905              OTERI, WEINBERG & LAWSON
Boston, Massachusetts 02116           20 Park Plaza, Suite 905
(617) 227-8616                        Boston, Massachusetts 02116
                                      (617) 227-3700

Date: 4/15/05