UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10038-MLW |
| | ) | |
| **DEEPAK JAHAGIRDAR** | ) | |

### Government's Opposition to Defendant's
### Motion for Acquittal and Motion for a New Trial

The United States of America, by and through Assistant United States Attorney John T. McNeil, respectfully files this opposition to the defendant's motion for judgment of acquittal, pursuant to Fed.R.Crim.P. 29, and his motion for a new trial pursuant to Fed.R.Crim.P. 33. (Docket No. 94 & 95). Both of the defendant's motions attack only his conviction on Count I of the Indictment, and both rely on a single argument: that the Court should have instructed the jury with respect to Count I that penetration of the "genital opening" requires the government to prove penetration of the "vaginal orifice." Defendant's Motion at 1-2.

The defendant's motions should be denied because the Court's instruction was consistent with years of state and federal court precedent interpreting the term "genital opening," well-established principles of statutory interpretation, and the legislative history of the federal sexual abuse statute. Moreover, even had the Court adopted the defendant's more restrictive definition of "genital opening," the evidence at trial established that the defendant's fingers in fact penetrated Victim D.S.'s vaginal orifice. Thus, any instructional error was harmless.[1]

---

[1] Notably, the defendant does not make the argument that the evidence presented at trial was insufficient to convict the defendant on Count I under the definition of "genital opening" given by the Court at the close of the evidence. Nonetheless, the government notes that taking

**Argument**

I. **The Court properly instructed the jury that penetration of the "genital opening" included any penetration beyond the labia majora, as the instruction was consistent with state and federal cases interpreting that term of art, general principles of statutory construction, and the legislative history of the statute**.

The phrase "penetration of the genital . . . opening, however slight," is a legal term of art which has a long history in state sexual assault law, and which has routinely been interpreted to require only penetration beyond the labia majora. Many state statutes have long employed the phrase "genital opening" to criminalize any penetration, however slight, of female genitals, including external portions of those genitals such as the labia. See, e.g. CAL. PENAL CODE § 289(k)(1) (West 2003) ("'Sexual penetration" is the act of causing the penetration, however slight, of the genital or anal opening of any person"); CONN. GEN. STAT. ANN. § 53a-65(2) (2001) ("Penetration may be committed by an object manipulated by the actor into the genital or anal opening "); N.H. REV. STAT. ANN. §§ 632-A:1-I-b, V (1996) ("'Genital openings' means the internal or external genitalia including, but not limited to, the vagina, labia majora, labia minora, vulva, urethra or perineum . . . Sexual penetration' means . . . (e) Any intrusion, however slight, of any part of the actor's body or any object manipulated by the actor into genital or anal

---

the evidence in the light most favorable to the government and drawing all inferences in favor of the jury's verdict, see United States v. Moran, 312 F.3d 480, 487 (1st Cir. 2002); United States v. O'Brien, 14 F.3d 703, 706 (1st Cir.1994), there was abundant evidence to conclude that the defendant penetrated D.S.'s genital opening by placing his fingers under her labia majora and under her labia minora while she was sleeping aboard an aircraft. Victim D.S.'s testimony alone is sufficient for the Court to reach this conclusion under Rule 29, in part because the Court is not to weigh the credibility of witnesses in its determination. See Moran, 312 F.3d at 487 (court not to weigh credibility on Rule 29 motion);United States v. Rothrock, 806 F.2d 318, 320 – 21 (1st Cir. 1986) (testimony of primary government witness sufficient to overcome Rule 29 motion); United States v. Johnson, 412 F.2d 753, 756 (1st Cir. 1969)(single government witness sufficient to overcome Rule 29 motion).

openings of the victim's body"); N.C. GEN. STAT. §§ 14-27.1(4) (2004) ("'Sexual act' means . . . the penetration, however slight, by any object into the genital or anal opening of another person's body. . ."); VT. STAT. ANN. tit. 13, § 3251(1) (1998) ("'sexual act' means . . . any intrusion, however slight, by any part of a person's body or any object into the genital or anal opening of another."); MD. CODE ANN., CRIM. LAW § 3-301(e)(1) (2004) ("'Sexual act' means . . . an act . . . in which an object penetrates, however slightly, into another individual's genital opening or anus"); MICH. CRIM. LAW ANN. § 750.520(a)(o) ("'sexual penetration' means . . . any other intrusion, however slight . . . into the genital or anal openings")(2001); NEB. REV. ST. § 28-318(A)(6)("'Sexual penetration' means . . . any object manipulated by the actor into the genital or anal openings of the victim's body . . ."); TENN. CODE ANN. § 39-13-501(7) (2004)("'Sexual penetration' means . . . any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body . . .").

State courts interpreting this term of art have routinely defined "genital opening" to require only penetration of the external portions of the female genitalia, and have specifically rejected the requirement that the vagina be penetrated, just as states have interpreted common law rape to require only penetration of the labia. [2] See, e.g. State v. Merriam, 264 Conn. 617, 630, 835 A.2d 895, 908 (2003)("the 'least penetration of the body' is sufficient to satisfy the

---

[2] The principle that the prosecution need only prove that the labia are penetrated, and need not prove that the vaginal orifice is penetrated, has a long history in state law which stems from English common law. See, e.g. Regina v. Lines, 1 Carr. & K. 393 (47 E. C. L. 393)(requiring only penetration of labia to establish crime); see also Brauer v. State, 25 Wisc. 413 (1870)(concluding that injuries to labia sufficient to establish proof of rape, relying on English common law).

penetration element of this state's sexual assault statutes. . . the penetration element of those statutes is satisfied by the penetration of the labia majora because penetration of the labia majora constitutes penetration of the body."); State v. Albert, 252 Conn. 795, 813-15, 750 A.2d 1037, 1048-49 (2000)(approving instruction indicating that penetration of labia majora sufficient); People v. Quintana, 89 Cal.App.4th 1362, 1365-68, 108 Cal.Rptr.2d 235, 237-40 (2001)(placing penis between labia majora and labia minora without penetration of the vagina constituted penetration of genital opening: "the 'penetration which is required is sexual penetration and not vaginal penetration.'" and concluding that "a 'genital' opening is not synonymous with a 'vaginal' opening."); People v. Bristol, 115 Mich.App. 236, 320 N.W.2d 229, 230 (1981)("The fact that the Legislature used 'genital opening' rather than 'vagina' indicates an intent to include the labia."); State v. Bowles, 52 S.W.3d 69, 74 (Tenn. 2001)("[t]here is ... 'sexual penetration' in a legal sense if there is the slightest penetration of the sexual organ of the female by the sexual organ of the male. It is not necessary that the vagina be entered or that the hymen be ruptured; the entering of the vulva or labia is sufficient.")(citations and quotations omitted); State v. Bruno, 424 S.E.2d 440, 448 (N.C. App. 1993)("It is not necessary that the vagina be entered or that the hymen be ruptured; the entering of the vulva or labia is sufficient.")(citations and quotations omitted); State v. Hirsch, 245 Neb. 31, 511 N.W.2d 69, 80 (1994) (in interpreting intrusion of the "genital opening," the court concluded that "[i]t is not necessary that the vagina be entered or that the hymen be ruptured; the entry of the vulva or labia is sufficient.")(1994) ; see also, Com. v. Baldwin 24 Mass.App.Ct. 200, 204-205, 509 N.E.2d 4,7 (Mass.App.Ct. 1987) ("Intrusion into the vagina itself is not required to make out the wrongful penetration. Touching by the male of the vulva or labia . . . is intrusion enough"); Greene v. United States, 571 A.2d

218, 221 (D.C. Ct of Appeals 1990)("Any labial penetration, however slight, constitutes sexual intercourse"); State v. Jones, 249 N.C. 134, 136-37, 105 S.E.2d 513, 514 (1958)("There is 'carnal knowledge' or 'sexual intercourse' in a legal sense if there is the slightest penetration of the sexual organ of the female by the sexual organ of the male. It is not necessary that the vagina be entered or that the hymen be ruptured; the entering of the vulva or labia is sufficient."); What Constitutes Penetration in Prosecution for Rape, 76 A.L.R.3d 163 at §3 (Rule that entry into labia is sufficient, citing cases).

Moreover, at least two federal courts interpreting state law have also reached the conclusion that penetration of the vagina is not required to establish rape. See Roberts v. Dutton, 368 F.2d 465, 471 (5th Cir. 1966)(concluding under Georgia law that, "[i]t is not necessary that the vagina shall be entered or the hymen ruptured, but an entering of the anterior of the organ, known as the vulva or labia, is sufficient"); Bower v. Curtis, 2004 WL 2921973,**3 (6th Cir. 2004)(unpub.)(concluding that under Michigan law, penetration of labia majora sufficient to establish penetration of genital opening).

While the legislative history of 18 U.S.C. § 2246 reveals little of the legislative intent in employing this specific term of art, long established principles of statutory interpretation maintain that where a federal statute adopts a term of art which has an established history under state law, federal courts should look to those state law interpretations to define the term as employed in the federal statute. In Molzof v. United States, 502 U.S. 301 (1992), the Supreme Court held:

> "A cardinal rule of statutory construction holds that, '[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the

> meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them.'"

Molzof, 502 U.S. at 307, quoting Morissette v. United States, 342 U.S. 246, 263 (1952). See also, Evans v. United States, 504 U.S. 255, 260 fn3 (1992)(citing Justice Frankfurter for the proposition that "if a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum.L.Rev. 527, 537 (1947).) Thus, this Court can infer that in employing the phrase "penetration, however slight, of the genital . . . opening" in 18 U.S.C. § 2246(2)(C), Congress intended to adopt the long-established state law principle that penetration of the labia majora is sufficient to establish the crime.

Moreover, the only two federal cases applying this term of art in 18 U.S.C. § 2246, joined the long line of state decisions concluding that penetration of the genital opening did not require penetration of the vaginal orifice. See United States v. Norman T., 129 F.3d 1099, 1104 (10th Cir. 1997); United States v. Trujillo, 33 F.3d 63, 1994 WL 139018, **2 (10th Cir. 1994)(unpub.)(injuries to "areas . . .within the confines of the labia majora" but not within the vagina itself sufficient to demonstrate penetration of the genital opening). The Norman T. court found that injuries to the labia majora and labia minora were sufficient to establish penetration of the genital opening because, "[t]he labia majora cover the genital opening, and labia minora are within the labia majora. Therefore penetration deep enough to cause injury to the labia minora is sufficient to violate § 2246(2)(C)." Norman T., 129 F.3d at 1104.

The defendant's argument that "genital opening" should be more narrowly redefined as "vaginal orifice" has no foundation in the legislative history, and is contrary to the maxim that

Courts should look to the customary or plain meaning of terms employed in a statute. See United States v. Lachman, 387 F.3d 42, 50 – 51 (1st Cir. 2004) ("if the language of a statute or regulation has a plain and ordinary meaning, courts need look no further and should apply the regulation as written") quoting Textron Inc. v. Comm'r, 336 F.3d 26, 31 (1st Cir. 2003); see also Banknorth, N.A. v. Hart, 328 F.3d 45, 49 (1st Cir. 2003) ("the plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters") quoting United States v. Ron Pairs Enters., Inc., 289 U.S. 235, 242 (1989); Herman v. Hector I. Nieves Transp., Inc., 244 F.3d 32, 37 (1st Cir. 2001) (same).  While the phrase "genital opening" is not commonly found in dictionaries, the word "genitals" is defined as, "the reproductive organs; esp. the external sex organs."  Webster's New World Dictionary, 2nd Ed. (1982)(emphasis added). "Vagina" is defined much more narrowly: ". . . in female mammals, the canal leading from the vulva to the uterus." Id. Thus, genitals refers specifically to external organs while the vagina is defined as an internal organ.  See also People v. Quintana, 89 Cal.App.4th at 1367 (discussing common definitions of 'genital' and 'vaginal').

If Congress wanted to limit the statute's application to penetration of the vagina or the "vaginal orifice," it would have used those specific words in the statute, particularly when well-established state rape law used the phrase "penetration of the genital opening" to refer to penetration of the labia and not penetration of the vagina. Id. at 1365-71 ; see also United States v. Cabrera, 208 F.3d 309, 314 (1st Cir. 2000) (noting that Congress could have used the term "generally used" instead of "primarily used" in a statute and holding that its choice not to use that term indicates that it did not intend the inquiry to focus on society's typical use of an item

7

but rather the defendant's primary use of it); United States v. Jessup, 757 F.2d 378, 382 (1st Cir. 1985) (noting that Congress could have used language similar to that used in other statutes imposing a burden of persuasion and holding that the absence of such language meant that only a burden of production was imposed).

Given the long tradition in state statutes and common law of requiring only penetration of the labia to establish a felony rape, if Congress intended a substantial departure from this tradition the legislative history would have so indicated. Since there is nothing in the legislative history which indicates a desire to be more restrictive under federal law than under state law, it may be inferred that Congress chose to employ the more expansive term of art for the same reason that states have done so: to ensure that penetration of the external and internal female genitalia are treated with the same seriousness. See H.R. No. 99-594, 99th Cong., 2d Sess. (1986), reprinted in 1986 U.S.C.C.A.N. 6186 (general purpose of statute to "cover widest possible variety of sexual abuse" rather than to narrow types of abuse covered); see gen. Robinson v. Shell Oil Co., 519 U.S. 337, 341 – 46 (1997) (noting that Congress could have used the more specific term "current employees" or "former employees" rather than the more expansive term "employees" in a statute and holding that its decision to use the more general term was meant to encompass both groups, especially given the explicit distinction made between the two groups in other statutes); United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. V. United Ass'n of Journeymen & Apprentices, 452 U.S. 615, 624 – 25 (1981) (noting that Congress chose to use the unqualified term "contract" in a statute despite its familiarity with the importance of union constitutions and holding that it meant to encompass contracts represented by union constitutions under the general term "contracts"); Rejna v. United States, 364 U.S. 507,

510 (1960) (holding that, by framing a statute in the same language that had been construed in a previous case to cover both state and federal prosecutions, Congress meant to give those words the same meaning).

The defendant mistakenly relies on contrasting the statute's use of the term "vulva" in 18 U.S.C. § 2246(2)(A) and its use of the term "genital opening" in 18 U.S.C. § 2246(2)(C) to support his argument that "genital opening" should be more narrowly defined than it is in countless state court decisions and two prior federal court decisions. Defendant's Motion at 4. The defendant's reliance on Jama v. Immigration and Customs Enforcement, 125 S.Ct. 694, 709 (2005), for the proposition that the court should infer that Congress intended substantially different meanings when it uses different words in section 2246, is remarkably ironic. The defendant fails to note that the quoted language is from the dissenting opinion rather than from the majority opinion. Jama,125 S.Ct. at 709 (Souter, dissenting). Notably, the majority opinion in Jama belittles the dissent's reliance on this principle of statutory construction, dismissing the argument in a footnote thus; "[t]he dissent makes a mountain of this molehill . . ." Jama, 125 S.Ct at 701 fn.3. Like the majority in Jama, this Court should reject the application of this principle of statutory construction in this instance because Jahagirdar makes far too much of the difference in the language in sections 2246(2)(A) and 2246(2)(C), and his use of this principle is in direct conflict with the longstanding use of the term "genital opening" in state statutes and common law which Congress relied on in crafting this statute, as well as the legislative history of this particular federal statute.[3]

---

[3] The government attributes the somewhat confused use of these different terms to inartful drafting of the statute (and of the legislative history, as pointed out in the Defendant's Motion at 5, fn.6) and Congress's desire to include the widest variety of sexual penetration crimes as possible with the language of section 2246(2). See 1986 U.S.C.C.A.N. 6192.

Moreover, the Court should reject the defendant's reliance on this principle because the statute itself indicates that each subsection of the definition of "sexual act" is intended to stand on its own without reference to the other subsections, and the legislative history makes clear that the terms used in the statute are all intended to be interpreted broadly.  See 1986 U.S.C.C.A.N. at 6190-91.  Notably, section 2246(2)(A) reads in pertinent part that the use of the term "contact" is for "purposes of this subparagraph" only.   See gen. United States v. Hussein, 351 F3d 9, 19 (1st Cir. 2003)(noting Congressional intent for one subsection of the narcotics statute to stand on its own).  In addition to intending each subsection to stand on its own, there is nothing in the legislative history which indicates that the use of the term of art "genital opening" in section 2246(2)(C) should be more limited  than how that term has been traditionally applied in countless state courts.  See 1986 U.S.C.C.A.N. 6186.  Moreover, there is nothing in the legislative history which supports the defendant's contention that a finger or object must be inserted farther into the female genitals than the penis to establish the same crime.  Id.   To the contrary, as noted above, the legislative history makes clear that the language was "drafted broadly to cover the widest possible variety of sexual abuse, and to protect both males and females from that abuse."  Id. at 6192.  Thus, the defendant's argument that Congress intended to more narrowly define "genital opening" under federal law than state law runs directly contrary to the overriding purpose of the federal statute.  Id. at 6190-91 (outlining general purposes of the statute to modernize federal crime of rape and to cover all forms of it); Lachman, 387 F.3d at 51 ("In interpreting statutes we must adopt the definition most consistent with the statute's purpose").

II.  **The Court's definition of "genital opening" did not deprive the defendant of due process, because the language of the statute was sufficiently clear to put him on notice that his conduct was criminal, the instruction was consistent with the Tenth Circuit's decision in <u>Norman T.</u> which was decided five years before the defendant's conduct, and the instruction was consistent with long-standing state law.**

The Court should also reject the defendant's claim that his right to due process was violated because he was not put on fair notice by the statute, and his related claim that the rule of lenity should apply. <u>Defendant's Motion</u> at 6-9. First, it cannot be seriously argued that the defendant misunderstood his act to be an innocent one. There is little question that any reasonable person would understand that placing a hand down the front of a sleeping woman's pants and grabbing her genitals is a crime. In fact, had the crime occurred in Massachusetts, the state to which Jahagirdar chose to travel, it would have fallen within well-established state law criminalizing the conduct as a felony digital rape. See <u>Com. v. Baldwin</u> 24 Mass.App.Ct. 200, 204-205, 509 N.E.2d 4,7 (Mass.App.Ct. 1987); <u>Massachusetts Superior Court Criminal Practice Jury</u>, § 2-12 (1999)(collecting cases). Likewise, if the defendant engaged in this conduct in his home state of Arizona it would be punishable as a felony digital rape. See <u>State v. Jackson</u>, 109 Ariz. 559, 564, 514 P.2d 480, 485 (1973); <u>State v. Knaubert</u>, 27 Ariz.App. 53, 61, 550 P.2d 1095, 1103 (1976).

Second, the language of the federal statute was sufficiently clear to put him on notice that "penetration of the genital . . . opening" included any penetration beyond the labia majora. As noted above, the Tenth Circuit in <u>Norman T.</u>, concluded that "[t]he labia majora cover the genital opening and labia minora are within the labia majora. Therefore penetration deep enough to cause injury to the labia minora is sufficient to violate § 2246(2)(C)." See <u>Norman T.</u>, 129 F.3d at 1104. Thus, five years before the defendant engaged in this criminal conduct, a federal circuit

court interpreted section 2246 to apply to the conduct in which he engaged. Moreover, given the long history of the use and interpretation of the term "genital opening" under state statutory and common law, there is no basis for concluding that the term is so vague or unclear as to give rise to a deprivation of due process. Thus, the term "genital opening" was "sufficiently definite to apprise a person of ordinary intelligence that his anticipated behavior will transgress the law." United States v. Arcadipane, 41 F.3d 1, 5 (1st Cir.1994) (citation omitted); United States v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40, 47 (1st Cir. 2004)(rejecting a due process challenge to the federal parental kidnapping statute in which the statutory language was sufficiently clear and the Second Circuit had interpreted that language before the defendant engaged in his criminal conduct). If Jahagirdar was ignorant of the law, or otherwise confused in its application – a proposition that can be seriously doubted – such ignorance or confusion is insufficient to prove a deprivation of due process. Id.; see also United States v. Denis, 297 F.3d 25, 28 (1st Cir.2002) ("It is a fundamental maxim of our legal system that 'ignorance of the law or a mistake of law is no defense to criminal prosecution.' " quoting Cheek v. United States, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991)).[4]

III. **Even applying the defendant's more restrictive definition of "genital opening," the evidence established that the defendant placed his fingers "<u>under</u> the inner lips" of D.S.'s genitals and therefore into her vaginal orifice.**

---

[4] The defendant's claims that the Court gave a "more expansive definition of 'sexual act'" through its jury instructions in this case and that it "retroactively . . . enlarged the conduct punishable under [section 2242]," both rely on the faulty premise that the term "genital opening" had been traditionally defined as the vaginal orifice. As outlined in detail above, "genital opening" has long been defined to mean the area within the labia majora in state and federal law; thus, there is nothing expansive or enlarging for the Court to follow the long line of cases so defining the term.

Even if the Court were to conclude that the genital opening should be more restrictively defined to refer only to the vaginal orifice, there was ample evidence to conclude that the defendant in fact penetrated that orifice.  Victim D.S. testified that the defendant's fingers were "under" the inner lips of her genitals, and also drew a circle on a diagram which included the vaginal orifice.  Her testimony, as elucidated by the marked diagram, indicates that the defendant's fingers must have penetrated the vaginal orifice, however slightly.  Moreover, when D.S. showed Flight Attendant Kelly Horn what the defendant did with his hand, she indicated that his hand was deeply down her pants and in her groin, and was cupped over and into her genitals.  In addition, Trooper Hogaboom testified that D.S. told him that the defendant had "penetrated" her "vagina" with his hand.

In order for the jury to have found the defendant guilty on the charges as instructed, it must have rejected all testimony which was contrary to that of D.S., Hogaboom, and Ms. Horn on the issue of penetration.  The jury certainly disregarded the entirety of the defendant's account of what happened on the aircraft; had it credited the defendant's testimony, it would not have found the defendant guilty on either count of the indictment.  In addition, the jury also must have concluded that Dr. Ostroff's trial testimony explained his written report, and Dr. Ostroff's trial testimony was not inconsistent with D.S.'s statements regarding where the defendant put his fingers.  Dr. Ostroff testified only that D.S. said that Jahagirdar's fingers were not "inside of her."  That testimony is completely consistent with D.S.'s testimony that his fingers were under the inner lips of her genitals but not beyond that point.

Given the clear testimony by D.S., the jury's necessary acceptance of her testimony to convict on both counts of the indictment, coupled with the jury's necessary rejection of the

defendant's testimony, this court did not abuse its discretion in instructing the jury even if there was error in the instruction, and any error was harmless.[5]

## Conclusion

For the reasons set forth above, the government respectfully requests that the Court deny the defendant's motions pursuant to Fed.R.Crim.P. 29 and Fed.R.Crim.P. 33

                                                    Respectfully submitted,

                                                    MICHAEL J. SULLIVAN
                                                    United States Attorney

Date: April 27, 2005                        By: /s/John T. McNeil
                                                    JOHN T. MCNEIL
                                                    Assistant U.S. Attorney

---

[5] The defendant has also argued that if the Court does not vacate the conviction on Count I, it should then vacate the conviction on Count II because that count is a lesser included offense of Count I. See Defendant's Motion at fn 3. The Court should reject this argument because the elements of the offenses in Count I and Count II are different and the evidence established each violation by relying on different conduct. See United States v. Marino, 277 F.3d 11, 39 (1st Cir. 2002)(noting that the test to determine whether an alleged lesser included offense should be dismissed, is whether the elements of the offenses are the same, citing Blockberger v. United States, 284 U.S. 299 (1932)). The defendant committed the offense charged in Count II as soon as his hand touched Victim D.S.'s mons pubis, since all that is required is that he intentionally touch, either directly or through the clothing, the genitalia, groin, or inner thigh of the victim. See 18 U.S.C. § 2244(a)(2). The defendant went on to commit the more serious offense charged in Count I by then placing his hands farther down her pants and into her genital opening. Thus, the conduct charged in Count II is different from the conduct charged in Count I, and the convictions on both counts should stand. Rather than dismiss Count II, the Court should impose a sentence on Count I, and impose a concurrent sentence on Count II. See U.S.S.G. §§3D & 5G1.2(c) ; Ekberg v. United States, 167 F2d 380, 385-386 (1st Cir. 1948)(declining to dismiss a second count of conviction but noting that there should not be consecutive sentences on the counts of conviction); Torres Martinez v. United States, 220 F.2d 740, 741 (1st Cir. 1955)(same).