UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-10038-MLW |
| ) | |
| DEEPAK JAHAGIRDAR ) | |

### Government's Supplemental Opposition to Defendant's Motion for Acquittal and Motion for a New Trial

The United States of America, by and through Assistant United States Attorney John T. McNeil, respectfully files this supplemental opposition to the defendant's motion for judgment of acquittal, pursuant to Fed.R.Crim.P. 29, and his motion for a new trial pursuant to Fed.R.Crim.P. 33. (Docket No. 94 & 95). By order dated June 17, 2005, the Court requested supplemental briefing on the issue of "whether Due Process requires only fair notice that particular conduct is criminal or whether it also requires fair notice that such conduct constitutes an aggravated form of criminal conduct which involves enhanced penalties." Order at 2. The Order also seeks argument on the applicability of two cases in particular: United States v. Lanier, 520 U.S. 267 (1997) and United States v. Anzalone, 766 F2d 676 (1st Cir 1985).

### I.

With respect to the first question posed by the Court, the First Circuit recently reiterated that:

> The Due Process Clause mandates that, before any person is held responsible for violation of the criminal laws of this country, the conduct for which he is held accountable be prohibited with sufficient specificity to forewarn of the proscription of said conduct. As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient

1

> definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. **The mere fact that a statute or regulation requires interpretation does not render it unconstitutionally vague. Many statutes will have some inherent vagueness. . . . Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.**

United States v. Lachman, 387 F.3d 42, 56 (1st Cir. 2004)(citations and quotations omitted)(emphasis added). Moreover, "the statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kittery Motorcycle, Inc. v. Rowe, 320 F.3d 42, 50 (1st Cir. 2003)(citations and quotations omitted). However, in cases such as this one, "the diminished likelihood of unfair enforcement raises the bar" to a due process challenge to statutory language. United States v. Hussein, 351 F.3d 9, 14 (1st Cir. 2003). In addition, due process does not require a "high a degree of specification," Id. at 16, and the fair warning doctrine neither "demand[s] an explicit or personalized warning" nor "excuse[s] professed ignorance of the law." United States v. Arcadipane, 41 F.3d 1, 5 (1st Cir.1994). Moreover, "[i]t is a fundamental maxim of our legal system that 'ignorance of the law or a mistake of law is no defense to criminal prosecution.' " United States v. Denis, 297 F.3d 25, 28 (1st Cir.2002) quoting Cheek v. United States, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991)).

The specific question posed by the Court – as earlier characterized by the defendant – appears to conflate the long established law regarding due process fair warning as outlined above with the Apprendi/Blakely/Booker line of cases regarding facts which "enhance a penalty" for a particular crime. In particular, the government questions the characterization of the crime

defined in 18 U.S.C. § 2242 as simply some type of enhanced form of a more commonly understood crime described in 18 U.S.C. § 2244.  Rather, Section 2242 charges the federal equivalent of rape – including digital rape – and provides a penalty of not more than 20 years imprisonment.  See 18 U.S.C. § 2242; see, e.g. Com. v. Brattman, 10 Mass.App.Ct. 579, 583, 410 N.E.2d 720, 724 (1980)(rape includes, among other things, "intrusions of a part of a person's body or other object into the genital or anal opening of another person's body").  The conduct criminalized in Section 2242 is the federal equivalent of indecent assault and battery, and is punished by imprisonment of no more than three years.  See 18 U.S.C. § 2244; see, e.g. Commonwealth v. Mosby, 30 Mass.App.Ct. 181, 184, 567 N.E.2d 939 (1991)(indecent assault and battery is defined as an "intentional, unprivileged and indecent touching of the victim" and does not include penetration).

Thus, rather than characterizing the federal crime of sexual abuse as an "aggravated form" of the federal crime of abusive sexual contact, and asking whether the defendant understood the heightened penalties associated with such an "aggravated form," the question should focus on whether the federal crime of sexual abuse, as defined at 18 U.S.C. § 2242, is defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Lachman, 387 F.3d at 56.[1]

---

[1] To the extent that the Court is seeking argument as to whether a criminal statute must define a criminal penalty with sufficient clarity, the Supreme Court has noted, "vague sentencing provisions may post constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." United States. v. Batchelder, 442 U.S. 114, 123 (1979).  In this case there is no lack of clarity in the statute's penalty provision.

**II.**

The Supreme Court's holding in <u>Lanier</u>, coupled with the Tenth's Circuit's decision in <u>United States v. Norman T.</u>, 129 F.3d 1099 (10th Cir. 1997), make clear that Jahagirdar had fair warning that if he "grabbed" D.S.'s genitals while she was sleeping, and thereby intentionally forced his finger(s) beyond D.S.'s labia majora, that he could be convicted of sexually abusing D.S. in violation of 18 U.S.C. § 2242, and would be subject to a statutory maximum penalty of 20 years imprisonment. The jury in this case concluded that Jahagirdar intentionally placed his finger(s) in D.S.'s genital opening by intentionally placing them beyond D.S.'s labia majora. As outlined below, any person of ordinary intelligence would understand this to be a serious crime, and under <u>Lanier</u> and <u>Norman T.</u>, any person of ordinary intelligence would be on notice that this conduct was sexual abuse punishable under 18 U.S.C. § 2242. While Jahagirdar has made no factual assertion that he was ignorant of the specific consequences of his criminal conduct, even such professed ignorance of the law is no defense.

Moreover, the defense has not made the argument, nor do any cases suggest, that the government was required to prove in its case in chief that he had knowledge that his conduct subject him to 20 years incarceration. In fact, the defendant submitted no such jury instruction, nor did he object to the general instruction on knowledge given by the Court to the jury in this case. Moreover, so long as the statute states the punishment with sufficient specificity, the defendant's actual knowledge of that penalty is irrelevant; thus, even if Jahagirdar erroneously believed that the penalty was something less than 20 years, his belief is of no consequence. See <u>United States v. Cruz-Flores</u>, 56 F.3d 461, 463 -464 (2nd Cir. 1995)(no due process violation

where INS form incorrectly informed defendant that maximum penalty for unlawful re-entry was 2 years incarceration, where the statute clearly stated that the maximum penalty was 5 years incarceration, citing similar holdings in four other circuits).

As cited by this Court, the Lanier decision concluded "the touchstone is whether the statute, either standing alone *or as construed*, made it reasonably clear at the relevant time that the defendant's conduct was criminal." Lanier at 267. Lanier held that even an arguably ambiguous criminal statute can survive a fair warning challenge if one or more court decisions have construed the language so as to clarify the ambiguity: "clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute." Lanier at 266. Moreover, Lanier noted that such clarity may be provided by a decision of a Court of Appeals. Lanier at 268.

In this case, the phrase "penetration, however slight, of the . . . genital opening," as employed in 18 U.S.C. § 2246(2)(C), had been clearly and definitively interpreted by the Tenth Circuit five years before Jahagirdar sexually abused D.S. aboard Delta Flight 2200. In United States v. Norman T., 129 F.3d 1099, the court concluded, "[a]lthough Norman T. attempts to obfuscate it , §2246(2)(C) is expressed in reasonably plain terms." Norman T. at 1103. The court went on to hold,

> As discussed above, §2246(2)(C) applies to any penetration however slight, of the victim's genital opening. Norman T. reads this to require vaginal penetration, but that is simply not the requirement found in the statute. . . The labia majora cover the genital opening, and labia minora are within the labia majora. Therefore penetration deep enough to cause injury to the labia minora is sufficient to violate §2246(2)(C).

Id. at 1104.[2]  Thus, under the specific test set forth in Lanier, even if one assumes, *arguendo*, that the phrase "penetration, however slight, of the . . . genital opening" is ambiguous, the decision in Norman T. standing alone provided sufficient clarity to give Jahagirdar constitutional fair warning that if, in grabbing D.S.'s genitals, his finger penetrated beyond the labia majora, he was subject to prosecution under 18 U.S.C. § 2242.

While Norman T. resolves this issue conclusively under Lanier, the government disputes the notion that the relevant phrase was so ambiguous so as to render it constitutionally infirm without prior interpretation by a court.  While the Court and counsel expended some effort in arriving at a jury instruction in this case, that appears to have been the product of a particularly careful and analytical evaluation of the statutory language, rather than the product of an obvious flaw in the language of the statute or true confusion by the defendant regarding the criminality of his conduct.  Not only has the defendant conceded the obvious – that he knew that grabbing a woman's genitals was a crime – but prior to trial the defendant had not even raised an issue with the definition of "genital opening."   Despite the fact that this case was heavily litigated in pretrial motions, including motions to dismiss and suppress, it was not until the government supplemented its jury instructions to make explicit what was implicit in the term "genital

---

[2]  An earlier unpublished Tenth Circuit case, United States v. Trujillo , 33 F.3d 63, 1994 WL 139018, **2 (10th Cir. 1994), also put Jahagirdar and other defendants on notice that injuries to "areas . . .within the confines of the labia  majora" but not within the vagina itself were sufficient to demonstrate penetration of the genital opening for purposes of conviction under 18 U.S.C. § 2242.

opening," did the defendant make any claim with respect to this term.[3] Thus, the issue was largely an afterthought of the defendant rather than one central to his case from the outset.

Moreover, once the issue had been argued by the parties, the Court did not arrive at a particularly complex or novel jury instruction. Rather, the Court agreed with the logic and language of the 10th Circuit in Norman T., as well as decades of state law interpreting the phrase, "penetration, however slight, of the . . . genital opening," in the same manner as the Norman T. court. As noted above, "[m]any statutes will have some inherent vagueness. . . . Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid." Lachman, 387 F.3d at 56.

Even absent the Norman T. decision, the defendant was given fair warning that grabbing D.S. genitals and intentionally placing his finger(s) beyond her labia majora, would expose him to substantial criminal penalties because his conduct fell squarely within state criminal statutes and common law defining digital rape. As set forth the in detail in the Government's Opposition to Defendant's Motion for Acquittal and Motion for a New Trial, the phrase "penetration, however slight, of the . . . genital opening" has been used for years by state courts across the country to define the felony of rape. See Government's Opposition at 2-3 (citing statutes from Connecticut, California, New Hampshire, North Carolina, Vermont, Maryland, Michigan, Nebraska, and Tennessee). Moreover, state and federal courts have routinely interpreted both the common law crime and the statutory crime of rape as one involving the penetration of the

---

[3] The government's request for a supplemental jury instruction, which first suggested a definition of genital opening, was filed on March 24, 2005 -- four days before the commencement of trial. The defendant did not raise any claim regarding this term until March 28, 2005 – the first day of trial.

external portions of the female genitalia. Id. at 3-5 (citing cases from Massachusetts, Connecticut, California, Michigan, Tennessee, North Carolina, Nebraska, the District of Columbia, and Georgia). In particular, because Jahagirdar's home state of Arizona and the state to which he was traveling, Massachusetts, had longstanding criminal provisions which categorized and punished his conduct as rape, Jahagirdar cannot credibly claim that he had no notice that his conduct was criminal or that it was subject to substantial penalties. Id. at 11.

The First Circuit's decision in United States v. Anzalone, 766 F2d 676 (1st Cir 1985) has little applicability to this case. In Anzalone the First Circuit reversed a conviction for violating a provision of the Currency Transaction Reporting Act because there was ambiguity in the Reporting Act and its regulations regarding whether the statute's criminal prohibitions applied to individuals, rather than financial institutions, and the court could, "find nothing on the face of either the Reporting Act, or its regulations, or in their legislative history, to support the proposition that a 'structured' transaction by a customer constitutes an illegal evasion of any reporting duty of that customer." Anzalone at 680-81. The First Circuit has subsequently made clear that what so troubled it about the statutory ambiguity in Anzalone was not just that its implementing regulations further confused the ambiguity, but that it was a statute which "criminalize[d] conduct that the average person generally consider[ed] innocent." Sabetti v. Dipaolo,16 F.3d 16, 18 (1st Cir. 1994); Lachman, 387 F.3d at 56-57 (1st Cir. 2004).

In this case, unlike Anzalone, Jahagirdar implicitly admits that he knew his conduct constituted a felony. Moreover, this case involves conduct which has been criminalized in every state in the country for decades. While someone conducting multiple bank transactions could completely innocently run afoul of the provisions in the Reporting Act, no person could

completely innocently place their hand down the front of a sleeping woman's pants, and grab her genitals. Moreover, in this case there are no federal regulations which confuse the statutory language, and the Norman T. case provides the only conclusive interpretation of that language. See Anzalone at 682 (noting that "confusion and uncertainty in this law has been caused by the government itself").

## Conclusion

Jahagirdar was provided fair warning that his conduct would subject him to criminal penalties through the language of the statute itself – language which had been employed unambiguously for decades in state court. Moreover, to the extent that any ambiguity existed in the statutory language, Norman T. eliminated it by holding that penetration beyond the labia majora was sufficient to violate the statute. The government was not required to prove in its case in chief that Jahagirdar had knowledge of the penalties associated with his conduct, and the defendant does not argue otherwise. In sum, Jahagirdar engaged in conduct which he knew to constitute a felony. He was convicted after trial of knowingly grabbing D.S.'s genitals and thereby penetrating her genital opening. Now that he faces a substantial punishment for such conduct, his claim that he did not know the specific penalties for his crime is not a proper basis for granting an acquittal on Count 1 of the Indictment.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

Date: June 21, 2005

By: /s/ John T. McNeil
JOHN T. MCNEIL
Assistant U.S. Attorney